1  Christopher P. Wesierski [Bar No. 086736]
   *cwesierski@wzllp.com*
2  Kathryn J. Harvey [Bar No. 241029]
   *kharvey@wzllp.com*
3  WESIERSKI & ZUREK LLP
   29 Orchard Road
4  Lake Forest, California 92630
   Telephone: (949) 975-1000
5  Facsimile: (949) 756-0517

6
7  Attorneys for Defendants, COUNTY OF
   SAN BERNARDINO, CORRIN
   CASSIDY, and CAMERON STANLEY
8
                 UNITED STATES DISTRICT COURT
9
         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
10

11
   TODDERICK RANDALL,                Case No. 5:24-cv-00086-SSS-SP
12 individually,                     *Assigned to*:
                                      Hon. Sunshine S. Sykes
13            Plaintiff,
                                      **DEFENDANTS' COUNTY OF SAN
14    vs.                            BERNARDINO, CORRIN CASSIDY
                                      AND CAMERON STANLEY'S
15 COUNTY OF SAN BERNARDINO;         MOTION FOR SUMMARY
   CORRIN CASSIDY; CAMERON           JUDGMENT, OR IN THE
16 STANLEY and DOES 1-10, inclusive,  ALTERNATIVE, PARTIAL
                                      SUMMARY JUDGMENT**
17            Defendants.
                                      *[Filed Concurrently with Statement of
18                                    Undisputed Material Facts; Request for
                                      Judicial Notice; Declarations of
19                                    Cameron Stanley, Corrin Cassidy, and
                                      Edward Flosi; and Proposed Order]*
20

21                                   **Date:   April 11, 2025
                                      Time:  2:00 p.m.
22                                    Courtroom:  2**

23                                   Trial Date: July 14, 2025
24

25
26
27
28

                                     1

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 11, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 2 of the United States District Court, Central District, located at 3470 Twelfth Street, Riverside, California 92501, Defendants COUNTY OF SAN BERNARDINO, CORRIN CASSIDY and CAMERON STANLEY ("Defendants"), will move, and hereby move, this Court, pursuant to Federal Rules of Civil Procedure, Rule 56, for an order granting summary judgment as to Plaintiff's Complaint, or in the alternative, partial judgment as to each cause of action, or any of them, on the following grounds:

1.      Plaintiff's First Claim for Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983) against Defendant Deputies Cameron Stanley and Corrin Cassidy fails because the Deputies acted in an objectively reasonable manner in using force, including deadly force, under the facts and circumstances and because the deputies are entitled to qualified immunity;

2.      Plaintiff's Sixth Claim for Battery against the County of Bernardino and Defendant Deputies Cameron Stanley and Corrin Cassidy fails because the Deputies acted in an objectively reasonable manner in using force, including deadly force, under the facts and circumstances and because the Deputies are entitled to qualified immunity;

3.      Plaintiff's Seventh Claim for Negligence against the County of Bernardino and Defendant Deputies Cameron Stanley and Corrin Cassidy fails because the Deputies acted in an objectively reasonable manner in using force, including deadly force, under the facts and circumstances and because the Deputies are entitled to qualified immunity;

4.      Plaintiff's Eight Claim for Violation of the Bane Act (Cal. Civil Code § 52.1) against the County of Bernardino and Defendant Deputies Cameron Stanley and Corrin Cassidy fails because Plaintiff did not have a constitutional right to evade arrest and the Deputies acted lawfully in arresting him.

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

2

1    This Motion is based upon this Notice of Motion, the attached Memorandum

2    of Points and Authorities, the Separate Statement of Uncontroverted Facts and

3    Genuine Disputes; Declarations of Christopher P. Wesierski, Edward Flosi, Cameron

4    Stanley and Corrin Cassidy; Request for Judicial Notice; all pleadings and records on

5    file with the Court; and upon such oral and documentary evidence as may be presented

6    at the hearing of this Motion.

7    This Motion is made following the conference of counsel pursuant to L.R. 7-3,

8    which took place via Zoom video conference on January 31, 2025. Kristen R.

9    Rodriguez, Esq., Wesierski & Zurek, LLP, attended the Zoom meeting on behalf of

10    Defendants. Renee V. Masongsong, Esq., Law Offices of Dale K. Galipo, attended

11    the Zoom meeting on behalf of Plaintiff. The Zoom video conference lasted 26

12    minutes and the Parties discussed each of Plaintiff's claims and why Defendants

13    believed they could be successful on Summary Judgment as to each claim, including

14    specific facts on which the Parties would rely to defeat (or in Plaintiff's case, support)

15    the each claim. Following the video conference, the Parties also exchanged additional

16    meet and confer emails.

17    / / /

18    / / /

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

3

1    Ultimately, the Parties were unable to resolve their differences on Plaintiff's

2   First, Sixth, Seventh and Eighth causes of action, and Defendants bring this

3   dispositive motion as to those 4 claims only—The Parties are preparing a stipulation

4   to dismiss the 4 other claims: (1) Claim 2—Unreasonable Search and Seizure—Denial

5   of Medical Care (42 U.S.C. § 1983); (2) Claim 3—Municipal Liability—

6   Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983); (3) Claim 4—

7   Municipal Liability—Ratification (42 U.S.C. § 1983); (4) Claim 5—Municipal

8   Liability—Failure to Train (42 U.S.C. § 1983).

9

10   DATED:  February 21, 2025          WESIERSKI & ZUREK LLP

11

12

13   By: _____

14   CHRISTOPHER P. WESIERSKI
     Attorneys for Defendants, COUNTY OF
15   SAN BERNARDINO, CORRIN
     CASSIDY, and CAMERON STANLEY
16

