Christopher P. Wesierski [Bar No. 086736]
  *cwesierski@wzllp.com*
Kathryn J. Harvey [Bar No. 241029]
  *kharvey@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; CAMERON STANLEY and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00086-SSS-SP<br>*Assigned to*:<br>Hon. Sunshine S. Sykes<br><br>**DECLARATION OF CORRIN CASSIDY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL JUDGMENT**<br><br>*[Filed Concurrently with Motion for Summary Judgment; Statement of Undisputed Material Facts; Request for Judicial Notice; Declarations of , Cameron Stanley, and Edward Flosi; and Proposed Order]*<br><br>**Date:   April 11, 2025**<br>**Time:   2:00 p.m.**<br>**Courtroom:  2**<br><br>Trial Date: July 14, 2025 |

.

# DECLARATION OF CORRIN CASSIDY

I, Corrin Cassidy, declare as follows:

1. I am over the age of 18 years. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I have been employed with the San Bernardino County Sheriff's Department since June 2020. I have been assigned as a Patrol Deputy at the Victorville Police Station since November 2021. In my position as Patrol Deputy I received 12 – 14 weeks of field training.

3. I am aware of the San Bernardino County Sheriff's Department's policies and guidelines, including those involving the use of deadly force. I am also aware of the State of California laws, policies, and/or guidelines involving law enforcement and deadly force.

4. On Friday August 19, 2022, at approximately 1202 hours, my Partner, Cameron Stanley, and I were dispatched to the WinCo Foods Supermarket, located at 15350 Roy Rodger Drive, in Victorville, California.

5. Sheriff's Dispatch received a 911 call from the store manager Frank Calderon, who reported a subject, later identified as Todderick Randell ("Mr. Randall") was inside the store. It was reported Randall wore a grey tank top, black cut off sweatpants, and was around 25 to 30 years old. It was further reported Randall was armed with a knife or box cutter, and that while he was inside the store, Randall obtained a large bottle of alcohol from the shelf and started to drink it. It was reported Randall was openly carrying the knife in his right hand as he drank from the bottle of alcohol. Mr. Calderon reported that he wanted Mr. Randall to leave the store.

6. Deputy Cameron Stanley and I arrived at WinCo in separate vehicles, but around the same time. We entered the store together.

7. When I entered the store, I observed that the store and parking lot were heavily populated. As I walked into the store, I had to maneuver around people because there were so many people coming in and out of the store. I observed that all of the registers were full of people.

8. Seeing so many customers made me worried because it is not typical to respond to calls with individuals wielding an open knife in a busy store. I was immediately concerned about public safety.

9. Deputy Stanley and I were greeted by an employee of the store and the reporting party, Mr. Calderon. He confirmed that he wanted Mr. Randall to leave the store.

10. When Stanley and I first approached Mr. Randall, he was about a quarter way down the alcohol isle. I stood about 15 feet away, and I observed that he had an open bottle of alcohol in his left hand and in his right hand he was holding a knife. When I first observed Mr. Randall, he was in a bladed stance—he was flexing his arms in front of his body, with his elbows bent, hands balled in fists, and had the knife gripped in his right hand.

11. When I initially observed Mr. Randall, and based upon my training and experience, I believed he was under the influence of alcohol because his eyes were glossed over.

12. At this point in my encounter, I believed there was probable cause a suspected crime had been committed. He did not voluntarily leave the store when asked (the employee had informed us he wanted him out of the store), constituting trespassing; he appeared to be intoxicated; and he was brandishing a weapon.

13. At this time, my goal was to disarm and detain Mr. Randall, to determine if a crime had actually been committed or to determine what, if any, additional help he needed.

14. When I first approached Mr. Randall, I tried to have a conversation. I asked, "Hey, man, what's going on?" He did not verbally respond.

15. Standing approximately 15-feet away from Mr. Randall I then ordered him two or three times to, "drop the knife" and "put the knife down." When he did not respond verbally, and based upon his aggressive stance, I unholstered by taser and put both lasers (from the taser) at/near his chest/upper body. At this time Deputy Stanley was also giving Mr. Randall verbal commands to put the knife down.

16. There were no customers in the aisle at the time—it was only myself, Mr. Randall and Deputy Stanley. Deputy Stanley and I stood next to each other.

17. I deployed my taser because Mr. Randall continued to refuse my demands and Deputy Stanley's demands to drop the knife. Prior to deploying my taser, Mr. Randall ignored my commands, ignored Deputy Stanley's commands, and continued to clench the knife in his right hand.

18. When I deployed the taser I was approximately 10 feet away from Mr. Randall—I had taken a few steps toward him to make sure the prongs would strike him.

19. The taser prongs struck Mr. Randall on his upper torso area, toward the right side of his chest, and he immediately tried to swipe them and pull the prongs/wire out of his body. While the prongs where still in his body I told him to "get on the ground" approximately two or three times. He ignored the commands and continued to try and remove the prongs/wire(s) from him body.

20. After Mr. Randall successfully removed the taser prongs/wires from his body, he took a few steps backwards, turned and began running away from Deputy Stanley and me.

21. Based on my observations, the taser was ineffective and had no physical impact on Mr. Randall. This made me more concerned for my safety and the safety of all others around because this was the first time in my career I had seen a taser not work on someone.

22. When Mr. Randall began to run, I was highly concerned for the safety of the customers in the store. I had observed dozens of individuals upon entering

1 and knew customers could be near and could be severely injured by Mr. Randall,
2 taking aggressive stances, running with a knife, intoxicated, and failing to listen to
3 my commands or Deputy Stanley's commands. I was also concerned for my safety
4 and Deputy Stanley's safety as Mr. Randall could also attempt to ambush us at any
5 moment.

6   23.   Deputy Stanley and I pursued Mr. Randall on foot—Deputy Stanley
7 was approximately a step or two behind me as we ran. As Mr. Randall rounded the
8 corner of the aisle, I lost sight of him for approximately .5 seconds. When I rounded
9 the corner of the aisle and Mr. Randall came back into view, he had stopped
10 running. He had turned around and was facing me. He held the knife in his right
11 hand, raised his right hand above his head, and swung the knife downward toward
12 me in a slashing manner. I was approximately 3 to 5 feet from Mr. Randall while he
13 was swinging the knife in my direction.

14   24.   As he was swinging the knife at me, and in an effort to disarm him, I
15 deployed my taser at Mr. Randall a second time. As I fired the taser the second time,
16 I fell backwards. The taser hit Mr. Randall a second time, however it did not have an
17 effect on him.

18   25.   At around the same time I deployed my taser a second time, and at the
19 same time I feel backwards onto the floor, Deputy Stanley fired his weapon. When I
20 got up from the floor, Mr. Randall was on the ground and I assisted Deputy Stanley
21 in handcuffing him. I assisted in rendering medical aid and requesting additional
22 medical resources thorough dispatch.

23   26.   Both times I deployed my taser at Mr. Randall, he was still armed with
24 the knife. The second time I deployed my taser, Mr. Randall held the knife in his
25 right hand, raised his right hand above his head, and swung the knife downward
26 toward me in a slashing manner. I was approximately 3 to 5 feet from Mr. Randall
27 while he was swinging the knife in my direction.

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

4934-1715-4590.1 SBD-00026    DECLARATION OF DEPUTY CORRIN CASSIDY

27. Both times I deployed my taser at Mr. Randall, I was concerned Mr. Randall could use the knife to inflict great bodily injury or death on myself, Deputy Stanley, or one of the many customers inside the WinCo.

28. In my opinion, myself and Deputy Stanley responding on scene acted in accordance with the use of force guidelines, policies, and/or procedures of San Bernardino County or the State of California.

29. I did not witness any acts and/or omissions by a deputy, detective, and/or officer from the San Bernardino County Sheriff's Department that I believe exceeded the scope of use of force guidelines, policies, and/or procedures of San Bernardino County or the State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 21, 2025, at 0900 _____, California.

_____
Corrin Cassidy

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000