Christopher P. Wesierski [Bar No. 086736]
 *cwesierski@wzllp.com*
Kathryn J. Harvey [Bar No. 241029]
 *kharvey@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; CAMERON STANLEY and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00086-SSS-SP<br>*Assigned to*:<br>Hon. Sunshine S. Sykes<br><br>**DECLARATION OF EDWARD T. FLOSI IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Motion for Summary Judgment; Statement of Undisputed Material Facts; Request for Judicial Notice; Declarations of Cameron Stanley, and Corrin Cassidy; and Proposed Order]*<br><br>**Date:   April 11, 2025**<br>**Time:   2:00 p.m.**<br>**Courtroom:  2**<br><br>Trial Date: July 14, 2025 |

1

4913-7541-5831.1 SBD-00026

DECLARATION OF EDWARD T. FLOSI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

# DECLARATION OF EDWARD T. FLOSI

I, Edward T. Flosi, declare as follows:

1. I am over the age of 18 years. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2. I am a retired police sergeant from San Jose, California. I have worked several assignments including field training program, training unit, narcotics, special operations - K9 handler, research and development, and custody facility supervisor. I have a Master of Science degree from California State University Long Beach, A Bachelor of Science degree from San Jose State University. I am also a Certified Force Analyst through the Force Science Institute Research Center.

3. During my career in law enforcement, I participated in numerous: (1) apprehensions; (2) detentions; and (3) arrests.

4. I have qualified as an expert witness in state and federal courts in police practices/force options, and I am the president of Justitia Consulting, Inc., and the principal instructor for PROELIA Defense and Arrest Tactics. A true and correct copy of my C.V. is attached as **Exhibit "1."**

5. I was a defensive tactics instructor (California POST Learning Domain 33) at the South Bay Regional Training Consortium and/or the San Jose Police Department Academy for approximately twelve years. In my capacity as a defensive tactics instructor for the San Jose Police Department, I commonly taught the legal aspects of an officer's use of force and policy concerns as they related to arrest and control techniques and defensive tactics, including in the area of deadly force. I have attended an 80-hour California POST approved Defensive Tactics Instructor course to become a POST certified Defensive Tactics Instructor. For a period of approximately seven years, I acted as a lead instructor for Defensive Tactics for both organizations. In my capacity as a lead instructor, I have assisted in the instruction of

two Defensive Tactics Instructor courses and had been the primary lead instructor in four other Defensive Tactics Instructor courses.

6. I was a lead instructor for Use of Force — cognitive (California POST Learning Domain 20) at the South Bay Regional Training Consortium and/or the San Jose Police Department Academy for approximately nine years. In my capacity as a Use of Force — cognitive instructor for the San Jose Police Department, I commonly taught the legal aspects of an officer's use of force and policy concerns as they related to use of force. I have been directly involved as a California POST committee member in two prior revisions of the Learning Domain 20 Workbook and participated remotely in the 2015 revision.

7. I have been a California POST approved Force Options Simulator (FOS) instructor since January 2000. In order to become a FOS instructor, I attended the 40-hour California POST approved FOS Instructor Course. I was a Force Options Simulator (FOS) Instructor for the San Jose Police Department starting in the year 2000 when I was designated as the lead instructor for the San Jose Police Department FOS program. Shortly after becoming the lead instructor, I was asked by California POST to become the lead instructor for the FOS Instructor course for the Northern California Regional Skills Centers. In my capacity as a FOS instructor for the San Jose Police Department, I commonly taught the legal aspects of an officer's use of force and policy concerns as they related to use of force. I retained this title until my promotion in September 2001. I continued to teach the FOS program for South Bay Regional Training Center for several years after my promotion.

8. I was an active member of the California POST FOS committee from 2000 up until my retirement. This committee met approximately every six months to discuss training trends and use of force issues within the curriculum. I have been directly involved in developing the past and present curriculum for the California POST FOS program. I was the supervisor for the San Jose Police Department FOS program from March 2009 to December 2011.

3

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

9. The San Bernardino Sheriff's Department is a POST certified law enforcement agency.

10. The training records of the San Bernardino Sheriff's Department are audited by POST to ensure that minimum training standards are met.

11. I have reviewed the training programs of the San Bernardino County Sheriff's Department, including those concerning arrests and the use of deadly force.

12. The training programs of the San Bernardino County Sheriff's Department are appropriate and consistent with POST training.

13. I have been retained by defense counsel as an expert witness in the civil action of *Todderick Randall v. County of San Bernardino, et al.* On December 13, 2024, I submitted my Initial Report in this matter. The following information and opinion was part of my Initial Report.

14. I have reviewed documents and evidence produced in this case and have found no evidence to substantiate a claim involving or surrounding this incident that the San Bernardino County Sherriff's Department and/or its deputies, officers, and detectives acted unreasonably in their use of non-deadly force and deadly force against Todderick Randall on August 19, 2022.

15. Peace officers are trained that to lawfully detain a person, reasonable suspicion is needed. A detention is a temporary stop of a person in order to investigate whether or not the person had been engaged, is currently engaging or is about to engage in criminal activity. San Bernardino Sheriff's Department Deputies Stanley and Cassidy responded to a 911 call for service at WinCo Foods Supermarket. The lead clerk, Mr. Calderon, reported that he saw Mr. Randall holding what appeared to be a recently opened bottle of alcohol, which was taken from the store's shelf. Mr. Randall drank from the bottle as he held a folding box-cutter in his right hand. According to the lead clerk, Mr. Randall made unusual movements and Mr. Calderon believed Mr. Randall was under the influence of an unknown narcotic and was, "tweaking out." Mr. Calderon estimated that there were approximately 70 customers

and 55 employees inside the store at the time.

16. When deputies Cassidy and Stanley arrived at the scene they contacted Randall and he took a fighting stance. Deputy Stanley observed an open bottle of alcohol in Mr. Randall's hand that appeared to be half empty. Mr. Randall appeared disoriented and fumbled when he stepped. Deputy Stanley approached Mr. Randall and asked him to toss his knife to the side. In response, Mr. Randall flexed both of his arms—he did not drop the knife.

17. Based on the documents and evidence produced in this case, it is my opinion that San Bernardino County Sherriff's Department and its deputies, officers, and/or detectives, including but not limited to, Deputies Cameron Stanley and Corrin Cassidy had a legitimate law enforcement purpose and reasonable suspicion based on current law enforcement training and practices to contact and detain Mr. Randall.

18. Officers are trained the Fourth Amendment of the U.S. Constitution requires probable cause to make arrests and/or conduct searches because searches or arrests conducted without probable cause infringe on a person's privacy. Officers are trained that probable cause for an arrest is a set of facts that would cause a person of ordinary care and prudence to entertain an honest and strong belief that the person to be arrested is guilty of a crime. Probable cause is required before an arrest is made and is based on the totality of the circumstances.

19. In this case, Mr. Randall appeared agitated as he openly displayed the box-cutter to Deputies Cassidy and Stanley. As the deputies stood approximately 20-feet away from Mr. Randall, Mr. Randall bladed his body to the deputies, and swung the box-cutter downward several times. The deputies told Mr. Randall to put the knife down, but he did not comply.

20. Based on the documents and evidence produced in this case, it is my opinion that San Bernardino County Sherriff's Department and its deputies, officers, and/or detectives, including but not limited to, Deputies Cassidy and Stanley, had a legitimate law enforcement purpose and probable cause based on current law

enforcement training and practices to arrest Mr. Randall once he swung the box-cutter downward several times, refused the deputies commands, and ran away from the deputies

21. Officers are trained that tactics are not a one-size-fits-all approach but rather based on principles to consider based on the facts and circumstances known/perceived at the time and the environment that they were operating within. The principles are not a pre-designed checklist of things that must all be completed in order to be correctly applied.

22. The deputies first approached Mr. Randall and used appropriate distance to be close enough to be able to communicate with Mr. Randall and to take action if Mr. Randall suddenly became a threat to others while providing enough distance to be able to tactically reposition if appropriate. The deputies used verbal persuasion several times to gain Mr. Randall's cooperation to disarm.

23. Officers are trained that they must first deal with any dangerous actions and behaviors of a subject in order to stabilize the situation prior to making any effort to evaluate if a subject; (1) is possibly suffering from mental psychosis, or (2) has a pre-existing mental illness. In this incident, Mr. Randall did not allow the opportunity for the officers to conduct any such evaluation.

24. Based on the documents and evidence produced in this case, it is my opinion that San Bernardino County Sherriff's Department and its deputies, officers, and/or detectives used appropriate pre-force tactics that were appropriate and consistent with current law enforcement training and practices.

25. Police officers are trained that they are permitted to use reasonable force to effect an arrest, prevent the escape or to overcome the resistance of a suspect. Police Officers receive training that the United States Supreme Court established how force must be judged from an objectively reasonable standard. (*Graham v. Connor*, 490 U.S. 386 (1989).) When reviewing and analyzing an officer's use of force under a standard of "objective reasonableness," officers are trained that the *Graham* decision

gave an overarching guideline to those that are charged with analyzing an officer's force response. Officers are told that the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. If the situation has risen to the level that the officer reasonably believes that officer's or other person's life is in imminent danger of serious bodily injury or death, officers are trained to shoot until the threat is stopped. An officer is not required to wait in order to find out if the suspect will, in fact, injure or kill the officer.

26. When the deputies first contacted Mr. Randall, they found him to have a bottle of alcoholic beverage in his left hand and an edged weapon in his right hand. Deputy Cassidy observed Mr. Randall stumbling. He stood in an aggressive stance, clenching his fists and flexing his arms. After the first TASER discharge, the deputies directed Mr. Randall to get on the ground and Mr. Randall responded, "Fuck you!" Prior to the second discharge of the TASER, Mr. Randall turned toward the deputies armed with the edged weapon. Deputy Cassidy discharged the TASER as she was falling backward in an attempt to gain distance from the life-threatening threat created by Mr. Randall.

27. Based on the documents and evidence produced in this case, it is my opinion that the intermediate non-deadly force responses by Deputy Cassidy were appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. The intermediate non-deadly force responses were appropriate and consistent with current law enforcement training standards in consideration of the "totality of the circumstances" presented to Deputy Cassidy at the moments non-deadly force was used.

28. "Force on Force" refers to a situation when an officer perceives that a subject is presenting an imminent threat of serious bodily injury or death to the officer or to others based on the totality of the facts and circumstances known/perceived by

4913-7541-5831.1 SBD-00026

DECLARATION OF EDWARD T. FLOSI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

the officer at the time. Officers are trained that imminent means, "a threat of death or serious injury is "imminent" when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

29. Deputy Stanley noted a concern for others in the store based on the facts that Randall was armed with an opened knife in the busy store. When Deputy Stanley turned the corner of the aisle in pursuit of Mr. Randall, he saw Mr. Randall with his right hand up the knife in his hand and it appeared he was lunging at Deputy Cassidy. To protect Deputy Cassidy's safety and his own safety, Deputy Stanley fired his pistol to stop Randall's life-threatening threat.

30. Based on the documents and evidence produced in this case, it is my opinion that the deadly force response by Deputy Stanley was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. The deadly force response was appropriate and consistent with current law enforcement training standards in consideration of the "totality of the circumstances" presented to Deputy Stanley at the moments deadly force was used.

31. Immediately after Mr. Randall fell to the ground, Deputies Stanley and Cassidy approached and handcuffed him. As Mr. Randall lay motionless, a large amount of suspected blood, pooled under his body. Once handcuffed, Deputies Stanley and Cassidy applied pressure to Randall's back and requested medical aid to respond. The CAD printout shows that the officer involved shooting happened at approximately 12:10:48 hours and that medical assistance was requested at approximately 12:10:54 hours.

32. Based on the documents and evidence produced in this case, it is my

4913-7541-5831.1 SBD-00026

DECLARATION OF EDWARD T. FLOSI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

opinion that there is no objective or independent evidence on the record to support a claim that the San Bernardino County Sheriff's Department failed to provide medical assistance.

33. It is also my opinion that there is no objective or independent evidence on the record to support and conclude a claim that the San Bernardino County Sheriff's Department failed to train, supervise and discipline.

34. It is also my opinion that there is no objective or independent evidence on the record to support and conclude a claim that the San Bernardino County Sheriff's Department maintains unconstitutional customs, practices or policies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 8, 2025, 2025, at Fullerton, California.

Edward T. Flosi