LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Attorneys for Plaintiff Todderick Randall

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, CAMERON STANLEY,<br><br>Defendants. | Case No. 5:24-cv-00086-SSS-SP<br><br>*Assigned to:*<br>Hon. District Judge Sunshine S. Sykes<br>Hon. Magistrate Judge Sheri Pym<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT**<br><br>[*Filed concurrently with Plaintiff's Responsive Separate Statement of Facts; Declaration of Renee V. Masongsong and Exhibits thereto; Declaration of Roger Clark; Notice of Manual Filing*]<br><br>Hearing Date:    4/11/2025<br>Time:                 2:00 p.m.<br>Location:           Courtroom 2 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

I.      INTRODUCTION ..............................................................................1

II.     STATEMENT OF FACTS.................................................................2

        A.  Background .............................................................................2

        B.  Cassidy's First Taser Deployment .........................................2

        C.  Cassidy's Second Taser Deployment......................................3

        D.  Stanley's Use of Deadly Force...............................................3

        E.  Negligent Tactics ...................................................................5

        F.  Police Officer Training and Standards....................................5

III.    LEGAL STANDARD .......................................................................6

IV.     STANLEY'S SEVEN SHOTS AND CASSIDY'S TWO
        TASER DEPLOYMENTS WERE EXCESSIVE AND
        UNREASONABLE ...........................................................................7

        A.  Cassidy's Two Taser Deployments Prior to the Shooting
            Were Excessive and Unreasonable ........................................8

        B.  Stanley's Use of Deadly Force Was Excessive and
            Unreasonable...........................................................................9

        C.  Possession of a Weapon Not Dispositive...............................11

        D.  Failure to Warn and Other Reasonable Alternative
            Measures ................................................................................12

        E.  Stanley Could Not Shoot Randall for Running Away.............13

V.      THE DEPUTIES ARE NOT ENTITLED TO QUALIFIED
        IMMUNITY ....................................................................................13

VI.     PLAINTIFF'S STATE LAW CLAIMS SURVIVE .........................18

        A.  Battery and Negligence...........................................................18

        B.  Violation of the Bane Act (Cal. Civ. Code § 52.1).............19

VII.    CONCLUSION ...............................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### Cases

*Aguilar v. Knueppel*,
   No. 23-15442, 2024 WL 1300000 (9th Cir. Mar. 27, 2024) ..............................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................7

*Brosseau v. Haugen*,
   543 U.S. 194 (2004) ................................................................................................13

*Bryan v. McPherson*,
   630 F.3d 805 (9th Cir. 2010) ............................................................................. passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................7

*Chew v. Gates*,
   27 F.3d 1440 (1994) ..................................................................................................9

*Cornell v. City and County of San Francisco*,
   17 Cal. App. 5th 766 (2017) ..................................................................................19

*Cunningham v. City of Wenatchee*,
   345 F.3d 802 (9th Cir. 2003) ..................................................................................13

*Curnow v. Ridgecrest Police*,
   952 F.2d 321 (9th Cir. 1991) ..................................................................................12

*Deorle v. Rutherford*,
   272 F.3d 1272 (9th Cir. 2001) ..............................................................9, 10, 12, 15

*Drummond ex rel. Drummond v. City of Anaheim*,
   343 F.3d 1052 (9th Cir. 2003) ................................................................................18

*Edson v. City of Anaheim*,
   63 Cal. App. 4th 1269 (1998) ................................................................................18

*Espinosa v. City & Cnty. of San Francisco*,
   598 F.3d 528 (9th Cir. 2010) ............................................................7, 8, 10, 13

*Estate of Lopez v. Gelhaus*,
   871 F.3d 998 (9th Cir. 2017) ..................................................................................11

*Garcia v. City of Santa Clara*,
   2015 WL 5299460 (N.D. Cal. Sept. 9, 2015) ........................................................11

*George v. Morris*,
   736 F.3d 829 (9th Cir. 2013) ..................................................................................11

*Glenn v. Washington Cnty.*,
   673 F.3d 864 (9th Cir. 2011) ............................................................................. passim

*Gonzalez v. City of Anaheim*,
  747 F.3d 789 (9th Cir. 2014)......................................................................12

*Graham v. Connor*,
  490 U.S. 386 (1989) ............................................................................7, 8, 18

*Gravelet-Blondin v. Shelton*,
  728 F.3d 1086 (9th Cir. 2013) ..................................................................17

*Harris v. Roderick*,
  126 F.3d 1189 (9th Cir. 1997) ............................................................10, 12

*Hayes v. County of San Diego*,
  57 Cal. 4th 622 (2013)..............................................................................19

*Hayes v. County of San Diego*,
  736 F.3d 1223 (9th Cir. 2013) .....................................................12, 15, 18

*Headwaters v. County of Humboldt*,
  240 F.3d 1185 (9th Cir. 2000)..................................................................12

*Hughes v. Kisela*,
  862 F.3d 775 (9th Cir. 2016) .............................................................15, 17

*Johnson v. Jones*,
  515 U.S. 304 (1995) ..................................................................................13

*Jones v. LVMPD*,
  873 F.3d 1123 (9th Cir. 2017)....................................................................9

*Knox v. Southwest Airlines*,
  124 F.3d 1103 (9th Cir. 1997)..................................................................13

*Mattos v. Agarano*,
  661 F.3d 433 (9th Cir. 2011) ....................................................................17

*Munoz v. City of Union City*,
  120 Cal. App. 4th 1077 (2004)..................................................................18

*Nehad v. Browder*,
  929 F.3d 1125 (9th Cir. 2019)..................................................................10

*Nelson v. City of Davis*,
  685 F.3d 867 (9th Cir. 2012)....................................................................12

*Porter v. Osborn*,
  546 F.3d 1131 (9th Cir. 2008)..................................................................11

*Reese v. County of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018)..................................................................19

*S.B. v. County of San Diego*,
  864 F.3d 1010 (9th Cir. 2017).....................................................12, 15, 17

*Scott v. Harris*,
  550 U.S. 372 (2007) ..................................................................................12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Smith v. City of Hemet*,
   394 F.3d 689 (2005) ..........................................................................8

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ....................................................................10, 12

*Tolan v. Cotton*,
   572 U.S. 650 (2014) ..........................................................................6

*Torres v. City of Madera*,
   648 F.3d 1119 (9th Cir. 2011) ....................................................8, 10

*United States v. One Parcel of Real Prop.*,
   904 F.2d 487 (9th Cir. 1990) ..........................................................7

*United States v. Reese*,
   2 F.3d 870 (9th Cir. 1993) ............................................................19

*Vos v. City of Newport Beach*,
   892 F.3d 1024 (9th Cir. 2018) ......................................................15

*Wilkins v. City of Oakland*,
   350 F.3d 949 (9th Cir. 2003) ........................................................14

*Young v. Cty. of Los Angeles*,
   655 F.3d 1156 (9th Cir. 2011) ......................................................13

**Rules**

Federal Rule of Civil Procedure 56 ........................................................6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This civil rights and state tort lawsuit arises from the uses of force against Todderick Randall by County of San Bernardino Sheriff's Department Deputies Cameron Stanley and Corrin Cassidy on August 19, 2022, at a grocery store in Victorville, California. On that date, Cassidy deployed her Taser against Randall twice, and Stanley fired seven shots at Randall. Randall survived but was seriously injured by Stanley's gunshots. Cassidy's two Taser cycles, which were deployed prior to the shooting, escalated the situation. During this incident, Randall never injured anyone, never verbally threatened anyone, never charged at anyone, and never attacked or attempted to attack anyone. After Randall was struck by the first Taser deployment, he ran away, which officers are trained is a common response to being Tased. After Randall ran away, he briefly went out of the deputies' view and then stopped at the end of an aisle. Within approximately one second of Randall coming back into the deputies' view, Cassidy deployed her Taser a second time without giving Randall any commands or a verbal warning that she was prepared to deploy the Taser. Without allowing Randall time to comply with the Taser deployment or assessing whether the Taser was effective, and without giving Randall a verbal warning that deadly force would be used, Stanely fired seven shots at Randall during Cassidy's second Taser cycle. This incident was captured on video. As seen on the video, Randall was not moving forward at the time of either of the two Taser deployments or at the time of the shots. Randall never made any striking, slashing, or stabbing motions with the box cutter and never brought the box cutter down toward Cassidy or anyone else. When Stanley fired his shots, no person, including Cassidy, was within striking distance of Randall. As Stanley fired, Stanley stepped backwards and Randall fell backwards, increasing the distance between them.

Defendants' motion for summary judgment should be denied because Randall posed no immediate threat of death or serious bodily injury to any person at the time of the shots.  Defendants' Motion and Separate Statement of Facts exaggerates Randall's

actions in an attempt to justify an unjustified shooting, asserting that Randall was "lunging" at Cassidy and "swung the box-cutter downward several times," which is belied by the videos. Taking the facts and all reasonable inferences therefrom in the light most favorable to Plaintiff as the non-moving party, Stanley's seven shots and Cassidy's two Taser deployments violated Randall's rights under the Fourth Amendment to the United States Constitution and under California law. Qualified immunity should be denied because the law was clearly established that Tasing and shooting Randall under Plaintiff's facts would violate Randall's constitutional right to be free from excessive force, and qualified immunity does not apply to Plaintiff's state law claims. For these reasons and the reasons set forth below, this Court should deny summary judgment and qualified immunity as to Cassidy's two Taser deployments and Stanley's seven shots.

## II.   STATEMENT OF FACTS

### A. Background

The deputies were not responding to a serious or violent crime. (PAMF-94). At the time of this incident, Stanley and Cassidy had never seen Randall before and did not know anything about him. (PAMF-95). When Stanley and Cassidy responded to this incident, they had no information that Randall had physically injured anyone, verbally threatened to harm anyone, or tried to attack anyone with the box cutter. (PAMF-96-98). Stanley had a Taser, OC spray, and a police baton on him at the time of this incident. (PAMF-99-101). The deputies knew or should have known that Randall was mentally ill or having a mental health crisis. (PAMF-102).

### B. Cassidy's First Taser Deployment

Prior to Cassidy's first Taser deployment, Randall did not charge at anyone, advance toward anyone, or try to attack anyone. (PAMF-103-105). Randall was not moving toward the deputies at the time of the first Taser deployment. (PAMF-106). Randall was not within striking distance of any person when Cassidy deployed her Taser the first time. (PAMF-107). Cassidy was approximately ten to fifteen feet from Randall when she deployed her Taser the first time. (PAMF-108). Police officers are trained to

issue a verbal warning prior to deploying a Taser against an individual, when feasible. (PAMF-109). The deputies failed to give Randall a verbal warning prior to Cassidy's first Taser deployment. (PAMF-110). The Taser probes struck Randall. (PAMF-111). Randall reacted to the Taser. (PAMF-113). Police officers are trained that pulling the Taser probes out after being struck is one response by individuals being Tased. (PAMF-112). After the first Taser deployment, Randall ran away from the deputies. (PAMF-114). Police officers, including Cassidy, are trained that a common response to being Tased is to run from the Taser. (PAMF-115). Cassidy did not give Randall any commands as he was running away. (PAMF-116). Cassidy has been trained that police officers cannot Tase someone for seeing a weapon in their hand, for that fact alone. (PAMF-117).

### C. Cassidy's Second Taser Deployment

Cassidy was approximately eight to ten feet from Randall when she deployed her Taser the second time. (PAMF-119). No person was within striking distance of Randall when Cassidy deployed her Taser the second time. (PAMF-124). Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Cassidy's two Taser deployments. (PAMF-125). Randall never lunged toward the deputies. (PAMF-126). One of the police reports (RANDALL/SPD-000011) indicates that, based on investigators' review of the surveillance video, Randall tossed the box cutter during or immediately after the initial Taser deployment, before the second Taser deployment and the shooting. (PAMF-120). The deputies failed to give Randall a verbal warning prior to Cassidy Tasing Randall the second time. (PAMF-121). Cassidy did not give Randall any commands prior to Tasing him the second time. (PAMF-122). Randall was not moving forward when Cassidy deployed her Taser the second time. (PAMF-123).

### D. Stanley's Use of Deadly Force

Stanley fired seven lethal shots at Randall. (PAMF-134). Stanley fired within approximately one second of Randall coming into his view again after Randall ran away

and rounded the corner and within approximately one second of Cassidy deploying her Taser for the second time. (PAMF-127, 139). When Stanley fired his shots, Randall was being Tased. (PAMF-138). After Randall came back into the deputies' view, the deputies did not give Randall any commands before the shooting. (PAMF-129). Police officers are trained to issue a verbal warning prior to using deadly force. (PAMF-130). Stanley did not give Randall a verbal warning prior to shooting him. (PAMF-131).

Randall was not moving forward when Stanley fired his shots. (PAMF-132). No person was within striking distance of Randall when Stanley fired his shots. (PAMF-128). At the time of the shooting, there were no customers within the immediate vicinity of Randall. (PAMF-145). Stanley was approximately ten to twelve feet from Randall when he started firing his weapon. (PAMF-141). The distance between Stanley and Randall increased during Stanley's shots—Stanley stepped backward after he fired his first shot, and Randall fell backward when Stanley was firing his shots. (PAMF-142-43). Randall was not attacking or attempting to attack anyone at the time of the shooting. (PAMF-133). Randall did not make any swinging, slashing, or stabbing motions prior to Stanley firing his shots. (PAMF-140).

At the time of the shooting, Stanley was aware that there were less-lethal options available and aware that Cassidy's Taser had a second cartridge. (PAMF-135). Stanley was trained at the police academy that a Taser can be used under certain circumstances against an individual who has an edged weapon. (PAMF-137).

Stanley did not see the box cutter when he was looking through his sights while he was firing. (PAMF-144). After the shooting, the deputies did not see a box cutter in Randall's hand or in his vicinity. (PAMF-146). Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade. (PAMF-147).

Police officers are trained to consider the background or backdrop of the shooting when using deadly force. (PAMF-149). Two of Stanley's seven shots missed, striking items in the grocery store. (PAMF-150).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1  Randall did not injure anyone during this incident. (PAMF-148).

2  **E. Negligent Tactics**

3  Deputies Cassidy and Stanley failed to discuss any tactical plan prior to contacting

4  Randall. (PAMF-151). The deputies had no information about Randall's ability to

5  understand and comply with commands and did not assess that ability. (PAMF-152). In

6  violation of basic police training, Cassidy escalated the situation when she Tased

7  Randall. (PAMF-153). Stanley failed to provide Randall a reasonable opportunity to

8  comply with Cassidy's second Taser deployment before using deadly force against

9  Randall. (PAMF-154). A reasonable officer in the position of Deputies Stanley and

10  Cassidy would have taken a position of cover and formulated an effective and safe

11  tactical plan. (PAMF-155).

12  **F. Police Officer Training and Standards**

13  Under the facts of this case and pursuant to police standards and training, it would

14  have been inappropriate for the deputies to use force against Randall under the fleeing

15  felon theory or for running away. (PAMF-156). Police officers are trained that they

16  cannot use deadly force against a person for having a weapon in their hand, for that fact

17  alone. (PAMF-157). Basic police training and standards instruct, and Stanley had been

18  trained at the time of the shooting, that deadly force should only be used on the basis of

19  an "objectively reasonable" belief that the suspect poses an immediate threat of death or

20  serious bodily injury. (PAMF-158). Police officers, including Stanley, are trained that a

21  threat of death or serious injury is imminent when, based upon the totality of the

22  circumstances, a reasonable officer in the same situation would believe that a person has

23  the present ability, opportunity, and apparent intent to immediately cause death or

24  serious bodily injury to the peace officer or another person. (PAMF-159). An imminent

25  harm is not merely a fear of future harm, no matter how great the fear and no matter how

26  great the likelihood of the harm, but is one that from appearances must be instantly

27  confronted and addressed. (PAMF-160).

28

Police standards instruct that subjective fear alone does not justify the use of deadly force. (PAMF-161). Police officers are trained to consider whether there are other reasonable alternative measures to using deadly force. (PAMF-162). Officers are trained to deescalate a situation and trained in how to deal with people who may be suffering from a mental illness or mental health crisis. (PAMF-163-64). Basic police training teaches that an overreaction in using deadly force is excessive force. (PAMF-165).

As set forth in the declaration of plaintiff's expert Mr. Clark, from the standpoint of police practices, Stanley's use of deadly force was improper, inappropriate, excessive and unreasonable, including (but not limited to) for the following reasons: (1) this was not an immediate defense of life situation; (2) subjective fear is insufficient to justify a use of deadly force; (3) Randall committed no crime involving the infliction of serious injury or death, and the deputies were not responding to a serious or violent crime; (4) Stanley could not justify shooting Randall under a fleeing felon theory or for running away from the Taser; (5) Randall never verbally threatened to harm anyone; (6) Stanley had reasonable alternative measures other than shooting; (7) Stanley showed no reverence for human life when he fired at Randall; (8) Randall was experiencing a mental health crisis; (9) Stanley could not justify shooting Randall simply for having a box cutter; (10) Stanley failed to give Randall a verbal warning before using deadly force; (11) police officers are trained that they must justify every shot they fire, and all seven of Stanley's shots were unjustified; (12) Stanley overreacted when he fired his weapon at Randall, and an overreaction in using deadly force is excessive force. (PAMF-166).

### III.    LEGAL STANDARD

On a motion for summary judgment, the Court must view the evidence in the light most favorable to Plaintiff and make all reasonable inferences in Plaintiff's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Summary judgment cannot be granted where a genuine dispute exists as to "material facts." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491–92 (9th Cir. 1990). Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is a drastic remedy and therefore trial courts should act "with caution" in granting summary judgment. *Anderson*, 477 U.S. at 255.

## IV.    STANLEY'S SEVEN SHOTS AND CASSIDY'S TWO TASER DEPLOYMENTS WERE EXCESSIVE AND UNREASONABLE

Summary judgment should be denied as to Plaintiff's Fourth Amendment excessive force claim against Cassidy and Stanley. "Fourth Amendment claims of excessive force are analyzed under an objective reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). When evaluating a claim of excessive force, the inquiry is whether the deputies' actions are "objectively reasonable" in light of the facts and circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court must "balance the amount of force applied against the need for that force." *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (cleaned up). "[A]ll force—lethal and non-lethal—must be justified by the need for the specific level of force employed." *Id.* at 825 (applying *Graham* factors to use of intermediate force).

Governmental interests to balance against the type of force used include the following factors identified in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the deputies' or public's safety; and (3) whether the

suspect was resisting arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. Another factor to consider is the availability of alternative methods to effectuate an arrest or overcome resistance. *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (en banc). The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Courts do "recognize that 'police officers are often forced to make split-second judgments . . .'" *Id.* at 1124 (quoting *Graham*, 490 U.S. at 397). "Not all errors in perception or judgment, however, are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* (quoting *Graham*, 490 U.S. at 396). As set forth below, the *Graham* analysis favors Plaintiff in this case.

### A. Cassidy's Two Taser Deployments Prior to the Shooting Were Excessive and Unreasonable

Cassidy's two Taser deployments prior to the shooting were excessive and unreasonable and escalated the situation. The deputies were not responding to a serious or violent crime. When they responded to this incident, they had no information that Randall had injured, verbally threatened, attacked, or attempted to attack any person. A reasonably well-trained deputy would have formed the impression that Randall was mentally ill, including because he was exhibiting odd behavior of drinking inside a grocery store, and would have employed basic police training with respect to handling situations with a mentally ill person. This includes anticipating how a mentally ill person would react to being Tased and de-escalating a situation involving a mentally ill person, as trained.

As seen on the video, at the time of Cassidy's first Taser deployment, Randall was not moving forward or making any aggressive movements with the box cutter, and there were no customers in the aisle. In response to being Tased, Randall pulled the Taser probes out and ran away from the Taser and away from the deputies. Cassidy gave Randall no commands between Randall running away and Cassidy Tasing him the

second time. When Cassidy deployed her Taser the second time, she was approximately eight to ten feet from Randall, Randall was not moving forward, and Randall was not bringing the box cutter down toward Cassidy or making any slashing motions with the box cutter. Based on the video, Randall may have raised his right arm in response to the second Taser deployment. Cassidy had room to back up at the time of the second Taser deployment.

Ninth Circuit precedent makes clear that deputies cannot use less-lethal force such as a Taser against an individual who is not aggressive or combative, and Plaintiff disputes Defendants' contention that Randall was aggressive, which is not reflected in the videos. *Jones v. LVMPD*, 873 F.3d 1123, 1131-32 (9th Cir. 2017); *Glenn*, 673 F.3d at 871-72; *Bryan,* 630 F.3d at 825; *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001) (holding that beanbag rounds, though classified as less than deadly, are "not to be deployed lightly," and that the force "was excessive compared to the governmental interests at stake." *Id.* at 1280, 1284; *see also Chew v. Gates*, 27 F.3d 1440, 1442-43 (1994) (less than deadly force that may lead to serious injury may be used only when a strong governmental interest warrants its use, and in such circumstances should be preceded by a warning, when feasible). Although a single deployment of a taser has been categorized as "non-lethal force," non-lethal is not synonymous with non-excessive. *Bryan*, 630 F.3d at 825. The taser "intrudes upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not." *Id.* It is administered by effectively commandeering the victim's muscles and nerves. *Id.* Beyond pain, tasers cause immobilization and weakness even after the electrical current has ended. *Id.*

Because Randall posed no immediate threat to the safety of others at the time of Cassidy's two Taser deployments, and because the Taser deployments escalated the situation, both Taser deployments were excessive and unreasonable. Therefore, summary judgment should be denied as to Cassidy's Taser two deployments.

**B. Stanley's Use of Deadly Force Was Excessive and Unreasonable**

-9-

1    In determining the objective reasonableness of the deputies' uses of force—deadly

2    and less-lethal—this Court "must assess the severity of the intrusion on [Randall's]

3    Fourth Amendment rights by evaluating the type and amount of force inflicted."

4    *Espinosa*, 598 F.3d at 537. "Certain principles are clearly established . . . that implement

5    the fundamental rules regarding the use of deadly force." *Harris v. Roderick*, 126 F.3d

6    1189, 1201 (9th Cir. 1997). Because the shots fired by Stanley constitute the greatest

7    possible amount of force, they require the highest justification. "The intrusiveness of a

8    seizure by means of deadly force is unmatched. The suspect's fundamental interest in his

9    own life need not be elaborated upon. The use of deadly force also frustrates the interest

10    of the individual, and of society, in judicial determination of guilt and punishment."

11    *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). "Law enforcement deputies may not shoot to

12    kill unless, at a minimum, the suspect presents an immediate threat to the officer or

13    others or is fleeing and his escape will result in serious threat of injury to persons."

14    *Harris*, 126 F.3d at 1201.

15    Under the facts of this case, the most important *Graham* factor is whether Randall

16    posed an immediate threat of death or serious bodily injury to any person at the time of

17    the shooting. *Bryan*, 630 F.3d at 826. A potential threat or fear of future harm does not

18    rise to the level of an immediate threat. "A simple statement by an officer that he fears

19    for his safety or the safety of others is not enough; there must be objective factors to

20    justify such a concern." *Deorle*, 272 F.3d at 1281. An officer's "desire to resolve quickly

21    a potentially dangerous situation" does not, on its own, justify the use of deadly force.

22    *Id.* Along these lines, deputies cannot "unnecessarily create their own sense of urgency."

23    *Nehad v. Browder*, 929 F.3d 1125, 1135 (9th Cir. 2019) (quoting *Torres*, 648 F.3d at

24    1126). "Reasonable triers of fact can, taking the totality of the circumstances into

25    account, conclude that an officer's poor judgment or lack of preparedness caused him or

26    her to act unreasonably, 'with undue haste.'" *Id*. This Court should consider that here,

27    the deputies created the very situation they then resorted to deadly force to resolve,

28    where Cassidy and Stanley controlled their distance from Randall and where they caused

him to run by Tasing him. *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008).

On Plaintiff's facts, which this Court must take as true and make all reasonable inferences therefrom in deciding Defendants' Motion, Randall posed no immediate threat of death or serious bodily injury at the time of Stanley's seven shots. The key factual disputes in this case include Cassidy's distance from Randall at the time of Stanley's shots and whether Randall brought the box cutter down toward Cassidy within striking distance of her just prior to her second Taser deployment and Stanley's shots. Defendants' Motion exaggerates the facts and describes actions contradicted by the video, including describing Randall lunging toward Cassidy and bringing the knife down toward her in a slashing motion multiple times. (UF 67, 84). On Plaintiff's facts as set forth in Plaintiff's separate statement of facts filed concurrently herewith, at the time of Stanley's shots, Cassidy was approximately eight to ten feet from Randall, not within striking distance, and Randall never brought the box cutter down toward Cassidy. Therefore, there was no reason to shoot.

Stanley overreacted when he shot Randall within approximately one second of Randall coming back into his view, and an overreaction in using deadly force is a use of excessive force. *See Garcia v. City of Santa Clara*, 2015 WL 5299460, at *13 (N.D. Cal. Sept. 9, 2015). Stanley should have given Randall time to comply after Cassidy Tased him the second time and should have assessed the effectiveness of the Taser before shooting and during his seven shots. When Stanley started firing, Stanley stepped backwards and Randall fell backwards, creating distance between Randall and the deputies. Officers are responsible for justifying every shot they fire, and all seven shots were unjustified.

## C. Possession of a Weapon Not Dispositive

Although Randall had a box cutter, the fact that a suspect has a weapon does not render the use of deadly force reasonable, even in cases where the suspect has a gun. *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1020-21 (9th Cir. 2017); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Hayes v. County of San Diego*, 736 F.3d 1223, 1233-

1   34 (9th Cir. 2013); *Glenn*, 673 F.3d at 872–73; *Harris*, 126 F.3d at 1204; *Curnow v.*
2   *Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991). This is consistent with the opinion
3   of the police practices experts on both sides in this case and the deputies' own training.

### D. Failure to Warn and Other Reasonable Alternative Measures

5       *Garner*'s deadly force principles were well established at the time, including the
6   notion that deadly force may be used only after a warning has been given, if feasible.
7   *Garner*, 490 U.S. at 397; *see also S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir.
8   2017); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (holding jury
9   could find officer had failed to warn suspect, and while "[t]he absence of a warning does
10  not necessarily mean that [the] use of deadly force was unreasonable [,] . . . . [a] rational
11  jury may find . . . a warning was practicable and the failure to give one might weigh
12  against reasonableness") (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)); *Deorle*, 272
13  F.3d at 1283-84; *Harris*, 126 F.3d at 1201 ("whenever practicable, a warning must be
14  given before deadly force is employed"); *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th
15  Cir. 2012); *Bryan,* 630 F.3d at 831; *Headwaters v. County of Humboldt*, 240 F.3d 1185,
16  1204 (9th Cir. 2000) ("[P]olice are 'required to consider what other tactics if any were
17  available to effect the arrest.'").

18      Here, it is undisputed that neither deputy gave Randall a verbal warning before
19  either of Cassidy's two Taser deployments and undisputed that Stanley did not give
20  Randall a verbal warning that he was prepared to use deadly force before shooting him.
21  On Plaintiff's facts, and according to Plaintiff's expert, Roger Clark, it would have been
22  feasible for the deputies to give Randall a warning prior to using any force against him,
23  including because Randall was not moving forward or within striking distance of any
24  person at the time of both Taser deployments and all the shots.

25      Additionally, there were reasonable alternative measures other than shooting.
26  Cassidy's second Taser deployment was still cycling when Stanley fired his shots.
27  Stanley knew that Cassidy had deployed her Taser against Randall once and knew that
28  she had a second Taser cartridge. Stanley also had a Taser, OC spray, and a police baton

1  on him. The deputies also had room to step back or reposition themselves, as they were

2  controlling their distance to Randall.

3  **E. Stanley Could Not Shoot Randall for Running Away**

4  Randall only ran after he was Tased, which is a common response to being Tased.

5  Randall was not moving toward any person at the time of any of the uses of force. *See*

6  *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1164 (9th Cir. 2011) (recognizing "that an

7  officer's 'provocative conduct' can trigger an individual's limited right to offer

8  reasonable resistance'"). Both police practices experts in this case agree that Stanley

9  would not have been justified for shooting Randall for running away from the Taser and

10  could not shoot Randall under the fleeing felon theory under this set of facts. To justify

11  using deadly force under the fleeing felon theory, the deputies would need (1)

12  information prior to the shooting that Randall had committed a felony involving the

13  infliction of death or serious bodily injury and (2) Randall still would need to pose an

14  immediate threat of death or serious bodily injury at the time of the shots. Neither of

15  these factors were present here.

16  **V.    THE DEPUTIES ARE NOT ENTITLED TO QUALIFIED**

17  **IMMUNITY**

18  The deputies are not entitled to qualified immunity for three reasons. First,

19  disputed issues of material fact preclude granting qualified immunity on summary

20  judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870 n.7

21  (citing *Espinosa*, 598 F.3d at 532); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809

22  (9th Cir. 2003); *Gates*, 287 F.3d at 855 n.12 (declining to decide qualified immunity

23  issue "because whether the deputies may be said to have made a 'reasonable mistake' of

24  fact or law may depend on the jury's resolution of disputed facts and the inferences it

25  draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no

26  qualified immunity where triable issues of fact exist); *Brosseau v. Haugen*, 543 U.S.

27  194, 206 (2004) (Stevens J., dissenting) (the reasonableness of an officer's belief "…is a

28  quintessentially 'fact-specific' question, not a question that judges should try to answer

'as a matter of law…"); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the deputies' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."). Here, there are material factual disputes bearing on the reasonableness of the deputies' uses of force, including but not limited to: Cassidy's distance from Randall at the time of the second Taser deployment and/or the shots; whether Randall was within striking distance of Cassidy at the time of the second Taser deployment and/or the shots; whether Stanley should have given Randall time to comply with the second Taser deployment and should have assessed the effectiveness of the Taser before shooting; Randall's actions with the box cutter immediately prior to the second Taser deployment and the shots, including whether he brought it down toward Cassidy in a striking or slashing motion; whether it was feasible for the deputies to give Randall a verbal warning before deploying the less-lethal and lethal; whether a blade was in the handle of the box cutter at the time of the shooting; whether Randall threw the box cutter before the second Taser deployment.

Second, at the time of the shooting, it was clearly established that the deputies' uses of force against Randall under Plaintiff's facts would violate Randall's constitutional rights. Resolving the factual disputes in Plaintiff's favor, the Court must assume for the purposes of summary judgment that: Randall never tried to attack anyone; Cassidy was eight to ten feet from Randall at the time of the second Taser deployment; Randall did not advance or lunge toward the deputies prior to the second Taser deployment or prior to the shots; Randall was not within striking distance of any person at the time of the shots; Randall did not bring the box cutter down toward Cassidy in a slashing or striking motion. These are the facts that this Court must take as true when determining which cases decided prior to the incident involving Randall are sufficiently analogous to clearly establish Randall's constitutional right to be free from excessive force.

The Ninth Circuit has repeatedly found that lethal, and even less-lethal force, is unreasonable where the suspect does not pose an immediate threat of death or serious bodily injury to the deputies, even where the suspect is armed. *See, e.g.*, *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (finding use of deadly force excessive where mentally unstable man ran toward deputies with scissors above head); *S.B.*, 864 F.3d at 1010 (finding officer's use of deadly force unconstitutional where mentally disturbed decedent was armed with knife and acting aggressively at distance of six to eight feet from officer, but deputies did not issue verbal warning deadly force would be used and had non-lethal options available); *S.B.*, 864 F.3d at 1014; *Hughes v. Kisela*, 862 F.3d 775 (9th Cir. 2016) (denying summary judgment as to lethal shooting of suspect holding knife and walking toward woman at distance of five to six feet); *Hayes*, 736 F.3d 1223 (reversing district court's grant of summary judgment where decedent approached deputies while armed with knife, but where decedent was not charging deputies, was given no warning deadly force would be used, was not witnessed acting erratically with weapon, and where deputies had no information decedent had threatened to harm anyone); *Glenn*, 673 F.3d 864 (finding beanbag deployment and lethal shooting excessive where suspect was armed with a knife); *Bryan*, 630 F.3d 805 (finding use of taser unreasonable where no civilians were nearby and suspect was "a disturbed and upset young man, not an immediately threatening one"); *Deorle*, 272 F.3d 1272 (finding use of beanbag rounds against mentally-ill suspect who was walking toward deputies and had threatened deputies and had a hatchet was excessive). These Ninth Circuit opinions decided prior to the incident involving Randall put Defendants Cassidy and Stanley on notice that using force against Randall under these facts would violate Randall's constitutional right to be free from excessive force.

In *Vos*, deputies shot a mentally unstable man who was running toward deputies with scissors raised above his head. 892 F.3d at 1033–34. The court rejected the defendants' argument that deadly force was reasonable because Vos forced the confrontation by charging the deputies and found that the availability of less-lethal

1  options was critical. *Id*. at 1033. The court considered that the deputies outnumbered

2  Vos, Vos was not armed with a gun, and less-lethal force options were available to the

3  deputies. The court found, based on these factors and "construing the facts as they are

4  presented by [Plaintiffs] and depicted in the video footage, a reasonable jury could

5  conclude that Vos was not an immediate threat such that the use of deadly force was

6  warranted." *Id*. at 1032. Similarly, here a reasonable jury could conclude the deputies'

7  use of deadly force was objectively unreasonable in violation of the Fourth Amendment.

8  This case is even stronger than *Vos*. Whereas Vos injured a bystander with the scissors

9  and raised them above his head while charging at deputies, here, Randall never injured

10 anyone and never advanced toward the deputies. Rather, Randall ran away from the

11 deputies after the first Taser deployment and was not moving forward at the time of the

12 second Taser deployment or the shots.

13      In *Glenn*, the Ninth Circuit held, "[a]s with the use of beanbags, there are material

14 questions of fact . . . that preclude a conclusion that the deputies' rapid resort to deadly

15 force was reasonable as a matter of law. [T]he disputed facts and inferences could

16 support a verdict for either party, and the jury must resolve these factual disputes." 673

17 F.3d at 879-80. Deputies shot Glenn with several beanbag rounds, causing him to move

18 away from the rounds when deputies fired, killing him. The court considered that

19 Glenn's "movement in reaction to the beanbag fire—which a jury could conclude was a

20 predictable consequence of using the beanbag shotgun—prompted the deputies' lethal

21 force." In denying summary judgment as to the beanbags and the lethal shots, the court

22 considered that, although Glenn had a pocketknife, he was emotionally disturbed, he was

23 not in a physical altercation with anyone, there were no civilians in the immediate area,

24 he did not move until after he was pelted with beanbags, he did not attack deputies, he

25 did not threaten to attack anyone, and he took no threatening actions other than

26 noncompliance with orders. *Id*. at 874-880. This Court should reach the same conclusion

27 here, where a reasonable jury could conclude that the Taser caused Randall to run and

28

prompted Stanley's use of lethal force, and any of Randall's arm movements were in response to Randall being Tased.

In *S.B. v. County of San Diego*, the Ninth Circuit held that when viewing the facts in the light most favorable to the plaintiffs, the officer's "use of deadly force was not objectively reasonable, and therefore violated [the decedent's] Fourth Amendment right against excessive force." 864 F.3d at 1014. Significantly, the *S.B.* court reached this conclusion despite the decedent having a knife and stating, "someone is gonna get hurt" and "just shoot me." *Id.* at 1011. Similar to the officer in *S.B.*, who fired as soon as the decedent grabbed a knife and started to stand from approximately six to eight feet away, Stanley shot Randall within one second of Randall coming back into his view, without giving him further commands or a verbal warning that he was prepared to shoot and without giving him time to comply with the Taser, which was cycling during the shots.

In *Kisela*, 862 F.3d 775, *rev'd on other grounds*, 138 S. Ct. 1148 (2018) (reversing only on ground that constitutional right was not clearly established in 2010), the Ninth Circuit denied summary judgment where an officer shot a woman holding a large kitchen knife after she walked toward another woman within five to six feet of her and did not comply with orders to drop the knife. The court considered that the deputies did not have information that the woman was threatening or hurting anyone and that multiple deputies responded to the scene. *Id.* Likewise, Randall did not threaten anyone, and at the time of the shooting, he was not moving forward and was not in the process of attacking anyone.

Regarding Cassidy's Taser deployments, it is well-established that the use of a Taser constitutes "an intermediate, significant level of force that must be justified by the governmental interest involved." *Bryan*, 630 F.3d at 82; *Mattos v. Agarano*, 661 F.3d 433, 449 (9th Cir. 2011); *see also Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) ("Here, the intrusion on [the plaintiff's] Fourth Amendment interests—the discharge of a taser in dart mode upon him—involved an intermediate level of force with 'physiological effects, [ ] high levels of pain, and foreseeable risk of physical injury.'") (quoting *Bryan*, 630 F.3d at 825); *Aguilar v. Knueppel*, No. 23-15442, 2024 WL 1300000,

at *1 (9th Cir. Mar. 27, 2024) ("We have previously held that the use of a taser in dart mode constitutes 'an intermediate, significant level of force'") (quoting *Bryan*, 630 F.3d at 826).

Finally, it is well established that a police officer's violation of police training weighs against granting qualified immunity. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable deputies would have been on *notice* that the force employed was objectively unreasonable"). An officer who makes a conscious decision to violate basic training guidelines, designed to safeguard the subject, should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed his or her decision to be lawful. Here, the defendant deputies were trained to de-escalate a situation, trained that they cannot use deadly force against a suspect who poses no immediate threat of death or serious bodily injury, trained to give a verbal warning before using force, and trained to allow time to comply with commands. The deputies violated this training.

## VI.    PLAINTIFF'S STATE LAW CLAIMS SURVIVE

### A. Battery and Negligence

Plaintiff is also entitled to a jury trial on his state law claims for battery and negligence for the same reasons discussed in connection with his constitutional claim for excessive force in Section IV, *supra*. Under California law, battery and negligence claims arising out of excessive force by a peace officer are evaluated by way of traditional Fourth Amendment analysis under *Graham*, *supra*. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004) ("Federal civil rights claims of excessive force are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly, federal cases are instructive."); *see also Hayes*, 736 F.3d at 1232; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998). As set forth in detail above, the

facts bearing on the reasonableness of the uses of less-lethal force and lethal force against Randall are disputed, making the question whether the uses of force were excessive and unreasonable a question of fact for the jury.

With respect to Plaintiff's negligence claim, the California Supreme Court has clarified that in police shooting cases, the negligence analysis is even broader than a typical Fourth Amendment analysis because state law specifically considers negligent "pre-shooting" tactics as part of the "totality of the circumstances" evaluation. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013) (an officer's tactical conduct and decisions preceding the use of deadly force are relevant considerations in determining whether the use of deadly force gives rise to negligence liability, which "can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable"). Here, deputies engaged in negligent tactics as set forth in Section II(F), *supra*, including escalating the situation by Tasing Randall, failing to reposition, failing to give warnings and time to comply, which supports a denial of summary judgment.

## B. Violation of the Bane Act (Cal. Civ. Code § 52.1)

Plaintiff is entitled to a jury trial on his Bane Act claim, which arises from the deputies' uses of excessive force, for the reasons discussed above in Section IV, *supra*. The Ninth Circuit in interpreting *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 798 (2017) stated, "it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993). As discussed in detail above, the deputies' conduct toward Randall and uses of force against him demonstrated a reckless disregard for Randall's safety and his constitutional right to be free from excessive force. Certainly, it shows a reckless disregard to use force against a mentally unstable man who made no verbal threats, who never attacked or attempted to attack

anyone, and who was not moving forward at the time of any of the uses of force.

**VII.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment in full, including with respect to the state law claims, over which this court has proper supplemental jurisdiction.

Dated: March 7, 2025                              LAW OFFICES OF DALE K. GALIPO

                                    By:    */s/ Renee V. Masongsong*
                                            Dale K. Galipo
                                            Renee V. Masongsong
                                            Attorneys for Plaintiffs

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT