1  Dale K. Galipo, Esq. (Bar No. 144074)
2  dalekgalipo@yahoo.com
   Renee V. Masongsong, Esq. (Bar No. 281819)
3  rvalentine@galipolaw.com
   LAW OFFICES OF DALE K. GALIPO
4  21800 Burbank Blvd., Suite 310
   Woodland Hills, CA 91367
5  Tel: (818) 347-3333 / Fax: (818) 347-4118

6
   Sharon J. Brunner, Esq. (Bar No. 229931)
7  sharonjbrunner@yahoo.com
   LAW OFFICE OF SHARON J. BRUNNER
8  14393 Park Ave., Suite 100
   Victorville, CA 92392
9  Tel: (760) 243-9997 / Fax: (760) 843-8155

10
   James S. Terrell, Esq. (Bar No. 170409)
11 LAW OFFICE OF JAMES TERRELL
   jim@talktoterrell.com
12 15411 Anacapa Rd.
   Victorville, CA 92392
13 Tel: (760) 951-5850 / Fax: (760) 952-1085

14
   Attorneys for Plaintiff, Todderick Randall
15

16              **UNITED STATES DISTRICT COURT**
17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19 TODDERICK RANDALL, individually,    Case No. 5:24-cv-00086-SSS-SP

20              Plaintiff,             *Assigned to:*
                                       Hon. District Judge Sunshine S. Sykes
21       vs.                           Hon. Magistrate Judge Sheri Pym

22 COUNTY OF SAN BERNARDINO, et       **PLAINTIFF'S STATEMENT OF**
23 al.                                **GENUINE DISPUTES OF**
                                       **MATERIAL FACT AND**
24              Defendants.           **PLAINTIFF'S ADDITIONAL**
                                       **MATERIAL FACTS**
25

26                                     Hearing Date:    4/11/2025
                                       Time:            2:00 p.m.
27                                     Location:        Courtroom 2

28                          1

## PLAINTIFF'S SEPARATE STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

Pursuant to Local Rule 56-2, Plaintiff respectfully submits his response to Defendants' Separate Statement of Uncontroverted Facts (Dkt. 27) in support of Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (Dkt. 26).

| ALLEGEDLY UNDISPUTED FACT & EVIDENCE | DISPUTED/UNDISPUTED FACT & EVIDENCE |
|---|---|
| **1.** On August 19, 2022, at approximately 12:02 p.m., Deputy Cameron Stanley ("Deputy Stanley") and Deputy Corrin Cassidy ("Deputy Cassidy") responded to a call for service at WinCo Food ("WinCo"), a grocery store located at 15350 Roy Rogers Drive, in Victorville, California.<br><br>***Evidence:*** Declaration of Deputy Cameron Stanley "Stanley Decl." ¶5; Declaration of Carrin Cassidy 'Cassidy Decl." ¶4 | Undisputed. |
| **2.** The reporting party (a WinCo employee) advised dispatch that an African American man, holding an exposed knife in his hand, had taken a bottle of alcohol of the shelf and was drinking it in the alcohol aisle.<br><br>***Evidence:*** Stanley Decl. ¶8; Cassidy Decl. ¶7 | Disputed to the extent that Mr. Randall had a box cutter as opposed to a knife. |
| **3.** The call for service occurred when the store was open to the public and heavily populated with consumers.<br><br>***Evidence:*** Stanley Decl. ¶8; Cassidy Decl. ¶7 | Disputed to the extent that no customer was in the immediate vicinity of Mr. Randall at the time of the deputies' uses of force.<br><br>***Evidence:*** "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; "Ex. D" (Initial |

| | |
|---|---|
| | Contact Video) at 10:10 – 10:20; Stanley Decl. ¶16; Cassidy Decl. ¶16. |
| **4.** When Deputies Stanley and Cassidy (the "Deputies") arrive at the scene, they observed numerous customers. <br> ***Evidence:*** Stanley Decl. ¶8; Cassidy Decl. ¶7 | Disputed to the extent that no customer was in the immediate vicinity of Mr. Randall at the time of the deputies' uses of force; Stanley Decl. ¶16; Cassidy Decl. ¶16. <br> ***Evidence:*** "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; "Ex. D" (Initial Contact Video) at 10:10 – 10:20. |
| **5.** The parking lot and outside of the store was so heavily populated, the Deputies had the maneuver around people to enter. <br> ***Evidence:*** Stanley Decl. ¶8; Cassidy Decl. ¶7 | Disputed to the extent that no customer was in the immediate vicinity of Mr. Randall at the time of the deputies' uses of force; Stanley Decl. ¶16; Cassidy Decl. ¶16. <br> ***Evidence:*** "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; "Ex. D" (Initial Contact Video) at 10:10 – 10:20. |
| **6.** Once they entered the store, Deputy Stanley observed at least 75 customers inside. <br> ***Evidence:*** Stanley Decl. ¶8 | Disputed to the extent that no customer was in the immediate vicinity of Mr. Randall at the time of the deputies' uses of force. <br> ***Evidence:*** "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; "Ex. D" (Initial Contact Video) at 10:10 – 10:20; Stanley Decl. ¶16; Cassidy Decl. ¶16. |
| **7.** Both Deputies observed numerous customers waiting in lines to check out. <br> ***Evidence:*** Stanley Decl. ¶8; Cassidy Decl. ¶7 | Disputed to the extent that no customer was in the immediate vicinity of Mr. Randall at the time of the deputies' uses of force. <br> ***Evidence:*** "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; "Ex. D" (Initial Contact Video) at 10:10 – 10:20; Stanley Decl. ¶16; Cassidy Decl. ¶16. |

3

| | |
|---|---|
| **8.** The Deputies were greeted outside by the reporting employee, Frank Calderon.<br><br>***Evidence:*** Stanley Decl. ¶10; Cassidy Decl. ¶9 | Undisputed. |
| **9.** Mr. Calderon appeared frightened. Mr. Calderon led the Deputies to the alcohol aisle and pointed out the suspect stating, "that's the guy with the knife."<br><br>***Evidence:*** Stanley Decl. ¶10 | Disputed to the extent that Mr. Randall had a box cutter as opposed to a knife.<br><br>Undisputed that Deputy Stanley described in his declaration that Mr. Calderon appeared frightened to him. |
| **10.** Mr. Calderon confirmed that he wanted the suspect to leave the store.<br><br>***Evidence:*** Stanley Decl. ¶10; Cassidy Decl. ¶9 | Undisputed. |
| **11.** The suspect was later identified as Plaintiff Roderick Randall ("Mr. Randall.")<br><br>***Evidence:*** Dkt. 8, Complaint | Undisputed. |
| **12.** When the Deputies first approached Mr. Randall he was standing alone in the alcohol aisle.<br><br>***Evidence:*** Stanley Decl. ¶11 | Undisputed. |
| **13.** From approximately fifteen (15) feet away, the Deputies observed that Mr. Randall was holding a half-empty, open bottle of alcohol in his left hand.<br><br>***Evidence:*** Stanley Decl. ¶11; Cassidy Decl. ¶10 | Undisputed. |
| **14.** In his right hand, Mr. Randall was holding heavy-duty folding box knife (the kind used in construction) in his right hand.<br><br>***Evidence:*** Stanley Decl. ¶11; Cassidy Decl. ¶10 | Undisputed. |

4

| | |
|---|---|
| **15.** The knife handle was approximately 5-6 inches, and the blade was approximately 1 inch.<br>***Evidence:*** Stanley Decl. ¶11 | Disputed to the extent that the blade was never located after the shooting.<br>***Evidence:*** Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **16.** Mr. Randall's eyes were glossed over, he was disoriented, and Deputy Stanley observed him "fumble" when he stepped.<br>***Evidence:*** Stanley Decl. ¶12; Cassidy Decl. ¶11 | Undisputed. |
| **17.** The Deputies believed Mr. Randall to be under the influence of alcohol.<br>***Evidence:*** Stanley Decl. ¶12; Cassidy Decl. ¶11 | Undisputed. |
| **18.** The Deputies therefore began attempting to deescalate the situation and prevent harm to the public by securing the knife held by Mr. Randall, and detain Mr. Randall.<br>***Evidence:*** Stanley Decl. ¶8; Cassidy Decl. ¶7 | Disputed that the deputies attempted to deescalate the situation. Officers are trained to deescalate a situation. In violation of basic police training, Deputy Cassidy escalated the situation when she Tased Mr. Randall.<br>***Evidence:*** "Ex. C" (Flosi Depo.) at 12:4-6; Clark Decl. at ¶¶ 14(c), 15(b).<br><br>Further disputed to the extent that Mr. Randall had box cutter as opposed to a knife. |
| **19.** At this point in the encounter, the Deputies believed there was probable cause a suspected crime had been committed, because he the manager wanted Mr. Randall removed from the store, constituting trespassing; Mr. Randall appeared to be publicly intoxicated; and Mr. Randall was brandishing a weapon. | Undisputed. |

| | |
|---|---|
| ***Evidence:*** Stanley Decl. ¶13; Cassidy Decl. ¶12 | |
| **20.** The Deputies approached Mr. Randall, and stood approximately 15 feet away from him.<br><br>***Evidence:*** Stanley Decl. ¶11; Cassidy Decl. ¶15 | Undisputed. |
| **21.** The Deputies stood side by side.<br><br>***Evidence:*** Stanley Decl. ¶16; Cassidy Decl. ¶16 | Undisputed. |
| **22.** There was no other customers in the aisle.<br><br>***Evidence:*** Stanley Decl. ¶16; Cassidy Decl. ¶16 | Undisputed. |
| **23.** When Mr. Randall faced the Deputies, Deputy Cassidy stated, "Hey, man, what's going on?"<br><br>***Evidence:*** Stanley Decl. ¶14 | Undisputed. |
| **24.** Then Deputy Stanley stated, "Hey, man, can you do me a favor and toss the knife to the side?"<br><br>***Evidence:*** Stanley Decl. ¶15 | Undisputed. |
| **25.** Mr. Randall did not verbally respond to either question.<br><br>***Evidence:*** Stanley Decl. ¶15; Cassidy Decl. ¶14 | Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability.<br><br>***Evidence:*** Clark Decl. at ¶ 13(r). |
| **26.** Instead, in response, he took an aggressive, "bladed" stance: Mr. Randall flexed both of his arms in front of his body with his elbows slightly bent.<br><br>***Evidence:*** Stanley Decl. ¶15; Cassidy Decl. ¶10 | Disputed that Mr. Randall took an "aggressive, bladed stance" and flexed his arms.<br><br>***Evidence:*** "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |

| | Further disputed to the extent that Mr. Randall had box cutter as opposed to a knife. |
|---|---|
| **27.** His hands were near his waistband area, balled into fists. In this aggressive, bladed stance, Mr. Randall continued to hold the bottle of alcohol in his left hand and the knife in his right hand. *Evidence:* Stanley Decl. ¶15; Cassidy Decl. ¶10 | Disputed that Mr. Randall took an "aggressive, bladed stance" and balled his hands into fists. His hands were gripping the bottle and box cutter. *Evidence:* "Ex. D" (Initial Contact Video) at 9:50 – 10:20. <br><br> Further disputed to the extent that Mr. Randall had box cutter as opposed to a knife. |
| **28.** Mr. Randall's body language appeared as if he wanted to fight. *Evidence:* Stanley Decl. ¶15 | Disputed that Mr. Randall appeared as if he wanted to fight. *Evidence:* "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| **29.** Deputy Stanley then asked Mr. Randall to drop the knife. *Evidence:* Stanley Decl. ¶17 | Undisputed. |
| **30.** Again, Mr. Randall did not verbally respond. *Evidence:* Stanley Decl. ¶17 | Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. *Evidence:* Clark Decl. at ¶ 13(r). |
| **31.** In response, he swayed back and forth in an aggressive manner. *Evidence:* Stanley Decl. ¶17 | Disputed that Mr. Randall was "aggressive." *Evidence:* "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| **32.** He appeared agitated and the muscles in his face were flexed. *Evidence:* Stanley Decl. ¶17 | Disputed. *Evidence:* "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| **33.** He glared at the Deputies in an aggressive manner. | Disputed. |

7

| | |
|---|---|
| *Evidence:* Stanley Decl. ¶17 | *Evidence:* "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| **34.**    Deputy Cassidy then ordered Mr. Randall two or three times to, "drop the knife" and "put the knife down." <br> *Evidence:* Stanley Decl. ¶15 | Undisputed. |
| **35.**    When he did not respond verbally, and continued to hold an aggressive stance. <br> *Evidence:* Stanley Decl. ¶15 | Disputed that Mr. Randall was in an "aggressive" stance. <br> *Evidence:* "Ex. D" (Initial Contact Video) at 9:50 – 10:20. <br><br> Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. <br> *Evidence:* Clark Decl. at ¶ 13(r). |
| **36.**    At this time, Deputy Cassidy unholstered her taser and put both lasers (from the taser) at/near Mr. Randall's chest/upper body. <br> *Evidence:* Stanley Decl. ¶15 | Undisputed. |
| **37.**    While Deputy Cassidy pointed her taser at Mr. Randall, Deputy Stanley continued to give Mr. Randall verbal commands. <br> *Evidence:* Stanley Decl. ¶18, 19; Cassidy Decl. ¶15 | Undisputed. |
| **38.**    Deputy Stanley asked Mr. Randall a third time to drop the knife, and Mr. Randall again refused. <br> *Evidence:* Stanley Decl. ¶18 | Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. <br> *Evidence:* Clark Decl. at ¶ 13(r). |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8

| | |
|---|---|
| **39.** Mr. Randall continued to flex his arms with the knife in his hand.<br>***Evidence:*** Stanley Decl. ¶18 | Disputed that Mr. Randall was flexing his arms.<br>***Evidence:*** "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| **40.** Deputy Stanley commanded Mr. Randall to drop the knife at least three more times.<br>***Evidence:*** Stanley Decl. ¶19 | Undisputed. |
| **41.** Mr. Randall refused all verbal commands, and continued to flex his arms with the knife in his hand and stare at the Deputies in an aggressive manner.<br>***Evidence:*** Stanley Decl. ¶19; Cassidy Decl. ¶14, 15, 17 | Disputed that Mr. Randall was "aggressive."<br>***Evidence:*** "Ex. D" (Initial Contact Video) at 9:50 – 10:20.<br><br>Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability.<br>***Evidence:*** Clark Decl. at ¶ 13(r). |
| **42.** Based on his aggressive stance, the Deputies believed Mr. Randall could advance toward them or other customer in the store.<br>***Evidence:*** Stanley Decl. ¶20 | Disputed that Mr. Randall was in an "aggressive stance."<br>***Evidence:*** "Ex. D" (Initial Contact Video) at 9:50 – 10:20.<br><br>Further disputed as to the deputies' speculation on what Mr. Randall "could" do.<br>At the time of this incident, Deputies Stanley and Cassidy had never seen Mr. Randall before and did not know anything about him.<br>***Evidence:*** Clark Decl. at ¶ 10(a).<br><br>An imminent harm is not merely a fear of future harm, no matter how great the |

9

| | |
|---|---|
| | fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. ***Evidence:*** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d). |
| | Police standards instruct that subjective fear alone does not justify the use of deadly force. ***Evidence:*** Clark Decl. at ¶ 14(i). |
| **43.** Based upon his failure to comply with the Deputies commands and his aggressive stance, Deputy Cassidy deployed her taser at Mr. Randall. ***Evidence:*** Stanley Decl. ¶22; Cassidy Decl. ¶17 | Disputed that Mr. Randall was "aggressive." ***Evidence:*** "Ex. D" (Initial Contact Video) at 9:50 – 10:20. Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. ***Evidence:*** Clark Decl. at ¶ 13(r). Deputy Cassidy has been trained that police officers cannot Tase someone for seeing a weapon in their hand, for that fact alone. ***Evidence:*** "Ex. B" (Cassidy Depo.) at 9:5-7. |
| **44.** When she deployed her taser she was approximately 10 feet away from Mr. Randall. ***Evidence:*** Stanley Decl. ¶21; Cassidy Decl. ¶18 | Disputed. Deputy Cassidy was approximately 10-15 feet from Mr. Randall when she deployed her Taser the first time. ***Evidence:*** "Ex. B" (Cassidy Depo.) at 12:24-13:7, 13:23-25. |

| | |
|---|---|
| **45.** Both taser prongs struck Mr. Randall in his upper torso area, toward the right side of his chest.<br>***Evidence:*** Stanley Decl. ¶22; Cassidy Decl. ¶19 | Undisputed. |
| **46.** When the taser prongs hit him, Mr. Randall dropped the bottle of alcohol, but continued to hold the knife in his right hand.<br>***Evidence:*** Stanley Decl. ¶22 | Disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.<br>***Evidence:*** Clark Decl. at ¶ 13(n). |
| **47.** Upon being hit with the prongs, Mr. Randall yelled, "Fuck you," and immediately tried to swipe them and pull them (the prongs/wires) from his chest, using his left hand.<br>***Evidence:*** Stanley Decl. ¶23; Cassidy Decl. ¶19 | Disputed to the extent that police officers are trained that pulling the Taser probes out after being struck is one response by individuals being Tased.<br>***Evidence:*** "Ex. A" (Stanley Depo.) at 35:22-36:2; "Ex. B" (Cassidy Depo.) at 15:7-10. |
| **48.** While the taser prongs where still in in his body, Deputy Cassidy ordered Mr. Randall to, "get on the ground."<br>***Evidence:*** Stanley Decl. ¶19 | Undisputed. |
| **49.** Mr. Randall ignored Deputy Cassidy's demands and continued to try to remove the prongs/wires from his body.<br>***Evidence:*** Stanley Decl. ¶19 | Disputed to the extent that police officers are trained that pulling the Taser probes out after being struck is one response by individuals being Tased.<br>***Evidence:*** "Ex. A" (Stanley Depo.) at 35:22-36:2; "Ex. B" (Cassidy Depo.) at 15:7-10.<br><br>Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with |

11

| | |
|---|---|
| | commands and did not assess that ability. **Evidence:** Clark Decl. at ¶ 13(r) |
| **50.** While the taser prongs were in his body, Deputy Stanley verbally commanded Mr. Randall, at least two times to, "get on the ground," but he refused to get on the ground. **Evidence:** Stanley Decl. ¶24 | Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. **Evidence:** Clark Decl. at ¶ 13(r). |
| **51.** Despite the less-lethal purpose of a taser, the taser prongs did not physically affect or incapacitate Mr. Randall in manner. **Evidence:** Stanley Decl. ¶25; Cassidy Decl. ¶21 | Disputed. Mr. Randall reacted to the Taser. After the first Taser deployment, Mr. Randall ran away from the deputies. Police officers, including Deputy Cassidy, are trained that a common response to being Tased is to run from the Taser. **Evidence:** "Ex. A" (Stanley Depo.) at 44:4-9; "Ex. B" (Cassidy Depo.) at 15:4-6, 17:11-16, 21:2-4, 26:22-27:1; "Ex. C" (Flosi Depo.) at 30:4-16, 34:15-35:9; "Ex. D" (Initial Contact Video) at 10:13 – 10:30; Clark Decl. at ¶ 10(e). |
| **52.** Deputy Cassidy was scared for her safety and the safety of others because this was the first time in her career she had ever observed a taser fail to subdue a suspect in any manner. **Evidence:** Cassidy Decl. ¶21, 22 | Disputed to the extent that police standards instruct that subjective fear alone does not justify the use of deadly force. **Evidence:** Clark Decl. at ¶ 14(i). |
| **53.** After Mr. Randall successfully removed the taser prongs/wires from his body, he took a few steps backwards, turned and began fleeing from Deputy Stanley and Deputy Cassidy—running toward other area(s) of the store where there were customers. **Evidence:** Stanley Decl. ¶24, 26; Cassidy Decl. ¶20 | Disputed to the extent that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. **Evidence:** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d). |

12

| | |
|---|---|
| | Police standards instruct that subjective fear alone does not justify the use of deadly force. **_Evidence:_** Clark Decl. at ¶ 14(i). |
| | Police officers, including Deputy Cassidy, are trained that a common response to being Tased is to run from the Taser. **_Evidence:_** "Ex. B" (Cassidy Depo.) at 15:4-6; "Ex. C" (Flosi Depo.) at 34:15-35:9; Clark Decl. at ¶ 10(e). |
| | Disputed to the extent that no customer was in the immediate vicinity of Mr. Randall at the time of the deputies' uses of force; Stanley Decl. ¶16; Cassidy Decl. ¶16. **_Evidence:_** "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; "Ex. D" (Initial Contact Video) at 10:10 – 10:20. |
| **54.** The Deputies pursued him on foot—Deputy Cassidy was a few paces ahead of Deputy Stanley, who followed closely behind. **_Evidence:_** Stanley Decl. ¶27; Cassidy Decl. ¶23 | Undisputed. |
| **55.** Mr. Randall ran north down the alcohol aisle and began to round east corner of the end of the aisle. **_Evidence:_** Stanley Decl. ¶28; Cassidy Decl. ¶23 | Undisputed. |
| **56.** As he rounded the corner, the Deputies lost sight of Mr. Randall for approximately 1 second. | Undisputed. |

13

| | |
|---|---|
| *Evidence:* Stanley Decl. ¶28; Cassidy Decl. ¶23 | |
| **57.** When Deputy Cassidy rounded the east corner of the aisle, Mr. Randall came back into her view. *Evidence:* Cassidy Decl. ¶23 | Undisputed. |
| **58.** Mr. Randall had stopped running. *Evidence:* Cassidy Decl. ¶23 | Undisputed. |
| **59.** He turned around and was facing Deputy Cassidy. *Evidence:* Cassidy Decl. ¶23 | Undisputed. |
| **60.** Mr. Randall held the knife in his right hand, raised his right hand above his head, and swung the knife downward toward Deputy Cassidy in a slashing manner. *Evidence:* Stanley Decl. ¶29; Cassidy Decl. ¶23 | Disputed. Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments or prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter. *Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l). Further, no person was within striking distance of Mr. Randall when Deputy Cassidy deployed her Taser the second time or when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when he started firing his weapon. |

| | |
|---|---|
| | *Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| | Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time. |
| | *Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| | Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. |
| | *Evidence:* Clark Decl. at ¶ 13(n). |
| **61.** Deputy Cassidy was approximately 3 to 5 feet from Mr. Randall while he was swinging the knife in her direction.<br><br>*Evidence:* Stanley Decl. ¶29; Cassidy Decl. ¶23 | Disputed.<br>Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments or prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter.<br><br>*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l). |

15

Further, no person was within striking distance of Mr. Randall when Deputy Cassidy deployed her Taser the second time or when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when he started firing his weapon.

**Evidence:** "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time.

**Evidence:** "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.

**Evidence:** Clark Decl. at ¶ 13(n).

Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade.

16

| | |
|---|---|
| | *Evidence:* Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **62.**    While Mr. Randall was swinging the knife at Deputy Cassidy, and in an effort to disarm him, Deputy Cassidy deployed her taser at Mr. Randall a second time.<br>*Evidence:* Cassidy Decl. ¶24 | Disputed.<br>Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments or prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter.<br>*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).<br><br>Further, no person was within striking distance of Mr. Randall when Deputy Cassidy deployed her Taser the second time or when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when he started firing his weapon.<br>*Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time.<br>*Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" |

| | |
|---|---|
| | (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| | Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. ***Evidence:*** Clark Decl. at ¶ 13(n). |
| **63.** As she fired the taser the second time, Deputy Cassidy lost her footing and fell backwards.<br>***Evidence:*** Cassidy Decl. ¶24 | Undisputed. |
| **64.** The second taser shot hit Mr. Randall, however it, again did not have a physical effect on him.<br>***Evidence:*** Cassidy Decl. ¶24 | Disputed.<br>In violation of basic police training, Deputy Cassidy escalated the situation when she Tased Mr. Randall.<br>***Evidence:*** Clark Decl. at ¶ 15(b).<br><br>The deputies failed to provide Mr. Randall a reasonable opportunity to comply with Deputy Cassidy's second Taser Deployment before using deadly force against Mr. Randall; in other words, the deputies did not allow time to determine whether the second Taser deployment had a physical effect on Mr. Randall.<br>***Evidence:*** Clark Decl. at ¶ 15(g).<br><br>Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | *Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h). <br><br> Deputy Cassidy did not give Mr. Randall any commands prior to Tasing him the second time. <br> *Evidence:* "Ex. B" (Cassidy Depo.) at 22:6-9; Clark Decl. at ¶ 15(f). |
| **65.** Deputy Stanley rounded the east corner of the aisle almost simultaneous to the time Deputy Cassidy rounded the east corner of the aisle. <br> *Evidence:* Cassidy Decl. ¶23 | Undisputed. |
| **66.** As he rounded the aisle, Mr. Randall came back into Deputy Stanley's sight line, and Deputy Stanley observed Mr. Randall raising his right hand up holding the box knife and swinging the knife in a downward motion, with a forward angle. <br> *Evidence:* Stanley Decl. ¶29 | Disputed. <br> Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter. <br> *Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l). <br> No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon. |

19

*Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Deputy Stanley stepped backward after he fired his first shot, creating distance between himself and Mr. Randall. *Evidence:* "Ex. A" (Stanley Depo.) at 41:14-21; "Ex. C" (Flosi Depo.) at 37:11-15; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08

Mr. Randall fell backward when Deputy Stanley was firing his shots, creating distance between Deputy Stanley and Mr. Randall. *Evidence:* "Ex. A" (Stanley Depo.) at 56:18-20, 66:4-10; "Ex. C" (Flosi Depo.) at 37:16-19; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. *Evidence:* Clark Decl. at ¶ 13(n).

Mr. Randall was not moving forward when Deputy Stanley fired his shots. *Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| **67.** Deputy Stanley believed Mr. Randall was lunging at Deputy Cassidy.<br>***Evidence:*** Stanley Decl. ¶29 | Disputed that an objectively reasonable deputy in Stanley's position would believe that Mr. Randall was "lunging." The video evidence does not support that Mr. Randall was "lunging."<br>***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting.<br>***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).<br><br>Mr. Randall was not attacking or attempting to attack anyone at the time of the shooting.<br>***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon.<br>***Evidence:*** "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS



Deputy Stanley stepped backward after he fired his first shot, creating distance between himself and Mr. Randall.
**Evidence:** "Ex. A" (Stanley Depo.) at 41:14-21; "Ex. C" (Flosi Depo.) at 37:11-15; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08

Mr. Randall fell backward when Deputy Stanley was firing his shots, creating distance between Deputy Stanley and Mr. Randall.
**Evidence:** "Ex. A" (Stanley Depo.) at 56:18-20, 66:4-10; "Ex. C" (Flosi Depo.) at 37:16-19; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Mr. Randall was not moving forward when Deputy Stanley fired his shots.
**Evidence:** "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶ 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

When Deputy Stanley fired his shots, Mr. Randall was being Tased.
**Evidence:** "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. C" (Flosi Depo.) at 37:3-10; "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

At the time of the shooting, Deputy Stanley was aware that there were less-lethal options available.
**Evidence:** "Ex. A" (Stanley Depo.) at 29:23-25; Clark Decl. at ¶ 13(i).

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

At the time of the shooting, Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge. **Evidence:** "Ex. A" (Stanley Depo.) at 60:6-14; Clark Decl. at ¶ 13(i).

Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time.
**Evidence:** "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h).

Police standards instruct that subjective fear alone does not justify the use of deadly force.
**Evidence:** Clark Decl. at ¶ 14(i).

Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury.
**Evidence:** "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.<br><br>*Evidence:* "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.<br><br>An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.<br><br>*Evidence:* "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d).<br><br>Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.<br><br>*Evidence:* Clark Decl. at ¶ 13(n). |
| **68.**   At this moment, Deputy Stanley was approximately 5 to 8 feet from Mr. Randall.<br><br>*Evidence:* Stanley Decl. ¶29 | Disputed.<br><br>Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when he started firing his weapon.<br><br>*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(j), 13(l). |

24

| | |
|---|---|
| | Deputy Stanley stepped backward after he fired his first shot, creating distance between himself and Mr. Randall. *Evidence:* "Ex. A" (Stanley Depo.) at 41:14-21; "Ex. C" (Flosi Depo.) at 37:11-15; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08 |
| | Mr. Randall fell backward when Deputy Stanley was firing his shots, creating distance between Deputy Stanley and Mr. Randall. *Evidence:* "Ex. A" (Stanley Depo.) at 56:18-20, 66:4-10; "Ex. C" (Flosi Depo.) at 37:16-19; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| **69.** When Deputy Stanley observed Mr. Randall raising his right hand up holding the box knife and swinging the knife down at a forward angle toward Deputy Cassidy, he believed Mr. Randall was attempting to stab or slash Deputy Cassidy. *Evidence:* Stanley Decl. ¶30 | Disputed. Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting. *Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l). No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon. *Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |

25

1

2    Mr. Randall was not moving forward
3    when Deputy Stanley fired his shots.
     ***Evidence:*** "Ex. A" (Stanley Depo.) at
4    42:9-14, "Ex. B" (Cassidy Depo.) at
     30:8-14; 43:10-20; Clark Decl. at ¶
5    13(j); "Ex. E" (Lethal Force Video) at
     00:04 – 00:08.
6

7    Mr. Randall was not attacking or
8    attempting to attack anyone at the time
     of the shooting.
9    ***Evidence:*** "Ex. E" (Lethal Force Video)
10   at 00:04 – 00:08.

11

12   When Deputy Stanley fired his shots,
     Mr. Randall was being Tased.
13   ***Evidence:*** "Ex. A" (Stanley Depo.) at
     53:2-5, 64:21-65:4; "Ex. B" (Cassidy
14   Depo.) at 29:8-12; "Ex. C" (Flosi Depo.)
     at 37:3-10; "Ex. E" (Lethal Force Video)
15   at 00:04 – 00:08.
16

17   At the time of the shooting, Deputy
18   Stanley was aware that there were less-
     lethal options available.
19   ***Evidence:*** "Ex. A" (Stanley Depo.) at
     29:23-25; Clark Decl. at ¶ 13(i).
20

21   At the time of the shooting, Deputy
22   Stanley was aware that Deputy
     Cassidy's Taser had a second cartridge.
23   ***Evidence:*** "Ex. A" (Stanley Depo.) at
     60:6-14; Clark Decl. at ¶ 13(i).
24

25   Deputy Stanley fired his shots within
26   approximately one second of Deputy
     Cassidy deploying her Taser for the
27   second time.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h).

Police standards instruct that subjective fear alone does not justify the use of deadly force.

*Evidence:* Clark Decl. at ¶ 14(i).

Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury.

*Evidence:* "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.

*Evidence:* "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.



27

| | |
|---|---|
| | An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. ***Evidence:*** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d). |
| | Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. ***Evidence:*** Clark Decl. at ¶ 13(n). |
| | Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade. ***Evidence:*** Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **70.**    To protect Deputy Cassidy from this threat of great bodily harm, serious injury and/or death, Deputy Stanley fired his firearm to stop Mr. Randall from stabbing or slashing Deputy Cassidy. ***Evidence:*** Stanley Decl. ¶32; Cassidy Decl. ¶25 | Disputed. Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting. ***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l). Mr. Randall was not attacking or attempting to attack anyone at the time of the shooting. |

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon.

*Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Mr. Randall was not moving forward when Deputy Stanley fired his shots.

*Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶ 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

When Deputy Stanley fired his shots, Mr. Randall was being Tased.

*Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. C" (Flosi Depo.) at 37:3-10; "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

At the time of the shooting, Deputy Stanley was aware that there were less-lethal options available.

*Evidence:* "Ex. A" (Stanley Depo.) at 29:23-25; Clark Decl. at ¶ 13(i).

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At the time of the shooting, Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge. ***Evidence:*** "Ex. A" (Stanley Depo.) at 60:6-14; Clark Decl. at ¶ 13(i).

Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time.
***Evidence:*** "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h).

Police standards instruct that subjective fear alone does not justify the use of deadly force.
***Evidence:*** Clark Decl. at ¶ 14(i).

Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury.
***Evidence:*** "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a

30

| | |
|---|---|
| | person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.<br>***Evidence:*** "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.<br><br>An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.<br>***Evidence:*** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d).<br><br>Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.<br>***Evidence:*** Clark Decl. at ¶ 13(n).<br><br>Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade.<br>***Evidence:*** Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **71.** Deputy Stanley believed Mr. Randall was going seriously injure or kill him or Deputy Cassidy.<br>***Evidence:*** Stanley Decl. ¶32 | Disputed.<br>Mr. Randall did not make any slashing, swinging or stabbing motions with the |

box cutter prior to Deputy Stanley's
shooting.
*Evidence:* "Ex. E" (Lethal Force Video)
at 00:04 – 00:08; Clark Decl. at ¶¶
10(i), 10(l).

Mr. Randall was not attacking or
attempting to attack anyone at the time
of the shooting.
*Evidence:* "Ex. E" (Lethal Force Video)
at 00:04 – 00:08.

No person was within striking distance
of Mr. Randall when Deputy Stanley
fired his shots. Deputy Cassidy was
approximately eight to ten feet from Mr.
Randall at the time of the shooting.
Deputy Stanley was approximately 10 –
12 feet from Mr. Randall when Deputy
Stanley started firing his weapon.
*Evidence:* "Ex. A" (Stanley Depo.) at
28:3-9; Clark Decl. at ¶¶ 10(j), 13(k);
"Ex. E" (Lethal Force Video) at 00:04 –
00:08.

Mr. Randall was not moving forward
when Deputy Stanley fired his shots.
*Evidence:* "Ex. A" (Stanley Depo.) at
42:9-14, "Ex. B" (Cassidy Depo.) at
30:8-14; 43:10-20; Clark Decl. at ¶
13(j); "Ex. E" (Lethal Force Video) at
00:04 – 00:08.

When Deputy Stanley fired his shots,
Mr. Randall was being Tased.
*Evidence:* "Ex. A" (Stanley Depo.) at
53:2-5, 64:21-65:4; "Ex. B" (Cassidy
Depo.) at 29:8-12; "Ex. C" (Flosi Depo.)

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

at 37:3-10; "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

At the time of the shooting, Deputy Stanley was aware that there were less-lethal options available.
*Evidence:* "Ex. A" (Stanley Depo.) at 29:23-25; Clark Decl. at ¶ 13(i).

At the time of the shooting, Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge.
*Evidence:* "Ex. A" (Stanley Depo.) at 60:6-14; Clark Decl. at ¶ 13(i).

Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time.
*Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h).

Police standards instruct that subjective fear alone does not justify the use of deadly force.
*Evidence:* Clark Decl. at ¶ 14(i).

Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury.

*Evidence:* "Ex. A" (Stanley Depo.) at
67:8-16; "Ex. C" (Flosi Depo.) at 17:20-
18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy
Stanley, are trained that a threat of death
or serious injury is imminent when,
based upon the totality of the
circumstances, a reasonable officer in
the same situation would believe that a
person has the present ability,
opportunity, and apparent intent to
immediately cause death or serious
bodily injury to the peace officer or
another person.

*Evidence:* "Ex. A" (Stanley Depo.) at
68:24-69:8; Clark Decl. at ¶ 11(c)
(citing PC 835a); "Ex. C" (Flosi Depo.)
at 18:17-19:8, 19.

An imminent harm is not merely a fear
of future harm, no matter how great the
fear and no matter how great the
likelihood of the harm, but is one that
from appearances, must be instantly
confronted and addressed.

*Evidence:* "Ex. C" (Flosi Depo.) at
20:9-25; Clark Decl. at ¶ 11(d).

Further disputed to the extent that one of
the police reports (RANDALL/SPD-
000011) indicated that, based on
investigators' review of the surveillance
video, Mr. Randall tossed the box cutter
during or immediately after the initial
Taser deployment, before the shooting.

*Evidence:* Clark Decl. at ¶ 13(n).

Law enforcement later located the
handle of the box cutter under a shelf

| | |
|---|---|
| | after the shooting but were unable to locate a blade.<br><br>***Evidence:*** Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **72.**    Deputy Cassidy's [sic] deployed her taser and Deputy Stanley fired his firearm at approximately the same time.<br><br>***Evidence:*** Cassidy Decl. ¶25 | Undisputed. |
| **73.**    Mr. Randall was struck by the rounds of lethal force, and fell to the ground.<br><br>***Evidence:*** Dkt. 8, Complaint; Stanley Decl. ¶34; Cassidy Decl. ¶25 | Undisputed. |
| **74.**    Once Mr. Randall was on the ground, Deputy Stanley holstered his firearm and placed handcuffs on Mr. Randall, assisted by Deputy Cassidy who had just stood up from her fall to the floor.<br><br>***Evidence:*** Stanley Decl. ¶34; Cassidy Decl. ¶25 | Undisputed. |
| **75.**    He located gloves and immediately began to administer aid to Mr. Randall.<br><br>***Evidence:*** Stanley Decl. ¶34 | Undisputed. |
| **76.**    Deputy Cassidy radioed for aid. Medical personnel arrived within 5 minutes to assist Mr. Randall.<br><br>***Evidence:*** Cassidy Decl. ¶25 | Undisputed. |
| **77.**    At the time of the lethal force encounter, Deputy Stanley believed he fired four to five rounds from his firearm.<br><br>***Evidence:*** Stanley Decl. ¶33 | Undisputed. |

35

| | |
|---|---|
| **78.** Deputy Stanley fired only until he observed that Mr. Randall was no longer coming after Deputy Cassidy or myself and that he was no longer a threat.<br><br>***Evidence:*** Stanley Decl. ¶33 | Disputed.<br><br>Mr. Randall was not moving forward when Deputy Stanley fired his shots, including not "coming after Deputy Cassidy."<br><br>***Evidence:*** "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶ 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting.<br><br>***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).<br><br>Mr. Randall was not attacking or attempting to attack anyone at the time of the shooting.<br><br>***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon.<br><br>***Evidence:*** "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

When Deputy Stanley fired his shots,
Mr. Randall was being Tased.
***Evidence:*** "Ex. A" (Stanley Depo.) at
53:2-5, 64:21-65:4; "Ex. B" (Cassidy
Depo.) at 29:8-12; "Ex. C" (Flosi Depo.)
at 37:3-10; "Ex. E" (Lethal Force Video)
at 00:04 – 00:08.

At the time of the shooting, Deputy
Stanley was aware that there were less-
lethal options available.
***Evidence:*** "Ex. A" (Stanley Depo.) at
29:23-25; Clark Decl. at ¶ 13(i).

At the time of the shooting, Deputy
Stanley was aware that Deputy
Cassidy's Taser had a second cartridge.
***Evidence:*** "Ex. A" (Stanley Depo.) at
60:6-14; Clark Decl. at ¶ 13(i).

Deputy Stanley fired his shots within
approximately one second of Deputy
Cassidy deploying her Taser for the
second time.
***Evidence:*** "Ex. A" (Stanley Depo.) at
53:2-5, 64:21-65:4; "Ex. B" (Cassidy
Depo.) at 29:8-12; "Ex. E" (Lethal Force
Video) at 00:04 – 00:08; Clark Decl. at ¶
13(h).

Police standards instruct that subjective
fear alone does not justify the use of
deadly force.
***Evidence:*** Clark Decl. at ¶ 14(i).

Basic police training and standards
instruct, and Deputy Stanley had been
trained at the time of the shooting, that
deadly force should only be used on the

37

basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury.

***Evidence:*** "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.

***Evidence:*** "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.

An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

***Evidence:*** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d).

Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | *Evidence:* Clark Decl. at ¶ 13(n).<br><br>Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade.<br>*Evidence:* Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **79.**    There were no customers near Mr. Randall at this moment, and Deputy Stanley believed there was no possibility a customer would be injured if he deployed lethal force to protect Deputy Cassidy.<br>*Evidence:* Stanley Decl. ¶31 | Disputed to the extent that Police officers are trained to consider the background or backdrop of the shooting when using deadly force, and two of Deputy Stanley's seven shots missed, striking items in the grocery store.<br>*Evidence:* "Ex. A" (Stanley Depo.) at 68:3-23; "Ex. B" (Cassidy Depo.) at 29:19-23; Clark Decl. at ¶ 15(e); "Ex. C" (Flosi Depo.) at 27:10-14. |
| **80.**    Both times Deputy Cassidy deployed her taser at Mr. Randall, he was still armed with the knife.<br>*Evidence:* Cassidy Decl. ¶26 | Disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.<br>*Evidence:* Clark Decl. at ¶ 13(n).<br><br>Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade.<br>*Evidence:* Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15.<br><br>Disputed to the extent that it was a box cutter, not a knife. |

39

| | |
|---|---|
| 81.    The second time Deputy Cassidy deployed his [sic] taser, Mr. Randall held the knife in his right hand, raised his right hand above his head, and swung the knife downward toward her in a slashing manner.<br><br>*Evidence:* Cassidy Decl. ¶26 | Disputed.<br><br>Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments or prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter.<br><br>*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).<br><br>Deputy Cassidy was snot within striking distance of Mr. Randall when Deputy Cassidy deployed her Taser the second time. Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time.<br><br>*Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time.<br><br>*Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Further disputed to the extent that one of the police reports (RANDALL/SPD- |

| | |
|---|---|
| | 000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. *Evidence:* Clark Decl. at ¶ 13(n). |
| | Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade. *Evidence:* Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| 82.    Deputy Cassidy was approximately 3 to 5 feet from Mr. Randall while he was swinging the knife in her direction. *Evidence:* Stanley Decl. ¶29; Cassidy Decl. ¶26 | Disputed. Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time. *Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.  Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments or prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter. *Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l). |

41



| | |
|---|---|
| | Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time. |
| | ***Evidence:*** "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| | Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. ***Evidence:*** Clark Decl. at ¶ 13(n). |
| | Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade. ***Evidence:*** Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| **83.** The Deputies had a legitimate law enforcement purpose and reasonable suspicion based on current law enforcement training and practices to contact and detain Mr. Randall. ***Evidence:*** Declaration of Edward Flosi "Flosi Decl." Stanley Decl. ¶17 | Undisputed. |
| **84.** The Deputies had a legitimate law enforcement purpose and probable cause based on current law enforcement training and practices to arrest Mr. Randall once he swung the | Disputed. The video does not show Mr. Randall swinging the box cutter at all, let alone "several times." |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| box-cutter downward several times, refused the Deputies' commands, and ran away from the Deputies.<br><br>***Evidence:*** Flosi Decl. ¶20 | Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments or prior to Deputy Stanley's shooting. Deputy Cassidy never stated in her initial interview or deposition that Mr. Randall made any swinging, slashing, or stabbing motions with the box cutter.<br><br>***Evidence:*** "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).<br><br>Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time.<br><br>***Evidence:*** "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time.<br><br>***Evidence:*** "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.<br><br>Further disputed to the extent that one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting. |

43

| | |
|---|---|
| | *Evidence:* Clark Decl. at ¶ 13(n). |
| | Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade. |
| | *Evidence:* Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| | Further disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. |
| | *Evidence:* Clark Decl. at ¶ 13(r). |
| 85.    The deputies used verbal persuasion several times to gain Mr. Randall's cooperation to disarm.<br><br>*Evidence:* Flosi Decl. ¶22 | Disputed to the extent that the deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability.<br><br>*Evidence:* Clark Decl. at ¶ 13(r). |
| 86.    Officers are trained that they must first deal with any dangerous actions and behaviors of a subject in order to stabilize the situation prior to making any effort to evaluate if a subject; (1) is possibly suffering from mental psychosis, or (2) has a pre-existing mental illness.<br><br>*Evidence:* Flosi Decl. ¶23 | Disputed to the extent that this does not establish the reasonableness and necessity of the officers' uses of force.<br><br>The deputies knew or should have known that Mr. Randall was mentally ill or having a mental health crisis.<br><br>*Evidence:* "Ex. A" (Stanley Depo.) at 33:8-18; Clark Decl. at ¶ 10(e).<br><br>Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" |

| | |
|---|---|
| | belief that the suspect poses an immediate threat of death or serious bodily injury.<br>*Evidence:* "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).<br><br>Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.<br>*Evidence:* "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.<br><br>An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.<br>*Evidence:* "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d). |
| **87.** Mr. Randall did not allow the opportunity for the officers to conduct any such evaluation.<br>*Evidence:* Flosi Decl. ¶23 | Disputed.<br><br>The deputies were not responding to a serious or violent crime.<br>*Evidence:* Clark Decl. at ¶ 10(a).<br><br>When Deputies Stanley and Cassidy responded to this incident, they had no |

information that Mr. Randall had physically injured anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 17:2-4; "Ex. B" (Cassidy Depo.) at 11:12-14; Clark Decl. at ¶ 10(b).

When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had verbally threatened to harm anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 17:5-7; "Ex. B" (Cassidy Depo.) at 11:18-20, 14:11-13; "Ex. C" (Flosi Depo.) at 29:5-8; Clark Decl. at ¶ 10(c).

The deputies had no information that Mr. Randall had tried to attack anyone with the box cutter.

*Evidence:* "Ex. B" (Cassidy Depo.) at 11:15-17; Clark Decl. at ¶ 10(d).

Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not charge at anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 32:21-23; "Ex. B" (Cassidy Depo.) at 26:3-6; Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not advance toward anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 33:1-3; "Ex. B" (Cassidy Depo.) at 26:3-6 Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Mr. Randall was not moving toward the deputies at the time of the first Taser deployment.

***Evidence:*** "Ex. C" (Flosi Depo.) at 29:24-30:3; Clark Decl. at ¶¶ 10(f), 10(h); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.


Police officers, including Deputy Cassidy, are trained that a common response to being Tased is to run from the Taser.

***Evidence:*** "Ex. B" (Cassidy Depo.) at 15:4-6; "Ex. C" (Flosi Depo.) at 34:23-35:9; Clark Decl. at ¶ 10(e).


Deputy Cassidy has been trained that police officers cannot Tase someone for seeing a weapon in their hand, for that fact alone.

***Evidence:*** "Ex. B" (Cassidy Depo.) at 9:5-7. |
| **88.**    The Deputies used appropriate pre-force tactics that were appropriate and consistent with current law enforcement training and practices.

***Evidence:*** Flosi Decl. ¶27 | Disputed. |
| **89.**    The intermediate non-deadly force responses by Deputy Cassidy were appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death.

***Evidence:*** Flosi Decl. ¶27 | Disputed.


Officers are trained to deescalate a situation. In violation of basic police training, Deputy Cassidy escalated the situation when she Tased Mr. Randall.

***Evidence:*** "Ex. C" (Flosi Depo.) at 12:4-6; Clark Decl. at ¶¶ 14(c), 15(b). |

47

The deputies were not responding to a serious or violent crime.

*Evidence:* Clark Decl. at ¶ 10(a).

When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had physically injured anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 17:2-4; "Ex. B" (Cassidy Depo.) at 11:12-14; Clark Decl. at ¶ 10(b).

When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had verbally threatened to harm anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 17:5-7; "Ex. B" (Cassidy Depo.) at 11:18-20, 14:11-13; "Ex. C" (Flosi Depo.) at 29:5-8; Clark Decl. at ¶ 10(c).

The deputies had no information that Mr. Randall had tried to attack anyone with the box cutter.

*Evidence:* "Ex. B" (Cassidy Depo.) at 11:15-17; Clark Decl. at ¶ 10(d).

Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not charge at anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 32:21-23; "Ex. B" (Cassidy Depo.) at 26:3-6; Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not advance toward anyone.

48



**Evidence:** "Ex. A" (Stanley Depo.) at 33:1-3; "Ex. B" (Cassidy Depo.) at 26:3-6 Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

Mr. Randall was not moving toward the deputies at the time of the first Taser deployment.

**Evidence:** "Ex. C" (Flosi Depo.) at 29:24-30:3; Clark Decl. at ¶¶ 10(f), 10(h); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

Police officers, including Deputy Cassidy, are trained that a common response to being Tased is to run from the Taser.

**Evidence:** "Ex. B" (Cassidy Depo.) at 15:4-6; "Ex. C" (Flosi Depo.) at 34:23-35:9; Clark Decl. at ¶ 10(e).

Deputy Cassidy has been trained that police officers cannot Tase someone for seeing a weapon in their hand, for that fact alone.

**Evidence:** "Ex. B" (Cassidy Depo.) at 9:5-7.

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | bodily injury to the peace officer or another person.<br>***Evidence:*** "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.<br><br>An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.<br>***Evidence:*** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d). |
| **90.** The intermediate non-deadly forces responses were appropriate and consistent with current law enforcement training standards in consideration of the "totality of the circumstances" presented to Deputy Cassidy at the moments non-deadly force was used.<br>***Evidence:*** Flosi Decl. ¶27 | Disputed.<br><br>Officers are trained to deescalate a situation. In violation of basic police training, Deputy Cassidy escalated the situation when she Tased Mr. Randall.<br>***Evidence:*** "Ex. C" (Flosi Depo.) at 12:4-6; Clark Decl. at ¶¶ 14(c), 15(b).<br><br>The deputies were not responding to a serious or violent crime.<br>***Evidence:*** Clark Decl. at ¶ 10(a).<br><br>When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had physically injured anyone.<br>***Evidence:*** "Ex. A" (Stanley Depo.) at 17:2-4; "Ex. B" (Cassidy Depo.) at 11:12-14; Clark Decl. at ¶ 10(b).<br><br>When Deputies Stanley and Cassidy responded to this incident, they had no |

50

information that Mr. Randall had verbally threatened to harm anyone.

***Evidence:*** "Ex. A" (Stanley Depo.) at 17:5-7; "Ex. B" (Cassidy Depo.) at 11:18-20, 14:11-13; "Ex. C" (Flosi Depo.) at 29:5-8; Clark Decl. at ¶ 10(c).

The deputies had no information that Mr. Randall had tried to attack anyone with the box cutter.

***Evidence:*** "Ex. B" (Cassidy Depo.) at 11:15-17; Clark Decl. at ¶ 10(d).

Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not charge at anyone.

***Evidence:*** "Ex. A" (Stanley Depo.) at 32:21-23; "Ex. B" (Cassidy Depo.) at 26:3-6; Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not advance toward anyone.

***Evidence:*** "Ex. A" (Stanley Depo.) at 33:1-3; "Ex. B" (Cassidy Depo.) at 26:3-6 Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

Mr. Randall was not moving toward the deputies at the time of the first Taser deployment.

***Evidence:*** "Ex. C" (Flosi Depo.) at 29:24-30:3; Clark Decl. at ¶¶ 10(f), 10(h); "Ex. D" (Initial Contact Video) at 9:50 – 10:20.

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Police officers, including Deputy Cassidy, are trained that a common response to being Tased is to run from the Taser. <br> *Evidence:* "Ex. B" (Cassidy Depo.) at 15:4-6; "Ex. C" (Flosi Depo.) at 34:23-35:9; Clark Decl. at ¶ 10(e). <br><br> Deputy Cassidy has been trained that police officers cannot Tase someone for seeing a weapon in their hand, for that fact alone. <br> *Evidence:* "Ex. B" (Cassidy Depo.) at 9:5-7. <br><br> The deputies failed to give Mr. Randall a verbal warning prior to either Taser deployment. <br> *Evidence:* "Ex. A" (Stanley Depo.) at 43:7-9; "Ex. B" (Cassidy Depo.) at 22:6-9; "Ex. C" (Flosi Depo.) at 28:12-16; Clark Decl. at ¶ 10(k). |
| **91.** The deadly force response by Deputy Stanley was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. <br> *Evidence:* Flosi Decl. ¶30 | Disputed. <br> The deputies were not responding to a serious or violent crime. <br> *Evidence:* Clark Decl. at ¶ 10(a). <br><br> When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had physically injured anyone. <br> *Evidence:* "Ex. A" (Stanley Depo.) at 17:2-4; "Ex. B" (Cassidy Depo.) at 11:12-14; Clark Decl. at ¶ 10(b). <br><br> When Deputies Stanley and Cassidy responded to this incident, they had no |

52

information that Mr. Randall had verbally threatened to harm anyone.

*Evidence:* "Ex. A" (Stanley Depo.) at 17:5-7; "Ex. B" (Cassidy Depo.) at 11:18-20, 14:11-13; "Ex. C" (Flosi Depo.) at 29:5-8; Clark Decl. at ¶ 10(c).

The deputies had no information that Mr. Randall had tried to attack anyone with the box cutter.

*Evidence:* "Ex. B" (Cassidy Depo.) at 11:15-17; Clark Decl. at ¶ 10(d).

Mr. Randall was not moving forward when Deputy Stanley fired his shots.

*Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶ 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Deputy Stanley stepped backward after he fired his first shot, creating distance between himself and Mr. Randall.

*Evidence:* "Ex. A" (Stanley Depo.) at 41:14-21; "Ex. C" (Flosi Depo.) at 37:11-15; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08

Mr. Randall fell backward when Deputy Stanley was firing his shots, creating distance between Deputy Stanley and Mr. Randall.

*Evidence:* "Ex. A" (Stanley Depo.) at 56:18-20, 66:4-10; "Ex. C" (Flosi Depo.) at 37:16-19; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS



Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting.

*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).

Mr. Randall was not attacking or attempting to attack anyone at the time of the shooting.

*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon.

*Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

When Deputy Stanley fired his shots, Mr. Randall was being Tased.

*Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. C" (Flosi Depo.) at 37:3-10; "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

At the time of the shooting, Deputy Stanley was aware that there were less-lethal options available.

54

*Evidence:* "Ex. A" (Stanley Depo.) at 29:23-25; Clark Decl. at ¶ 13(i).

At the time of the shooting, Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge. *Evidence:* "Ex. A" (Stanley Depo.) at 60:6-14; Clark Decl. at ¶ 13(i).

Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time.
*Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h).

Police standards instruct that subjective fear alone does not justify the use of deadly force.
*Evidence:* Clark Decl. at ¶ 14(i).

Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury.
*Evidence:* "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when,



based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.

*Evidence:* "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.

An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

*Evidence:* "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d).

Police officers are trained to issue a verbal warning prior to using deadly force.

*Evidence:* "Ex. C" (Flosi Depo.) at 22:12-19; Clark Decl. at ¶ 14(h).

Deputy Stanley did not give Mr. Randall a verbal warning prior to shooting him.

*Evidence:* "Ex. A" (Stanley Depo.) at 40:18-20; "Ex. C" (Flosi Depo.) at 37:25-38:3; Clark Decl. at ¶ 13(p).

One of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or

56

immediately after the initial Taser deployment, before the shooting.
*Evidence:* Clark Decl. at ¶ 13(n).

Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade.
*Evidence:* Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15.

From the standpoint of police practices, including basic police training and POST standards, Deputy Stanley's use of deadly force was improper, inappropriate, excessive and unreasonable, including (but not limited to) for the following reasons: (1) this was not an immediate defense of life situation; (2) subjective fear is insufficient to justify a use of deadly force; (3) Mr. Randall committed no crime involving the infliction of serious injury or death, and the deputies were not responding to a serious or violent crime; (4) Deputy Stanley could not justify shooting Mr. Randall under a fleeing felon theory or for running away from the Taser; (5) Mr. Randall never verbally threatened to harm anyone; (6) Deputy Stanley had reasonable alternative measures other than shooting; (7) Deputy Stanley showed no reverence for human life when he fired at Mr. Randall; (8) Mr. Randall was experiencing a mental health crisis; (9) Deputy Stanley could not justify shooting Mr. Randall simply for having

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | a box cutter; (10) Deputy Stanley failed to give Mr. Randall a verbal warning before using deadly force; (11) police officers are trained that they must justify every shot they fire, and all seven of Deputy Stanley's shots were unjustified; (12) Deputy Stanley overreacted when he fired his weapon at Mr. Randall, and an overreaction in using deadly for ce is excessive force. **Evidence:** Clark Decl. at ¶ 15. |
| | Defendants' own expert, Ed Flosi, agrees that in a jury trial, the jury decides the facts and whether the use of force was reasonable. **Evidence:** "Ex. C." (Flosi Depo.) at 50:9-16. |
| 92. The deadly force response was appropriate and consistent with current law enforcement training standards in consideration of the "totality of the circumstances" presented to Deputy Stanley at the moments deadly force was used. **Evidence:** Flosi Decl. ¶30 | Disputed. The deputies were not responding to a serious or violent crime. **Evidence:** Clark Decl. at ¶ 10(a). When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had physically injured anyone. **Evidence:** "Ex. A" (Stanley Depo.) at 17:2-4; "Ex. B" (Cassidy Depo.) at 11:12-14; Clark Decl. at ¶ 10(b). When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had verbally threatened to harm anyone. **Evidence:** "Ex. A" (Stanley Depo.) at 17:5-7; "Ex. B" (Cassidy Depo.) at |

58

11:18-20, 14:11-13; "Ex. C" (Flosi Depo.) at 29:5-8; Clark Decl. at ¶ 10(c).

The deputies had no information that Mr. Randall had tried to attack anyone with the box cutter.

*Evidence:* "Ex. B" (Cassidy Depo.) at 11:15-17; Clark Decl. at ¶ 10(d).

Mr. Randall was not moving forward when Deputy Stanley fired his shots.

*Evidence:* "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶ 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Deputy Stanley stepped backward after he fired his first shot, creating distance between himself and Mr. Randall.

*Evidence:* "Ex. A" (Stanley Depo.) at 41:14-21; "Ex. C" (Flosi Depo.) at 37:11-15; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08

Mr. Randall fell backward when Deputy Stanley was firing his shots, creating distance between Deputy Stanley and Mr. Randall.

*Evidence:* "Ex. A" (Stanley Depo.) at 56:18-20, 66:4-10; "Ex. C" (Flosi Depo.) at 37:16-19; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

Mr. Randall did not make any slashing, swinging or stabbing motions with the box cutter prior to Deputy Stanley's shooting.

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(i), 10(l).

Mr. Randall was not attacking or attempting to attack anyone at the time of the shooting.
*Evidence:* "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. Deputy Cassidy was approximately eight to ten feet from Mr. Randall at the time of the shooting. Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when Deputy Stanley started firing his weapon.
*Evidence:* "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶¶ 10(j), 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

When Deputy Stanley fired his shots, Mr. Randall was being Tased.
*Evidence:* "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. C" (Flosi Depo.) at 37:3-10; "Ex. E" (Lethal Force Video) at 00:04 – 00:08.

At the time of the shooting, Deputy Stanley was aware that there were less-lethal options available.
*Evidence:* "Ex. A" (Stanley Depo.) at 29:23-25; Clark Decl. at ¶ 13(i).

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At the time of the shooting, Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge. **Evidence:** "Ex. A" (Stanley Depo.) at 60:6-14; Clark Decl. at ¶ 13(i).

Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time. **Evidence:** "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h).

Police standards instruct that subjective fear alone does not justify the use of deadly force. **Evidence:** Clark Decl. at ¶ 14(i).

Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. **Evidence:** "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b).

Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a

61

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.

**Evidence:** "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19.

An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

**Evidence:** "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d).

Police officers are trained to issue a verbal warning prior to using deadly force.

**Evidence:** "Ex. C" (Flosi Depo.) at 22:12-19; Clark Decl. at ¶ 14(h).

Deputy Stanley did not give Mr. Randall a verbal warning prior to shooting him.

**Evidence:** "Ex. A" (Stanley Depo.) at 40:18-20; "Ex. C" (Flosi Depo.) at 37:25-38:3; Clark Decl. at ¶ 13(p).

One of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.

**Evidence:** Clark Decl. at ¶ 13(n).

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS

Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade.

***Evidence:*** Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15.

From the standpoint of police practices, including basic police training and POST standards, Deputy Stanley's use of deadly force was improper, inappropriate, excessive and unreasonable, including (but not limited to) for the following reasons: (1) this was not an immediate defense of life situation; (2) subjective fear is insufficient to justify a use of deadly force; (3) Mr. Randall committed no crime involving the infliction of serious injury or death, and the deputies were not responding to a serious or violent crime; (4) Deputy Stanley could not justify shooting Mr. Randall under a fleeing felon theory or for running away from the Taser; (5) Mr. Randall never verbally threatened to harm anyone; (6) Deputy Stanley had reasonable alternative measures other than shooting; (7) Deputy Stanley showed no reverence for human life when he fired at Mr. Randall; (8) Mr. Randall was experiencing a mental health crisis; (9) Deputy Stanley could not justify shooting Mr. Randall simply for having a box cutter; (10) Deputy Stanley failed to give Mr. Randall a verbal warning before using deadly force; (11) police officers are trained that they must justify

| | |
|---|---|
| | every shot they fire, and all seven of Deputy Stanley's shots were unjustified; (12) Deputy Stanley overreacted when he fired his weapon at Mr. Randall, and an overreaction in using deadly force is excessive force. |
| | ***Evidence:*** Clark Decl. at ¶ 15. |

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS

Plaintiff respectfully submits his Additional Material Facts in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (Dkt. 26).

| PLAINTIFF'S UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **Background** | |
| 94. The deputies were not responding to a serious or violent crime. | Clark Decl. at ¶ 10(a). |
| 95. At the time of this incident, Deputies Stanley and Cassidy had never seen Mr. Randall before and did not know anything about him. | "Ex. B" (Cassidy Depo.) at 11:21-22. |
| 96. When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had physically injured anyone. | "Ex. A" (Stanley Depo.) at 17:2-4; "Ex. B" (Cassidy Depo.) at 11:12-14; Clark Decl. at ¶ 10(b). |
| 97. When Deputies Stanley and Cassidy responded to this incident, they had no information that Mr. Randall had verbally threatened to harm anyone. | "Ex. A" (Stanley Depo.) at 17:5-7; "Ex. B" (Cassidy Depo.) at 11:18-20, 14:11-13; "Ex. C" (Flosi Depo.) at 29:5-8; Clark Decl. at ¶ 10(c). |
| 98. The deputies had no information that Mr. Randall had tried to attack anyone with the box cutter. | "Ex. B" (Cassidy Depo.) at 11:15-17; Clark Decl. at ¶ 10(d). |

| 99. Deputy Stanley had a Taser on him at the time of this incident. | "Ex. A" (Stanley Depo.) at 14:6-7. |
|---|---|
| 100.     Deputy Stanley had OC spray on him at the time of this incident. | "Ex. A" (Stanley Depo.) at 26:1-2. |
| 101.     Deputy Stanley had a police baton on him at the time of this incident. | "Ex. A" (Stanley Depo.) at 26:3-4. |
| 102.     The deputies knew or should have known that Mr. Randall was mentally ill or having a mental health crisis. | "Ex. A" (Stanley Depo.) at 33:8-18; Clark Decl. at ¶ 10(e). |
| **Deputy Cassidy's First Taser Deployment** ||
| 103.     Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not charge at anyone. | "Ex. A" (Stanley Depo.) at 32:21-23; "Ex. B" (Cassidy Depo.) at 26:3-6; Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| 104.     Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not try to attack anyone. | "Ex. A" (Stanley Depo.) at 32:24-25; "Ex. B" (Cassidy Depo.) at 26:3-14; "Ex. C" (Flosi Depo.) at 28:25-29:4; Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| 105.     Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did not advance toward anyone. | "Ex. A" (Stanley Depo.) at 33:1-3; "Ex. B" (Cassidy Depo.) at 26:3-6 Clark Decl. at ¶ 10(f); "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| 106.     Mr. Randall was not moving toward the deputies at the time of the first Taser deployment. | "Ex. C" (Flosi Depo.) at 29:24-30:3; Clark Decl. at ¶¶ 10(f), 10(h); "Ex. D" (Initial Contact Video) at 9:50 – 10:20. |
| 107.     Mr. Randall was not within striking distance of any person when Deputy Cassidy deployed her Taser the first time. | "Ex. D" (Initial Contact Video) at 10:10 – 10:20; Clark Decl. at ¶ 10(j). |
| 108.     Deputy Cassidy was approximately 10- 15 feet from Mr. Randall when she deployed her Taser the first time. | "Ex. B" (Cassidy Depo.) at 12:24-13:7, 13:23-25. |
| 109.     Police officers are trained to issue a verbal warning prior to | "Ex. A" (Stanley Depo.) at 32:6-8; Clark Decl. at ¶ 10(k). |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| deploying a Taser against an individual, when feasible. | |
| 110.    The deputies failed to give Mr. Randall a verbal warning prior to Deputy Cassidy's first Taser deployment. | "Ex. A" (Stanley Depo.) at 32:9-10; Clark Decl. at ¶ 10(k). |
| 111.    The Taser probes struck Mr. Randall. | "Ex. A" (Stanley Depo.) at 35:7-17; "Ex. C" (Flosi Depo.) at 30:4-16; "Ex. D" (Initial Contact Video) at 10:13 – 10:20. |
| 112.    Police officers are trained that pulling the Taser probes out after being struck is one response by individuals being Tased. | "Ex. A" (Stanley Depo.) at 35:22-36:2; "Ex. B" (Cassidy Depo.) at 15:7-10. |
| 113.    Mr. Randall reacted to the Taser. | "Ex. A" (Stanley Depo.) at 48:12-14; "Ex. B" (Cassidy Depo.) at 26:22-27:1; "Ex. C" (Flosi Depo.) at 30:4-16; "Ex. D" (Initial Contact Video) at 10:13 – 10:28. |
| 114.    After the first Taser deployment, Mr. Randall ran away from the deputies. | "Ex. A" (Stanley Depo.) at 44:4-9; "Ex. B" (Cassidy Depo.) at 17:11-16; "Ex. C" (Flosi Depo.) at 34:15-23; "Ex. D" (Initial Contact Video) at 10:20 – 10:30. |
| 115.    Police officers, including Deputy Cassidy, are trained that a common response to being Tased is to run from the Taser. | "Ex. B" (Cassidy Depo.) at 15:4-6; "Ex. C" (Flosi Depo.) at 34:23-35:9; Clark Decl. at ¶ 10(e). |
| 116.    Deputy Cassidy did not give Mr. Randall any commands as he was running away. | "Ex. B" (Cassidy Depo.) at 21:2-4. |
| 117.    Deputy Cassidy has been trained that police officers cannot Tase someone for seeing a weapon in their hand, for that fact alone. | "Ex. B" (Cassidy Depo.) at 9:5-7. |
| 118.    Pursuant to basic police training, it would not have been appropriate to use deadly force against Mr. Randall prior to the | "Ex. A" (Stanley Depo.) at 34:22-35:6; "Ex. C" (Flosi Depo.) at 30:20-31:11, 34:5-13. |

| | |
|---|---|
| first Taser deployment, when Mr. Randall was 10 – 15 feet away and not advancing. | |
| **Deputy Cassidy's Second Taser Deployment** | |
| 119.　Deputy Cassidy was approximately eight to ten feet from Mr. Randall when she deployed her Taser the second time. | "Ex. A" (Stanley Depo.) at 28:3-9; Clark Decl. at ¶ 10(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 120.　One of the police reports (RANDALL/SPD-000011) indicates that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the second Taser deployment and the shooting. | Clark Decl. at ¶ 13(n). |
| 121.　The deputies failed to give Mr. Randall a verbal warning prior to Deputy Cassidy Tasing Mr. Randall the second time. | "Ex. A" (Stanley Depo.) at 43:7-9; "Ex. B" (Cassidy Depo.) at 22:6-9; "Ex. C" (Flosi Depo.) at 28:12-16; Clark Decl. at ¶ 10(k). |
| 122.　Deputy Cassidy did not give Mr. Randall any commands prior to Tasing him the second time. | "Ex. B" (Cassidy Depo.) at 22:6-9; Clark Decl. at ¶ 15(f). |
| 123.　Mr. Randall was not moving forward when Deputy Cassidy deployed her Taser the second time. | "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14, 36:6-16; 43:10-20; "Ex. D" (Video) at; Clark Decl. at ¶ 10(i); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 124.　No person was within striking distance of Mr. Randall when Deputy Cassidy deployed her Taser the second time. | "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 125.　Mr. Randall did not make any slashing, swinging or | "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ ¶ 10(i), 10(l). |

67

| | |
|---|---|
| stabbing motions with the box cutter prior to either of Deputy Cassidy's two Taser deployments. | |
| 126. Mr. Randall never lunged toward the deputies. | "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(k). |
| **Deputy Stanley's Use of Deadly Force** | |
| 127. Deputy Stanley fired within approximately one second of Mr. Randall coming into his view again after Mr. Randall ran away and rounded the corner. | "Ex. A" (Stanley Depo.) at 40:14-17. |
| 128. No person was within striking distance of Mr. Randall when Deputy Stanley fired his shots. | "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 10(j). |
| 129. After Mr. Randall came back into the deputies' view, the deputies did not give Mr. Randall any commands before the shooting. | "Ex. A" (Stanley Depo.) at 66:15-18; "Ex. B" (Cassidy Depo.) at 30:24-31:4; "Ex. C" (Flosi Depo.) at 38:4-15; Clark Decl. at ¶ 15(f). |
| 130. Police officers are trained to issue a verbal warning prior to using deadly force. | "Ex. C" (Flosi Depo.) at 22:12-19; Clark Decl. at ¶ 14(h). |
| 131. Deputy Stanley did not give Mr. Randall a verbal warning prior to shooting him. | "Ex. A" (Stanley Depo.) at 40:18-20; "Ex. C" (Flosi Depo.) at 37:25-38:3; Clark Decl. at ¶ 13(p). |
| 132. Mr. Randall was not moving forward when Deputy Stanley fired his shots. | "Ex. A" (Stanley Depo.) at 42:9-14, "Ex. B" (Cassidy Depo.) at 30:8-14; 43:10-20; Clark Decl. at ¶ 13(j); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 133. Mr. Randall was not attacking or attempting to attack anyone at the time of the shooting. | "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 134. Deputy Stanley fired seven lethal shots at Mr. Randall. | "Ex. A" (Stanley Depo.) at 13:13-21; "Ex. C" (Flosi Depo.) at 26:14-20. |

68

| | |
|---|---|
| 135.    At the time of the shooting, Deputy Stanley was aware that there were less-lethal options available. | "Ex. A" (Stanley Depo.) at 29:23-25; Clark Decl. at ¶ 13(i). |
| 136.    At the time of the shooting, Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge. | "Ex. A" (Stanley Depo.) at 60:6-14; Clark Decl. at ¶ 13(i). |
| 137.    Deputy Stanley was trained at the police academy that a Taser can be used under certain circumstances against an individual who has an edged weapon. | "Ex. A" (Stanley Depo.) at 31:7-10. |
| 138.    When Deputy Stanley fired his shots, Mr. Randall was being Tased. | "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. C" (Flosi Depo.) at 37:3-10; "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 139.    Deputy Stanley fired his shots within approximately one second of Deputy Cassidy deploying her Taser for the second time. | "Ex. A" (Stanley Depo.) at 53:2-5, 64:21-65:4; "Ex. B" (Cassidy Depo.) at 29:8-12; "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶ 13(h). |
| 140.    Mr. Randall did not make any swinging, slashing, or stabbing motions prior to Deputy Stanley firing his shots. | Clark Decl. at ¶ 13(k); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 141.    Deputy Stanley was approximately 10 – 12 feet from Mr. Randall when he started firing his weapon. | "Ex. E" (Lethal Force Video) at 00:04 – 00:08; Clark Decl. at ¶¶ 10(j), 13(l). |
| 142.    Deputy Stanley stepped backward after he fired his first shot, creating distance between himself and Mr. Randall. | "Ex. A" (Stanley Depo.) at 41:14-21; "Ex. C" (Flosi Depo.) at 37:11-15; Clark Decl. at ¶ 13(m); "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 143.    Mr. Randall fell backward when Deputy Stanley was firing his shots, creating distance | "Ex. A" (Stanley Depo.) at 56:18-20, 66:4-10; "Ex. C" (Flosi Depo.) at 37:16-19; Clark Decl. at ¶ 13(m); "Ex. |

69

| | |
|---|---|
| between Deputy Stanley and Mr. Randall. | E" (Lethal Force Video) at 00:04 – 00:08. |
| 144.    Deputy Stanley did not see the box cutter when he was looking through his sights while he was firing. | "Ex. A" (Stanley Depo.) at 58:24-59:2. |
| 145.    At the time of the shooting, there were no customers within the immediate vicinity of Mr. Randall. | "Ex. A" (Stanley Depo.) at 66:11-14; "Ex. E" (Lethal Force Video) at 00:04 – 00:08. |
| 146.    After the shooting, the deputies did not see a box cutter in Mr. Randall's hand or in his vicinity. | "Ex. A" (Stanley Depo.) at 57:7-20, 65:5-11; "Ex. B" (Cassidy Depo.) at 32:19-33:7; "Ex. C" (Flosi Depo.) at 39:3-40:2; Clark Decl. at ¶ 13(n). |
| 147.    Law enforcement later located the handle of the box cutter under a shelf after the shooting but were unable to locate a blade. | Clark Decl. at ¶ 13(n); "Ex. B" (Cassidy Depo.) at 33:3-7; "Ex. C" (Flosi Depo.) at 40:4-15. |
| 148.    Mr. Randall did not injure anyone during this incident. | Clark Decl. at ¶ 13(t). |
| 149.    Police officers are trained to consider the background or backdrop of the shooting when using deadly force. | "Ex. A" (Stanley Depo.) at 68:3-5; Clark Decl. at ¶ 15(e). |
| 150.    Two of Deputy Stanley's seven shots missed, striking items in the grocery store. | "Ex. A" (Stanley Depo.) at 68:6-23; "Ex. B" (Cassidy Depo.) at 29:19-23; Clark Decl. at ¶ 15(e); "Ex. C" (Flosi Depo.) at 27:10-14. |
| **Negligent Tactics** | |
| 151.    Deputies Cassidy and Stanley failed to discuss any tactical plan prior to contacting Mr. Randall. | "Ex. A" (Stanley Depo.) at 20:17-19; Clark Decl. at ¶ 15(a). |
| 152.    The deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability. | Clark Decl. at ¶ 13(r). |

70

| | |
|---|---|
| 153. In violation of basic police training, Deputy Cassidy escalated the situation when she Tased Mr. Randall. | Clark Decl. at ¶ 15(b). |
| 154. Deputy Stanley failed to provide Mr. Randall a reasonable opportunity to comply with Deputy Cassidy's second Taser deployment before using deadly force against Mr. Randall. | Clark Decl. at ¶ 15(g). |
| 155. A reasonable officer in the position of Deputies Stanley and Cassidy would have taken a position of cover and formulated an effective and safe tactical plan. | Clark Decl. at ¶ 15(h). |
| **Police Officer Training and Standards** | |
| 156. Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for the deputies to use force against Mr. Randall under the fleeing felon theory or for running away. | "Ex. A" (Stanley Depo.) at 39:1-5; "Ex. C" (Flosi Depo.) at 18:6-10, 35:15-25; Clark Decl. at ¶ 12. |
| 157. Police officers are trained that they cannot use deadly force against a person for having a weapon in their hand, for that fact alone. | "Ex. B" (Cassidy Depo.) at 9:8-10; "Ex. C" (Flosi Depo.) at 21:17-25, 32:25-33:8. |
| 158. Basic police training and standards instruct, and Deputy Stanley had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. | "Ex. A" (Stanley Depo.) at 67:8-16; "Ex. C" (Flosi Depo.) at 17:20-18:1; Clark Decl. at ¶ 11(b). |
| 159. Police officers, including Deputy Stanley, are trained that a threat of death or serious injury is | "Ex. A" (Stanley Depo.) at 68:24-69:8; Clark Decl. at ¶ 11(c) (citing PC |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. | 835a); "Ex. C" (Flosi Depo.) at 18:17-19:8, 19. |
| 160.    An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. | "Ex. C" (Flosi Depo.) at 20:9-25; Clark Decl. at ¶ 11(d). |
| 161.    Police standards instruct that subjective fear alone does not justify the use of deadly force. | Clark Decl. at ¶ 14(i). |
| 162.    Police officers are trained to consider whether there are other reasonable alternative measures to using deadly force. | "Ex. A" (Stanley Depo.) at 67:17-18; Clark Decl. at ¶ 14(g); "Ex. C" (Flosi Depo.) at 22:2-10. |
| 163.    Officers are trained to deescalate a situation. | "Ex. C" (Flosi Depo.) at 12:4-6; Clark Decl. at ¶¶ 14(c), 15(b). |
| 164.    Officers are trained in how to deal with people who may be suffering from a mental illness or mental health crisis. | "Ex. C" (Flosi Depo.) at 12:7-11. |
| 165.    Basic police training teaches that an overreaction in using deadly force is excessive force. | Clark Decl. at ¶ 15(l). |
| 166.    From the standpoint of police practices, including basic police training and POST standards, Deputy Stanley's use of deadly force was improper, inappropriate, excessive and unreasonable, including (but not | Clark Decl. at ¶ 15. |

72

limited to) for the following reasons: (1) this was not an immediate defense of life situation; (2) subjective fear is insufficient to justify a use of deadly force; (3) Mr. Randall committed no crime involving the infliction of serious injury or death, and the deputies were not responding to a serious or violent crime; (4) Deputy Stanley could not justify shooting Mr. Randall under a fleeing felon theory or for running away from the Taser; (5) Mr. Randall never verbally threatened to harm anyone; (6) Deputy Stanley had reasonable alternative measures other than shooting; (7) Deputy Stanley showed no reverence for human life when he fired at Mr. Randall; (8) Mr. Randall was experiencing a mental health crisis; (9) Deputy Stanley could not justify shooting Mr. Randall simply for having a box cutter; (10) Deputy Stanley failed to give Mr. Randall a verbal warning before using deadly force; (11) police officers are trained that they must justify every shot they fire, and all seven of Deputy Stanley's shots were unjustified; (12) Deputy Stanley overreacted when he fired his weapon at Mr. Randall, and an overreaction in using deadly force is excessive force.

73

1

2    DATED: March 7, 2025                    LAW OFFICES OF DALE K. GALIPO

3                                    By:  *s/ Renee V. Masongsong*

4                                         Dale K. Galipo
                                          Renee V. Masongsong
5                                         Attorneys for Plaintiff Todderick Randall

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND PLAINTIFF'S
ADDITIONAL MATERIAL FACTS