Christopher P. Wesierski [Bar No. 086736]
 cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
 mprescott@wzllp.com
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; CAMERON STANLEY and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00086-SSS-SP<br>*Assigned to*:<br>Hon. Sunshine S. Sykes<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Reply to Plaintiff's Responsive Separate Statement of Facts; and Evidentiary Objections]*<br><br>**Date: April 11, 2025**<br>**Time: 2:00 p.m.**<br>**Courtroom: 2**<br><br>Trial Date:      July 14, 2025 |

Defendants, COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY hereby submit their Reply to Plaintiffs TODDERICK RANDALL ("Plaintiff's") Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

1
4939-1885-7767.1 SBD-00026

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff opposes Defendants' dispositive motion on the grounds that: (1) the Deputy Defendants uses of force were excessive and unreasonable; (2) the Deputy Defendants are not entitled to qualified immunity; and (3) the Defendants violated the Bane Act, committed battery and were negligent in their actions. Plaintiff's Opposition fails because it mischaracterizes the incident and improperly attempts to apply 20/20 hindsight to the actions of the Deputies (which is not the standard for conduct pursuant to California and Federal law). For the reasons stated herein, Defendants respectfully request this Court grant Defendants' Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.

## II. PLAINTIFF'S EXCESSIVE FORCE CLAIMS FAIL

### A. The Uses of Force were Objectively Reasonable and Defendants Are Entitled to Qualified Immunity

Peace officers are generally entitled to qualified immunity so that they are protected from suit as well as monetary liability. *Siegert v. Gilley,* 500 U.S. 226, 233 (1991) (holding that qualified immunity "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long, drawn out lawsuit"). Qualified immunity shields police officers "from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 919 (1982). In evaluating a police officer's conduct, the court should "conduct its review through the eyes of an objective, reasonable government official." *Nicholson v. Georgia Dept. of Human Resources,* 918 F.2d 145, 147 (11th Cir. 1991). Consequently, the qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard

4939-1885-7767.1 SBD-00026

2

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

before stripping defendants of immunity." *Lassiter v. Alabama A&M Univ., Bd. Of Trustees,* 28 F.3d 1146, 1159 (11th Cir. 1994).

Qualified immunity presents a two-part inquiry. First, the court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2000). If the answer is yes, then the court must determine whether the right was clearly established at the time of the alleged violation. (*Id.*) "Plaintiffs [bear] the burden of proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct." *M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1093–94 (N.D. Cal. 2014) (internal citation omitted).

In order for the law to be "clearly established" to the point that qualified immunity would not apply, "the law must have been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place, that 'what he is doing' violates federal law." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases." *Lassiter, supra,* 28 F.3d at 1149-50. Rather, this Court must make a highly specific and fact-intensive inquiry, and apply a "careful balancing" of the intrusion against the countervailing government interest. *Glenn v. Washington County,* 673 F.3d 864, 871 (9th Cir. 2011). This Court must make a highly specific and fact-intensive inquiry, and apply a "careful balancing" of the intrusion against the countervailing government interest. *Glenn v. Washington County,* 673 F.3d 864, 871 (9th Cir. 2011).

That balancing test establishes that the Deputies conduct was objectively reasonable. Plaintiff's Opposition fails to acknowledge the amount of people in the store at the time before and during the encounter with Mr. Randall, and the Deputies' interest in protecting the public (UF 3, 4, 5, 6, 7). Indeed, the Initial Contact Video and Lethal Force Video show dozens of people in the store and in the

immediate area of Mr. Randall (as close as one aisle over). Plaintiff's Opposition also fails to acknowledge that Plaintiff was under the influence of alcohol (UF 13, 16, 17), and ignored at least nine verbal commands to drop the knife (UF 24, 29, 34, 37, 38, 40). Given Plaintiff's aggressive stance, i.e. flexing his muscles, clenching his fists and glaring at the Deputies (UF 32, 35, 39 and as shown in the videos), it was objectively responsible to believe Mr. Randall was not going to comply with the Deputies many commands and it was further objectively reasonable for Deputy Cassidy to deploy less lethal force. When the taser had no physical effect on Mr. Randall (UF 51), and when he proceeded to run away from the officers in a crowded store (UF 53, 54, 55) it was reasonable for the Deputies to pursue him on foot to effectuate his arrest. The second taser and lethal force were only deployed when Mr. Randall turned toward Deputy Cassidy and swung the knife at her in a stabbing/slashing motion, mere feet from her body (UF 59, 60). It was objectively reasonable for both Deputies to believe Mr. Randall could seriously injure or kill Deputy Cassidy, Deputy Stanley or any of the nearby customers. The acts of the Deputy Defendants was objectively reasonable.

### B. Defendants are Entitled to Qualified Immunity Even if Disputed Facts Exist

Contrary to Plaintiff's argument, the existence of disputed facts, including disputed facts about the distance between Mr. Randall and the Deputies, does not negate the qualified immunity defense on summary judgment. Rather, "[t]he issue of whether qualified immunity exists is ultimately one of law for the trial court." *Wood v. Emmerson,* 155 Cal.App.4th 1506, 1515 (2007). "[T]he trial court, and this court on appeal, must decide this issue on summary judgment where qualified immunity is at issue." *White v. Pierce County,* 797 F.2d 812, 816 (9th Cir. 1986).

In *Saucier v. Katz,* 533 U.S. 194 (2002), the Supreme Court ruled that qualified immunity should have been granted on summary judgment in an excessive force case, even though the trial court had determined that "a dispute on a material

4
4939-1885-7767.1 SBD-00026

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

fact existed concerning whether excessive force was used." *Saucier, supra,* 533 U.S. at 198. There, as here, the plaintiff-respondent and the defendant-petitioner disagreed as to how their encounter unfurled, with conflicting evidence presented by both parties.

Notwithstanding this disputed evidence, the *Saucier* court reversed the denial of qualified immunity by the lower court, based on the following reasoning:

> The approach the Court of Appeals adopted—to deny summary judgment any time a material issue of fact remains on the excessive force claim—could undermine the goal of qualified immunity to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.
> *Ibid.*

A similar holding was reached by the court in *Martinez v. County of L.A.,* 47 Cal.App.4th 334, 343 (1996). In that wrongful death/excessive force case, plaintiffs sought to defeat summary judgment based on qualified immunity by raising several triable issues of material fact. There, officers were responding to a call that a person high on drugs was brandishing a knife. *Id.* at 340. They encountered the suspect, Martinez, and repeatedly told him to drop the knife. Like the Decedent in this case, Martinez refused. He "kept walking toward the deputies, holding the knife in a variety of positions ranging from waist high with the blade pointed skyward to by his head above his shoulders." *Ibid.*

Again like the Mr. Randall in this case, Martinez refused to comply with the officers commands. *Id.* at 340. When Martinez came within 10-15 feet of the officers and some juveniles they had detained, and had refused to drop the knife after 14 instructions to do so, the officers fired. *Ibid.* Martinez later died from his injuries.

In opposing summary judgment, plaintiffs presented evidence of disputed

facts, including eyewitness testimony that stated the knife was not held out at the deputies in "attack" mode, and Martinez presented no threat to them. *Martinez, supra,* 47 Cal.App.4th at 343. The court found that such disputed facts did not preclude summary judgment because qualified immunity and excessive force are analyzed under an objective reasonableness" standard. The *Martinez* court emphasized that "[t]he United States Supreme Court's definition of reasonableness has . . . been comparatively generous to the police in cases where potential danger, emergency conditions or other exigent circumstances are present. [Citation]." *Id.* at 343-44. It therefore granted summary judgment in favor of the officers.

The same analysis leads to the same conclusion here. This Court may make a determination that Defendants are entitled to qualified immunity and grant summary judgment, because the Defendants' conduct was objectively reasonable in view of the exigent circumstances presented. Based on those facts which are undisputed, and even resolving those facts which Plaintiffs dispute in Plaintiffs' favor, the court could, and should, resolve the qualified immunity issue in favor of the Defendants.

### C.     The Deputies Actions Do Not Shock the Conscience.

As discussed above, the actions of the deputies were "objectively reasonable" for the purposes of determining a constitutional violation as to the rights of Plaintiff. As discussed, the Deputies had a legitimate law enforcement purpose to arrest and detain Mr. Randall (UF 19), and it was Mr. Randall's actions that forced the Deputies to make a snap decision. The Deputies did not act with the "purpose to harm"—they acted only in a manner to protect themselves and other customers of the grocery store. Mr. Randall's claims therefore fail as a matter of law.

### D.     The Cases Cited by Plaintiff are Distinguishable

Plaintiff relies upon *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018, and *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), among other authorities. Each case is distinguishable.  In *Vos v. City of Newport Beach*, Plaintiff (Vos) was inside a 7-Eleven convenience store running around the store with a pair

4939-1885-7767.1 SBD-00026

6

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

of scissors and shouting things like, "kill me already, dog" and "I've got a hostage!" When officers responded (8 of them), they were informed Vos was agitated and likely under the influence of narcotics. The Officers positioned two police cars outside the store's entrance, using the vehicles' doors for cover. They propped open the convenience store doors, and set up a public address system to communicate with Vos. There was also a canine unit on scene. Two officers then opened the front door, and shouted "doors opening." At that moment, Vos ran towards the open doors with an object over his head in his hand. Over the PA system, the Officers twice commanded Vos to "drop the weapon." Vos did not drop the weapon, continued to charge at the officers, and was shot by officers. The distance between the Officers and Vos at the time he began running was 30 feet. Twenty minutes passed between the time the Officers arrived and Vos began running at them—they did not attempt to communicate with him during that time frame. *Vos* at 1029-1030. In finding that the Officers use of deadly force was unreasonable the Court noted several factors, including: (1) that the officers had upwards of 15 minutes to create a perimeter, assemble less-lethal means, coordinate a plan for their use of force, establish cover, and, try to communicate with Vos; (2) the indications of Vos' mental illness, including his acting out/shouting and inviting officers to use deadly force on him; and (3) that Vos was within 20 feet of the officers when he was shot, a distance within the range of the 40-millimeter less-lethal weapon, a taser, or a canine; (4) the amount of officers present. *Id.* at 1029-1032.

The facts here are dissimilar. The entire encounter with Mr. Randall lasted approximately ***one (1) minute or less***. See Initial Contact Video; Lethal Force Video. Unlike *Vos*, there was no time to create a perimeter, assemble less-lethal means, coordinate a plan for use of force, or establish cover. Additionally, Mr. Randall did not display symptoms of mental illness—the Deputies believed him to be under the influence of alcohol based upon his gait/stumbles (UF 13, 16). Here, two Deputies were present, not 8. And critically, Mr. Randall, at all times force was

used, was within 10 feet of the Deputies. The facts here warrant the force used.

*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) is also distinguishable. Plaintiff emphases that in *Glenn*, in denying summary judgment as to the uses of non-deadly and deadly force, the Court considered that, "although Glenn had a pocketknife, he was emotionally disturbed, he was not in a physical altercation with anyone, there were no civilians in the immediate area, he did not move until after he was pelted with the beanbags, he did not attack deputies, he did not threaten to attack anyone and he took no threating actions other than noncompliance with orders." Id. at 874-880. Again, the facts here are distinguishable. Mr. Randall showed only signs he was intoxicated, not that he was emotionally disturbed (UF 13, 16). There are numerous customers in the immediate area of Mr. Randall. See Initial Contact Video, Lethal Force Video. Mr. Randall took numerous threating actions, including flexing his muscles, clenching his fists and glaring at the Deputies (UF 28 - 42).

In sum, the Deputy Defendants acted in an objectively reasonable manner when using non-deadly force and deadly force in light of these circumstances and a reasonably competent official would have concluded that the actions taken were lawful. The Deputy Defendants are entitled to qualified immunity.

## III. CONCLUSION

Defendants respectfully request this Court grant Defendants' Motion for Summary Judgment, or in the alternative Partial Summary Judgment.

DATED: March 14, 2025          WESIERSKI & ZUREK LLP

By: _/s/ Christopher P. Wesierski_
CHRISTOPHER P. WESIERSKI
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000