17

18

19

20

21

22

23

24

25

26

27

28

4910-5812-0990.1 SBD-00026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

3    I.      INTRODUCTION ....................................................................................... 9

4    II.     STATEMENT OF FACTS ......................................................................... 9

5    III.    STANDARD ON SUMMARY JUDGMENT ............................................. 15

6    IV.     PLAINTIFF'S EXCESSIVE FORCE CLAIMS UNDER THE
        FOURTH AMENDMENT CLAIMS ARE WITHOUT MERIT .................. 16
7
8    V.      THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY
        BECAUSE THEIR USE OF NON-DEADLY FORCE AND DEADLY
        FORCE WERE OBJECTIVELY REASONABLE ........................................ 19
9
10           A.      Deputy Defendants Cassidy And Stanley Are Entitled to
                Qualified Immunity Because Their Acts Did Not Violate 'Clearly
11              Established Law' ........................................................................... 19

12                   1.      The Facts Alleged Do Not Show the Deputy Defendants'
                        Conduct Violated a Constitutional Right ............................ 20
13
                     2.      No Constitutional Right To Fail To Cooperate With A
14                      Lawful Arrest ....................................................................... 21

15   VI.     PLAINTIFF'S CLAIM UNDER THE BANE ACT FAILS BECAUSE
        PLAINTIFF DID NOT HAVE A CONSTITUTIONAL RIGHT TO
16      EVADE ARREST ...................................................................................... 22

17   VII.    PLAINTIFF'S CLAIMS FOR BATTERY AND NEGLIGENCE LACK
        MERIT ...................................................................................................... 23
18
    VIII.   CONCLUSION ......................................................................................... 26

19
20
21
22
23
24
25
26
27
28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4910-5812-0990.1 SBD-00026
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................... 15

6
*City of Escondido v. Emmons*,
7  139 S. Ct. 500 (2019)...................................................................... 19

8
*Davis v. Scherer*,
9  468 U.S. 183 (1984) ....................................................................... 19

10
*Forrett v. Richardson*,
11  112 F.3d 416 (9th Cir. 1997) ......................................................... 17

12
*Graham v. Connor*,
  490 U.S. 386 (U.S. 1989) ........................................................16, 17
13

14
*Kisela v. Hughes*,
  138 S. Ct. 1148, 1153, (2018 ......................................................... 19
15

16
*M.H. v. Cnty. of Alameda*,
  62 F. Supp. 3d 1049 (N.D. Cal. 2014)............................................ 19

17
*Monzon v. City of Murrieta*,
18  978 F.3d 1150 (9th Cir. 2020) ....................................................... 19

19
*Nader v. Blackwell*,
20  545 F.3d 459 (6th Cir. 2008) ......................................................... 19

21
*Reynolds v. County of San Diego*
22  84 F.3d 1162 (9th Cir. 1996) ......................................................... 17

23
*Saucier v. Katz*,
24  533 U.S. 194 (2000) ....................................................................... 19

25
*Tennessee v. Garner*,
  471 U. S. 1 (1985) .......................................................................... 17
26

27
*Thornhill Publ'g Co., Inc. v. GTE Corp.*,
  594 F.2d 730 (9th Cir. 1979) ......................................................... 15
28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

6

*West v. Atkins*,
    487 U.S. 4242 (1988) ................................................................... 16

**State Cases**

*Brown v. Ransweiler*
    (2009) 171 Cal.App.4th 516 ...................................................... 24

*City of Simi Valley v. Superior Court*
    (2003) 111 Cal.App.4th 1077 .................................................... 22

*Edson v. City of Anaheim*
    (2009) 63 Cal.App.4th 1269 ...................................................... 24

*Hayes v. Cnty. of San Diego*
    (2013) 57 Cal. 4th 622 ........................................................ 23, 24

*Jones v. Kmart Corp.*
    (1998) 17 Cal.4th 329 ............................................................... 22

*Martinez v. County of Los Angeles*
    (1996) 47 Cal. App. 4th 334 ................................................ 23, 24

*People v. Curtis*
    (1969) 70 Cal.2d 347 ................................................................. 24

*Venegas v. County of Los Angeles*
    (2004) 32 Cal.4th 820 ............................................................... 22

*Yount v. City of Sacramento*
    (2008) 43 Cal.4th 885 ............................................................... 23

**State Statutes**

Bane Act ...................................................................................... 22

Cal. Penal Code § 834(a) ........................................................... 24

Cal. Penal Code § 835a .............................................................. 24

Cal. Penal Code § 836.5(b) ........................................................ 24

*Civil* Code, § 52.1 ..................................................................... 22

*Gov. Code* § 815.2 .................................................................... 25

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4910-5812-0990.1 SBD-00026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**Rules**

Federal Rules of Civil Procedure Rule 56 ..............................................................15

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4910-5812-0990.1 SBD-00026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This matter concerns an officer involved shooting that took place on August 19, 2022. Defendant Deputies responded to a crowded WinCo grocery store to find Plaintiff intoxicated, drinking from an open bottle of alcohol and brandishing a knife. After failing to comply with countless verbal commands, the Deputies used less lethal force in an attempt to secure the scene, protect themselves and protect the public. The less lethal force had no physical effect on Plaintiff, who then fled from the Deputies, unlawfully evading arrest. Ultimately, lethal force was administered when Deputy Stanley feared for his life and his Partner's life, as Plaintiff swung his knife in a stabbing/slashing motion toward Deputy Cassidy from a mere three feet away.

The uncontroverted facts show: (1) Defendants had probable cause and/or reasonable suspicion to believe Plaintiff committed a crime or would commit a crime; (2) Defendants properly assessed the circumstances presented to them immediately prior to the administering lethal force and less lethal force; (3) Deputy Cassidy's use of less lethal force was objectively reasonable under the circumstances and (4) Deputy Stanley's use of deadly force was objectively reasonable under the circumstances. As such, Defendants are entitled to summary judgment as a matter of law, or alternatively, partial summary judgment.

## II.    STATEMENT OF FACTS

On August 19, 2022, at approximately 12:02 p.m., Deputy Cameron Stanley ("Deputy Stanley") and Deputy Corrin Cassidy ("Deputy Cassidy") responded to a call for service at WinCo Foods ("WinCo"), a grocery store located at 15350 Roy Rogers Drive, in Victorville, California. (Uncontroverted Fact "UF" 1.) The reporting party (a WinCo employee) advised dispatch that an African American man, holding an exposed knife in his hand, had taken a bottle of alcohol of the shelf and was drinking it in the alcohol isle. (UF 2.) The call for service occurred when the store was open to the public and heavily populated with customers. (UF 3.)

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

9

1    When Deputies Stanley and Cassidy (the "Deputies") arrive at the scene, they

2    observed numerous customers. (UF 4.) The parking lot and outside of the store was

3    so heavily populated, the Deputies had to maneuver around people to enter. (UF 5.)

4    Once they entered the store, Deputy Stanley observed at least 75 customers inside.

5    (UF 6.) Both Deputies observed numerous customers waiting in lines to check out.

6    (UF 7.)

7    The Deputies were greeted outside by the reporting employee, Frank Calderon.

8    (UF 8.) Mr. Calderon appeared frightened. Mr. Calderon led the Deputies to the

9    alcohol isle and pointed out the suspect stating, "that's the guy with the knife." (UF

10    9.) Mr. Calderon confirmed that he wanted the suspect to leave the store. (UF 10.)

11    The suspect was later identified as Plaintiff Roderick Randall ("Mr. Randall.") (UF

12    11.)

13    When the Deputies first approached Mr. Randall he was standing alone in the

14    alcohol isle. (UF 12.) From approximately fifteen (15) feet away, the Deputies

15    observed that Mr. Randall was holding a half-empty, open bottle of alcohol in his left

16    hand. (UF 13.) In his right hand, Mr. Randall was holding a heavy-duty folding box

17    knife (the kind used in construction) in his right hand. (UF 14.) The knife handle was

18    approximately 5-6 inches, and the blade was approximately 1 inch. (UF 15.) Mr.

19    Randall's eyes were glossed over, he was disoriented, and Deputy Stanley observed

20    him "fumble" when he stepped. (UF 16.) The Deputies believed Mr. Randall to be

21    under the influence of alcohol. (UF 17.) The Deputies therefore began attempting to

22    deescalate the situation and prevent harm to the public by securing the knife held by

23    Mr. Randall, and detain Mr. Randall. (UF 18.)

24    At this point in the encounter, the Deputies believed there was probable cause

25    a suspected crime had been committed, because the manager wanted Mr. Randall

26    removed from the store, constituting trespassing; Mr. Randall appeared to be publicly

27    intoxicated; and Mr. Randall was brandishing a weapon. (UF 19.)

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

10

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    The Deputies approached Mr. Randall, and stood approximately 15 feet away

2  from him. (UF 20.) The Deputies stood side by side. (UF 21.) There were other

3  customers in the aisle. (UF 22.) When Mr. Randall faced the Deputies, Deputy

4  Cassidy stated, "Hey, man, what's going on?" (UF 23.) Then Deputy Stanley stated,

5  "Hey, man, can you do me a favor and toss the knife to the side?" (UF 24.) Mr. Randall

6  did not verbally respond to either question. (UF 25.) Instead, in response, he took an

7  aggressive, "bladed" stance: Mr. Randall flexed both of his arms in front of his body

8  with his elbows slightly bent. (UF 26.) His hands were near his waistband area, balled

9  into fists. In this aggressive, bladed stance, Mr. Randall continued to hold the bottle

10  of alcohol in his left hand and the knife in his right hand. (UF 27.) Mr. Randall's body

11  language appeared as if he wanted to fight. (UF 28.)

12    Deputy Stanley then asked Mr. Randall to drop the knife. (UF 29.) Again, Mr.

13  Randall did not verbally respond. (UF 30.) In response, he swayed back and forth in

14  an aggressive manner. (UF 31.) He appeared agitated and the muscles in his face were

15  flexed. (UF 32.) He glared at the Deputies in an aggressive manner. (UF 33.) Deputy

16  Cassidy then ordered Mr. Randall two or three times to, "drop the knife" and "put the

17  knife down." (UF 34.)   He did not respond verbally, and continued to hold an

18  aggressive stance. (UF 35.) At this time, Deputy Cassidy unholstered her taser and

19  put both lasers (from the taser) at/near Mr. Randall's chest/upper body. (UF 36.) While

20  Deputy Cassidy pointed her taser at Mr. Randall, Deputy Stanley continued to give

21  Mr. Randall verbal commands. (UF 37.) Deputy Stanley asked Mr. Randall a third

22  time to drop the knife, and Mr. Randall again refused. (UF 38.) Mr. Randall continued

23  to flex his arms with the knife in his hand. (UF 39.) Deputy Stanley commanded Mr.

24  Randall to drop the knife at least three more times. (UF 40.) Mr. Randall refused all

25  verbal commands, and continued to flex his arms with the knife in his hand and stare

26  at the Deputies in an aggressive manner. (UF 41.) Based on his aggressive stance, the

27  Deputies believed Mr. Randall could advance toward them or another customer in the

28  store. (UF 42.)

4910-5812-0990.1 SBD-00026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    Based upon his failure to comply with the Deputies commands and his

2    aggressive stance, Deputy Cassidy deployed her taser at Mr. Randall. (UF 43.) When

3    she deployed her taser she was approximately 10 feet away from Mr. Randall. (UF

4    44.) Both taser prongs struck Mr. Randall in his upper torso area, toward the right side

5    of his chest. (UF 45.) When the taser prongs hit him, Mr. Randall dropped the bottle

6    of alcohol, but continued to hold the knife in his right hand. (UF 46.) Upon being hit

7    with the prongs, Mr. Randall yelled, "Fuck you," and immediately tried to swipe them

8    and pull them (the prongs/wires) from his chest, using his left hand. (UF 47.) While

9    the taser prongs where still in his body, Deputy Cassidy ordered Mr. Randall to, "get

10   on the ground." (UF 48.) Mr. Randall ignored Deputy Cassidy's demands and

11   continued to try to remove the prongs/wires from his body. (UF 49.) While the taser

12   prongs were in his body, Deputy Stanley verbally commanded Mr. Randall, at least

13   two times to, "get on the ground," but he refused to get on the ground. (UF 50.) Despite

14   the less-lethal purpose of a taser, the taser prongs did not physically affect or

15   incapacitate Mr. Randall in manner. (UF 51.) Deputy Cassidy was scared for her

16   safety and the safety of others because this was the first time in her career she had

17   ever observed a taser fail to subdue a suspect in any manner. (UF 52.)

18       After Mr. Randall successfully removed the taser prongs/wires from his body,

19   he took a few steps backwards, turned and began fleeing from Deputy Stanley and

20   Deputy Cassidy—running toward other area(s) of the store where there were

21   customers. (UF 53.) The Deputies pursued him on foot—Deputy Cassidy was a few

22   paces ahead of Deputy Stanley, who followed closely behind. (UF 54.) Mr. Randall

23   ran north down the alcohol aisle and began to round east corner of the end of the aisle.

24   (UF 55.) As he rounded the corner, the Deputies lost sight of Mr. Randall for

25   approximately 1 second. (UF 56.)

26       When Deputy Cassidy rounded the east corner of the aisle, Mr. Randall came

27   back into her view. (UF 57.) Mr. Randall had stopped running. (UF 58.) He turned

28   around and was facing Deputy Cassidy. (UF 59.) Mr. Randall held the knife in his

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

12

1  right hand, raised his right hand above his head, and swung the knife downward
2  toward Deputy Cassidy in a slashing manner. (UF 60.) Deputy Cassidy was
3  approximately 3 to 5 feet from Mr. Randall while he was swinging the knife in her
4  direction. (UF 61.) While Mr. Randall was swinging the knife at Deputy Cassidy, and
5  in an effort to disarm him, Deputy Cassidy deployed her taser at Mr. Randall a second
6  time. (UF 62.) As she fired the taser the second time, Deputy Cassidy lost her footing
7  and fell backwards. (UF 63.) The second taser shot hit Mr. Randall, however it, again,
8  did not have a physical effect on him. (UF 64.)

9        Deputy Stanley rounded the east corner of the aisle almost simultaneous to the
10 time Deputy Cassidy rounded the east corner of the aisle. (UF 65.) As he rounded the
11 aisle, Mr. Randall came back into Deputy Stanley's sight line, and Deputy Stanley
12 observed Mr. Randall raising his right hand up holding the box knife and swinging
13 the knife in a downward motion, with a forward angle. (UF 66.) Deputy Stanley
14 believed Mr. Randall he lunging at Deputy Cassidy. (UF 67.) At this moment, Deputy
15 Stanley was approximately 5 to 8 feet from Mr. Randall. (UF 68.) When Deputy
16 Stanley observed Mr. Randall raising his right hand up holding the box knife and
17 swinging the knife down at a forward angle toward Deputy Cassidy, he believed Mr.
18 Randall was attempting to stab or slash Deputy Cassidy. (UF 69.) To protect Deputy
19 Cassidy from this threat of great bodily harm, serious injury and/or death, Deputy
20 Stanley fired his firearm to stop Mr. Randall from stabbing or slashing Deputy
21 Cassidy. (UF 70.) Deputy Stanley believed Mr. Randall was going seriously injure or
22 kill him or Deputy Cassidy. (UF 71.) Deputy Cassidy's deployed her taser and Deputy
23 Stanley fired his firearm at approximately the same time. (UF 72.)

24       Mr. Randall was struck by the rounds of lethal force, and fell to the ground.
25 (UF 73.) Once Mr. Randall was on the ground, Deputy Stanley holstered his firearm
26 and placed handcuffs on Mr. Randall, assisted by Deputy Cassidy who had just stood
27 up from her fall to the floor. (UF 74.) He located gloves and immediately began to
28 administer aid to Mr. Randall. (UF 75.) Deputy Cassidy radioed for aid. Medical

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

13

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    personnel arrived within 5 minutes to assist Mr. Randall. (UF 76.)

2        At the time of the lethal force encounter, Deputy Stanley believed he fired four

3    to five rounds from his firearm. (UF 77.) Deputy Stanley fired only until he observed

4    that Mr. Randall was no longer coming after Deputy Cassidy or myself and that he

5    was no longer a threat. (UF 78.) There were no customers near Mr. Randall at this

6    moment, and Deputy Stanley believed there was no possibility a customer would be

7    injured if he deployed lethal force to protect Deputy Cassidy. (UF 79.)

8        Both times Deputy Cassidy deployed her taser at Mr. Randall, he was still

9    armed with the knife. (UF 80.) The second time Deputy Cassidy deployed his taser,

10    Mr. Randall held the knife in his right hand, raised his right hand above his head, and

11    swung the knife downward toward her in a slashing manner. (UF 81.) Deputy Cassidy

12    was approximately 3 to 5 feet from Mr. Randall while he was swinging the knife in

13    her direction. (UF 82.)

14        The Deputies had a legitimate law enforcement purpose and reasonable

15    suspicion based on current law enforcement training and practices to contact and

16    detain Mr. Randall. (UF 83.) The Deputies had a legitimate law enforcement purpose

17    and probable cause based on current law enforcement training and practices to arrest

18    Mr. Randall once he swung the box-cutter downward several times, refused the

19    Deputies' commands, and ran away from the Deputies. (UF 84.) The deputies used

20    verbal persuasion several times to gain Mr. Randall's cooperation to disarm. (UF 85.)

21    Officers are trained that they must first deal with any dangerous actions and behaviors

22    of a subject in order to stabilize the situation prior to making any effort to evaluate if

23    a subject; (1) is possibly suffering from mental psychosis, or (2) has a pre-existing

24    mental illness. (UF 86.) Mr. Randall did not allow the opportunity for the officers to

25    conduct any such evaluation. (UF 87.) The Deputies appropriate pre-force tactics that

26    were appropriate and consistent with current law enforcement training and practices.

27    (UF 88.) The intermediate non-deadly force responses by Deputy Cassidy were

28    appropriate and reasonable to prevent a perceived imminent and credible threat of

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

14

1  serious bodily injury or death. (UF 89.) The intermediate non-deadly force responses

2  were appropriate and consistent with current law enforcement training standards in

3  consideration of the "totality of the circumstances" presented to Deputy Cassidy at

4  the moments non-deadly force was used. (UF 90.) The deadly force response by

5  Deputy Stanley was appropriate and reasonable to prevent a perceived imminent and

6  credible threat of serious bodily injury or death. (UF 91.) The deadly force response

7  was appropriate and consistent with current law enforcement training standards in

8  consideration of the "totality of the circumstances" presented to Deputy Stanley at the

9  moments deadly force was used. (UF 92.)

10  **III.   STANDARD ON SUMMARY JUDGMENT**

11      Federal Rules of Civil Procedure Rule 56 provides, in pertinent part, the

12  following:

> (a) A party may move for summary judgment, identifying each claim or
> defense – or the part of each claim or defense – on which summary
> judgment is sought. The court shall grant summary judgment if the
> movant shows that there is no genuine dispute as to any material fact and
> the movant is entitled to judgment as a matter of law…

16      The moving party bears the initial burden of demonstrating the absence of any

17  genuine issues of material fact. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).)

18  The moving party can satisfy this burden by demonstrating that the nonmoving party

19  failed to make a showing sufficient to establish an element of his or her claim on

20  which that party will bear the burden of proof at trial. (*Id*. at 322-23.) Once the moving

21  party has met its initial burden, the nonmoving party must "go beyond the pleadings

22  and by her own affidavits, or by the 'depositions, answers to interrogatories, and

23  admissions on file' designate 'specific facts showing that there is a genuine issue for

24  trial.'" (*Id*. at 324.) If the non-moving party fails to make a sufficient showing, the

25  moving party is entitled to judgment. (*Id.* at 325.) Conclusory, speculative testimony

26  in affidavits is insufficient to raise genuine issues of fact. (*Thornhill Publ'g Co., Inc.

27  v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).) FRCP 56(a) provides that "[a] party

28  may move for summary judgment, identifying each claim or defense — *or the part*

15

1    *of each claim or defense* — on which summary judgment is sought" (emph. added).

## IV.    PLAINTIFF'S EXCESSIVE FORCE CLAIMS UNDER THE FOURTH AMENDMENT CLAIMS ARE WITHOUT MERIT

To succeed on a Section 1983 claim, a plaintiff must prove that his constitutional rights were violated, and that the violation was caused by a person acting under color of law. (*West v. Atkins*, 487 U.S. 4242 (1988).) In this case, Plaintiff asserts that the officers used excessive force during the encounter with Mr. Randall and deprived Mr. Randall of his right to be free of unreasonable searches and seizures under the Fourth Amendment. This claim fails because there Plaintiffs cannot establish a violation of a constitutional right held by Mr. Randall.

In *Graham v. Connor*, the United States Supreme Court held that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (*Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989).) "[A]ll claims that law enforcement have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard..." (*Id.* at 395.)

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to **the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.**" (*Id.* at 396 (citation omitted); emphasis added.)

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (*Id.* at 396.) "The calculus of reasonableness must embody allowance for

16

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1   the fact that police officers are often forced to make split-second judgments—in

2   circumstances that are tense, uncertain, and rapidly evolving—about the amount of

3   force that is necessary in a particular situation." (*Id.* at 396-97.)

4       Under the fleeing felon doctrine set forth in *Tennessee v. Garner*, 471 U. S. 1,

5   (1985), the Supreme Court explained that if a law enforcement officer has probable

6   cause to believe that a suspect poses a threat of serious physical harm, either to the

7   officer or to others, it is not constitutionally unreasonable to prevent escape by using

8   deadly force. Thus, if the suspect threatens the officer with a weapon or there is

9   probable cause to believe that he has committed a crime involving the infliction or

10  threatened infliction of serious physical harm, deadly force may be used if necessary

11  to prevent escape, and if, where feasible, some warning has been given." (*Garner*,

12  *supra*, 471 U.S. at 11-12; see also *Forrett v. Richardson*, 112 F.3d 416, 418-421 (9th

13  Cir. 1997) (affirming directed verdict for officers under Garner's "fleeing felon" rule

14  where armed burglar had fled through residential area after shooting victims, evaded

15  pursuit for one hour, and failed to comply with commands before officers fired to stop

16  him).)

17      In *Reynolds v. County of San Diego* 84 F.3d 1162 (9th Cir. 1996), a deputy was

18  advised that Reynolds was at a gas station armed with a knife and acting strangely.

19  The deputy saw Reynolds with a knife and ordered him to get on the ground and put

20  his hands in the air. Reynolds got down on the ground and put the knife down next to

21  his body. The deputy moved towards Reynolds while repeatedly telling him not to

22  move. Reynolds suddenly sat up and grabbed the knife. The deputy moved behind

23  Reynolds, put his knee in his back and ordered him to drop the knife. Reynolds twisted

24  and swung the knife towards the deputy, and the deputy fired his weapon, killing

25  Reynolds. The court found the deputy's use of force was objectively reasonable.

26      Based on the totality of the circumstances, Deputy Stanley and Deputy Cassidy

27  acted in an objectively reasonable manner in using non-deadly force and deadly force

28  against Plaintiff. Based upon the information from dispatch and upon entering the

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1    store, the Deputies encountered Plaintiff brandishing a knife and holding an open

2    bottle of alcohol in a crowded store, with at least 75 people in close proximity.

3    Plaintiff was under the influence of alcohol and the store manager was frightened and

4    wanted Plaintiff to leave the premises. Plaintiff ignored at least nine verbal commands

5    to drop the knife, and in response, took a bladed aggressive stance: flexing his

6    muscles, clenching his fists and glaring at the Deputies. Based upon Plaintiff's failure

7    to comply with countless verbal commands and his aggressive stance, the Deputies

8    did not believe Plaintiff was going to comply with my their requests to drop the knife.

9    They further believed, based upon Plaintiff's failure to comply with numerous verbal

10   commands and his aggressive stance, Plaintiff could charge at the Deputies, flee the

11   scene, or severely injure one of the many customers in the store. At this point, Deputy

12   Cassidy reasonably deployed less lethal force in an attempt to keep herself safe, keep

13   her Partner safe, keep customers safe and to lawfully take Plaintiff into custody, given

14   that there was ample probable cause a suspected crime had been committed.

15        Alarmingly, the less lethal force had no physical effect on Plaintiff, who ripped

16   the taser prongs from his body, yelled profanities at the Deputies, and continued to

17   evade arrest by running away from them (and toward customers) in a crowded grocery

18   store, while continuing to grip the knife in an aggressive manner. The Deputies

19   pursued Plaintiff on foot, until Plaintiff suddenly stopped running, turned toward

20   Deputy Cassidy and swung the knife at her in a stabbing/slashing motion, a mere three

21   feet from her body.

22        Believing that Plaintiff was going to kill or seriously injure her, her Partner, or

23   another nearby customer, Deputy Cassidy deployed another round of less lethal force

24   to stop the threat of death. At the same moment, and believing that Plaintiff was going

25   to kill or seriously injure his Partner, himself, another nearby customer, Deputy

26   Stanley deployed lethal force to stop the threat of death. Based on these

27   circumstances, it is clear that the officers acted in an objectively reasonable manner

28   in their use of force against Plaintiff and summary judgment is appropriate.

4910-5812-0990.1 SBD-00026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

# V. THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR USE OF NON-DEADLY FORCE AND DEADLY FORCE WERE OBJECTIVELY REASONABLE

## A. Deputy Defendants Cassidy And Stanley Are Entitled to Qualified Immunity Because Their Acts Did Not Violate 'Clearly Established Law'

Even if Plaintiff could prove a Fourth Amendment violation with respect to the shooting (*he cannot*), the Deputy Defendants are entitled to qualified immunity. Qualified immunity presents a two-part inquiry. First, the court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" (*Saucier v. Katz*, 533 U.S. 194, 201 (2000).) If the answer is yes, then the court must determine whether the right was clearly established at the time of the alleged violation. (*Id*.) "Plaintiffs 'bear the burden of proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct.'"(*M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1093–94 (N.D. Cal. 2014) (internal citation omitted)

As to the second prong of the analysis, the Supreme Court has emphasized that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." (*Saucier*, 533 U.S. at 202; *see also Nader v. Blackwell*, 545 F.3d 459, 473 (6th Cir. 2008).) " 'An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153, (2018))." (*Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020). In this way, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (*Davis v. Scherer*, 468 U.S. 183, 196 (1984).)

19

1.      **The Facts Alleged Do Not Show the Deputy Defendants'
Conduct Violated a Constitutional Right**

As provided above, Deputies encountered Plaintiff brandishing a knife and holding an open bottle of alcohol in a crowded store, with at least 75 people in close proximity. Plaintiff was under the influence of alcohol and the store manager was frightened and wanted Plaintiff to leave the premises. Plaintiff ignored at least nine verbal commands to drop the knife, and in response, took a bladed aggressive stance: flexing his muscles, clenching his fists and glaring at the Deputies. Based upon Plaintiff's failure to comply with countless verbal commands and his aggressive stance, the Deputies did not believe Plaintiff was going to comply with my their requests to drop the knife. They further believed, based upon Plaintiff's failure to comply with numerous verbal commands and his aggressive stance, Plaintiff could charge at the Deputies, flee the scene, or severely injure one of the many customers in the store. At this point, Deputy Cassidy reasonably deployed less lethal force in an attempt to keep herself safe, keep her Partner safe, keep customers safe and to lawfully take Plaintiff into custody, given that there was ample probable cause a suspected crime had been committed.

Alarmingly, the less lethal force had no physical effect on Plaintiff, who ripped the taser prongs from his body, yelled profanities at the Deputies, and continued to evade arrest by running away from them (and toward customers) in a crowded grocery store, while continuing to grip the knife in an aggressive manner. The Deputies pursued Plaintiff on foot, until Plaintiff suddenly stopped running, turned toward Deputy Cassidy and swung the knife at her in a stabbing/slashing motion, a mere three feet from her body.

Believing that Plaintiff was going to kill or seriously injure her, her Partner, or another nearby customer, Deputy Cassidy deployed another round of less lethal force to stop the threat of death. At the same moment, and believing that Plaintiff was going to kill or seriously injure his Partner, himself, another nearby customer, Deputy

20

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  Stanley deployed lethal force to stop the threat of death

2      In light of Plaintiff's refusal to comply with verbal demands, the less-lethal

3  force responses used were reasonable to overcome the resistance of Plaintiff, to

4  effectuate his arrest, and to prevent the immediate and credible threat posed by

5  Plaintiff to the Deputies and other in the store at the time of the incident. Similarly,

6  the deadly force response by Deputy Stanley was appropriate and reasonable to

7  prevent a perceived imminent and credible threat of serious bodily injury or death.

8  The deadly force response was appropriate and consistent with current law

9  enforcement training standards in consideration of the "totality of circumstances"

10  presented to Deputy Stanley at the moments force was used.

11      Therefore, the practices used by the Deputy Defendants were proper and no

12  reasonable law enforcement officer would believe the use of non-deadly force and

13  deadly force would violate a citizens constitutional rights when the citizen is armed

14  with a large knife, under the influence of alcohol, evading arrest, and swinging the

15  knife in a stabbing/slashing manner toward Deputy Cassidy, from a mere three feet

16  away.

17      **2.    No Constitutional Right To Fail To Cooperate With A Lawful**

18          **Arrest**

19      As provided above, the Deputy Defendants' use of non-deadly force and  deadly

20  force was proper and reasonable. Deputies were on scene responding to a call for

21  assistance placed after Plaintiff was brandishing a knife and drinking alcohol in a

22  crowded grocery store. The responding officers observed Plaintiff to be under the

23  influence of alcohol, and observed Plaintiff acting aggressively toward them, taking

24  a bladed stance, flexing his muscles and gripping the knife with clenched fists. The

25  officers attempted to use less-lethal force to apprehend Plaintiff unharmed, but Mr.

26  Nunez would not comply to any verbal demand and the less lethal force did not

27  physically subdue him in any manner. Officers also gave numerous lawful orders to

28  drop the knife before and during the less-lethal and force encounters. The Deputy

21

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1  Defendants acted in an objectively reasonable manner when using non-deadly force

2  and deadly force in light of these circumstances and a reasonably competent official

3  would have concluded that the actions taken were lawful. As such, Deputy Defendants

4  are entitled to qualified immunity.

5  **VI.    PLAINTIFF'S CLAIM UNDER THE BANE ACT FAILS BECAUSE**

6  **PLAINTIFF DID NOT HAVE A CONSTITUTIONAL RIGHT TO**

7  **EVADE ARREST**

8      The elements of a cause of action for violation of civil rights under *Civil* Code,

9  section 52.1 are: (1) **the defendant officers interfered with or attempted to**

10  **interfere with the plaintiff's constitutional rights**; (2) the plaintiff reasonably

11  believed that if he exercised his constitutional rights, the officers would commit

12  violence against him *or* that the officers injured the plaintiff to prevent him from

13  exercising his constitutional rights; (3) that plaintiff was harmed; and (4) the officers'

14  conduct was a substantial factor in causing the plaintiff's harm. (See CACI 3025,

15  emphasis added.)

16      As stated by the California Supreme Court, "[t]he Legislature enacted [Civil

17  Code] section 52.1 to stem a tide of hate crimes." (*Jones v. Kmart Corp.* (1998) 17

18  Cal.4th 329, 338.) *Civil Code*, section 52.1 requires "an attempted or completed act

19  of interference with a legal right, accompanied by a form of coercion." (*Id.* at 334.)

20      To obtain relief under *Civil Code*, section 52.1, a plaintiff need not allege the

21  defendant acted with discriminatory animus or intent; a defendant is liable if he or she

22  interfered with the plaintiffs' constitutional rights by the requisite threats,

23  intimidation, or coercion. (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820,

24  841-843.) The word "interferes" as used in the Bane Act means "violates." (*See Jones,*

25  *supra,* 17 Cal.4th at 338 [California Supreme Court equates interfere" with "violate"];

26  *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077 [same].)

27      Here, there is no Constitutional right to not cooperate with law enforcement's

28  lawful arrest. The officers on scene had probable cause to arrest Plaintiff given that

22

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

he was brandishing a knife in a crowded grocery store, under the influence of alcohol in public and trespassing. The officers tried to use less-lethal force in an attempt to apprehend Plaintiff unharmed, but Plaintiff would not comply, ripped the taser prongs from his body and fled arrest on foot. Plaintiff also refused at least 9 verbal commands to drop the knife, and swung the knife in a stabbing/slashing manner toward Deputy Cassidy from very close proximity. Deputy Stanley only used deadly force when Plaintiff posed a threat severe bodily injury and death to his Partner, himself and the public patron in the grocery store. As such, the Deputy Defendants did not violate Plaintiff's Constitutional rights by using lethal or less-lethal force and summary judgment should be granted.

## VII.  PLAINTIFF'S CLAIMS FOR BATTERY AND NEGLIGENCE LACK MERIT

Plaintiff's state claims for battery and negligence fail as a matter of law because the non-deadly force and deadly force used by the Deputy Defendants was reasonable under the circumstances. For the same reasons that no constitutional violations were committed, no state torts were committed, so the negligence and battery claims fail as a matter of law. (See *Martinez v. County of Los Angeles* (1996) 47 Cal. App. 4th 334, 349-50.)

Although the scope of the circumstances that may be considered under a negligence claim arising from a peace officer's use of force is broader than some federal courts use when evaluating Fourth Amendment excessive force claims - regardless of whether the California law claim is for battery, assault, negligence, or wrongful death - to evaluate the reasonableness of the officer's conduct, courts must apply the Graham reasonableness standard. (See *Hayes v. Cnty. of San Diego* (2013) 57 Cal. 4th 622, 632 (citing Graham in the pre-shooting negligence claim context, "as the nation's high court has observed, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *Yount v. City of Sacramento* (2008) 43 Cal.4th

23

885, 902 (holding that the same reasonableness standards for Fourth Amendment claims apply to battery); accord *Martinez*, 47 Cal.App.4th at 349-350 (applying *Graham* to police battery and/or wrongful death claims); *Edson v. City of Anaheim* (2009) 63 Cal.App.4th 1269, 1272-1273 (same); *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525 (same).

To the extent Plaintiffs bases the negligence claim on pre-shooting tactics, liability can only arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of the circumstances, that the use of deadly force was unreasonable. (*Hayes*, *supra*, 57 Cal. 4th at 626.) Additionally, California law holds that a peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape, or to overcome resistance. (See Cal. Penal Code § 835a; *Edson*, *supra*, 63 Cal.App.4th at 1272-1273.) Furthermore, in California, a person who should know that they are being seized by a police officer is duty bound to refrain from resisting such seizure, even if the seizure itself is unlawful. (See Cal. Penal Code § 834(a); Cal. Penal Code § 836.5(b); *People v. Curtis* (1969) 70 Cal.2d 347, 357.)

Here, as provided above, Deputy Stanley and Deputy Cassidy acted in an objectively reasonable manner in using non-deadly force and deadly force against Plaintiff. Based upon the information from dispatch and upon entering the store, the Deputies encountered Plaintiff brandishing a knife and holding an open bottle of alcohol in a crowded store, with at least 75 people in close proximity. Plaintiff was under the influence of alcohol and the store manager was frightened and wanted Plaintiff to leave the premises. Plaintiff ignored at least nine verbal commands to drop the knife, and in response, took a bladed aggressive stance: flexing his muscles, clenching his fists and glaring at the Deputies. Based upon Plaintiff's failure to comply with countless verbal commands and his aggressive stance, the Deputies did not believe Plaintiff was going to comply with my their requests to drop the knife. They further believed, based upon Plaintiff's failure to comply with numerous verbal

24

commands and his aggressive stance, Plaintiff could charge at the Deputies, flee the scene, or severely injure one of the many customers in the store. At this point, Deputy Cassidy reasonably deployed less lethal force in an attempt to keep herself safe, keep her Partner safe, keep customers safe and to lawfully take Plaintiff into custody, given that there was ample probable cause a suspected crime had been committed.

Alarmingly, the less lethal force had no physical effect on Plaintiff, who ripped the taser prongs from his body, yelled profanities at the Deputies, and continued to evade arrest by running away from them (and toward customers) in a crowded grocery store, while continuing to grip the knife in an aggressive manner. The Deputies pursued Plaintiff on foot, until Plaintiff suddenly stopped running, turned toward Deputy Cassidy and swung the knife at her in a stabbing/slashing motion, a mere three feet from her body.

Believing that Plaintiff was going to kill or seriously injure her, her Partner, or another nearby customer, Deputy Cassidy deployed another round of less lethal force to stop the threat of death. At the same moment, and believing that Plaintiff was going to kill or seriously injure his Partner, himself, another nearby customer, Deputy Stanley deployed lethal force to stop the threat of death. Because the Deputy Defendants' conduct was objectively reasonable, they cannot be liable on the state claims for negligence and battery. Accordingly, there also can be no basis for respondent superior liability against the County (*Gov. Code* § 815.2.) for these claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

25

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## VIII.  <u>CONCLUSION</u>

Defendants respectfully request this Court grant the instant motion for summary judgment, in full. Alternatively, Defendants seek partial summary adjudication as to each claim.

DATED:  February 21, 2025          WESIERSKI & ZUREK LLP

By: _____
CHRISTOPHER P. WESIERSKI
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4910-5812-0990.1 SBD-00026

1

**<u>CERTIFICATE OF COMPLIANCE</u>**

2      The undersigned, Counsel of record for Defendants County of San Bernardino,

3 Corrin Cassidy and Cameron Stanley, certifies that this brief contains 5,972, which:

4      __X__ Complies with the word limit of L.R. 11-6-1.

5      ____ Complies with the word limit set by court order dated_____.

6

7 DATED:  February 21, 2025      WESIERSKI & ZUREK LLP

8

9                                    *Christopher P. Wesierski*

10      By: _____

11          CHRISTOPHER P. WESIERSKI

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

27

4910-5812-0990.1 SBD-00026

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT