UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00086-SSS-SPx | Date | May 15, 2025 |
| Title | *Todderick Randall v. County of San Bernardino et al.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 26]**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants County of San Bernardino, and Sheriff's Deputies Corrin Cassidy and Cameron Stanley (collectively, the "Defendants"). [Dkt. 26, Motion]. Defendants request this Court grant summary judgment on Plaintiff's Fourth Amendment excessive force claims and related state claims. [*Id.*]. Plaintiff Todderick Randall opposes the Motion. [Dkt. 32, Opp.]. Defendants have replied and this matter is ripe for review. [Dkt. 35, Reply]. Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS, IN PART, AND DENIES, IN PART,** Defendants' Motion. [Dkt. 26].

## I.    BACKGROUND

This case arises out of the tasing and shooting of Plaintiff Randall by Defendant Deputies Cassidy and Stanley ("Deputies"). On August 19, 2022, Randall entered a grocery store, took a bottle of alcohol from the shelf, and began drinking it. [Dkt. 36, Defendants' Reply to Plaintiff's Responsive Separate Statement of Facts ("SOF") ¶¶ 1, 2, 11]. Randall held a box-cutter with a one-inch

blade. [*Id.* ¶¶ 2, 15]. The grocery store's security camera shows Randall walking up and down the alcohol aisle while drinking from the bottle for approximately ten minutes. [Opp., Ex. D, Initial Contact Video ("Video 1")]. One customer walked past him twice to buy beer, while another customer retreated from the aisle to avoid him. [*Id.*]. Randall did not acknowledge or bother either customer and did not appear aggressive or violent. [*Id.*].

Deputies, in response to a service call from a grocery store employee, arrived at the scene. [SOF ¶ 1]. The employee appeared frightened to the Deputies. [*Id.* ¶ 8]. The Deputies approached Randall. [Video 1]. The Deputies believed Randall to be intoxicated. [SOF ¶ 17]. There were no other customers in the aisle. [*Id.* ¶ 22]. From here, the following events happened in the span of a minute. [*See* Video 1; Opp., Ex. E, Lethal Force Encounter Video ("Video 2")].

The Deputies asked Randall to toss the box-cutter away four to five times, but Randall did not respond or comply. [*Id.* ¶¶ 23–25, 29–30, 34–35]. Cassidy unholstered her taser aiming both lasers at Randall's chest as the Deputies ordered Randall to discard the box-cutter, but again he did not respond or comply. [*Id.* ¶¶ 36–41]. Randall did not make any movement toward the Deputies. [*See id.* ¶ 42; Video 1]. Defendants assert Randall took an "aggressive[] 'bladed'" stance, flexing both of his arms and "appear[ing] as if he wanted to fight," but Randall disputes this characterization. [*Id.* ¶¶ 26, 28]. The security footage does not indicate Randall was standing in a particularly aggressive way. [Video 1]. Cassidy deployed her taser against Randall, striking him in the chest. [SOF ¶¶ 43–45]. The Deputies repeatedly ordered Randall to get on the ground, but he did not comply. [*Id.* ¶ 48–50]. Randall removed the taser prongs and, moving away from the Deputies, started to leave the alcohol aisle. [*Id.* ¶¶ 48–54]. The Deputies followed. [*Id.* ¶ 54].

After rounding the corner of the aisle, it is undisputed Randall stopped running and turned to face the Deputies. [*Id.* ¶¶ 57–59]. Defendants assert Randall slashed at them with the box-cutter, however Randall disputes this occurred. [*Id.* ¶ 60]. The video footage is inconclusive. [Video 1]. Cassidy deployed her taser for a second time. [SOF ¶ 62]. Simultaneously, Stanley fired seven lethal pistol rounds. [*Id.* ¶¶ 70, 72, 134]. Randall was struck by both the taser and the firearm and fell to the ground. [*Id.* ¶ 73]. After the shooting, the Deputies did not see a box-cutter in Randall's hand or his vicinity. [*Id.* ¶ 146].

Randall brought an action against Defendants for excessive force, denial of medical care, and municipal liability in violation of the U.S. Constitution under §

1983, as well as related California state claims for battery, negligence, and violation of the Bane Act. [Dkt. 1]. Defendants now move for summary judgment on Randall's excessive force and related state claims. [Dkt. 26]. The Court discusses additional relevant facts below.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a). A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A court need not consider irrelevant and unnecessary factual disputes. *Id*. A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do so, the moving party must present evidence that either negates an essential element of the non-movant's case or demonstrates the non-movant does not have evidence sufficient to support its case. *Id*. If the movant has met its burden, the non-movant must set forth specific facts showing there is a genuine issue for a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In deciding a summary judgment motion, a court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## III.   EVIDENTIARY OBJECTIONS

As an initial matter, the Court addresses parties' evidentiary objections. Both Randall and Defendants object to opposing party's statements in the Statement of Facts as vague, compound, argumentative, ambiguous, irrelevant, speculative, lacking foundation, lacking personal knowledge, and calling for a legal conclusion. [Dkts. 32-2, 37]. However, "[w]hile these objections may be cognizable at trial, on a motion for summary judgment, the Court is concerned only with the *admissibility* of relevant *facts* at trial, and not the form of these facts as presented in the [m]otion." *Ramirez v. Victoria's Secret Stores, LLC*, No. CV 18-7519-MWF (ASx), 2019 WL 6998784, at *2 (C.D. Cal. July 18, 2019) (overruling defendant's evidentiary objections based on relevance, lack of foundation, lack of personal knowledge, and speculation) (emphasis in original). Thus, these objections are **OVERRULED**.

Randall additionally seeks to exclude two assertions by a grocery store employee as hearsay.  [Dkt. 32-2 ¶¶ 9, 10].  The first statement is Stanley's recounting of the employee saying "that's the guy with the knife," while pointing to Randall.  [*Id.* ¶ 10].  Second, Stanley and Cassidy state the employee "confirmed that he wanted Mr. Randall to leave the store." [Dkt. 28 ¶ 9; Dkt. 29 ¶ 10].  In the context of this Motion, the Court cannot determine whether Defendants seek to introduce these out-of-court statements to prove the truth of the matter asserted.  However, it is immaterial because the Court does not rely on either assertion in its decision.  Thus, at this time, the objection is **OVERRULED**.

## IV.    DISCUSSION

Defendants move for summary judgment on Randall's federal excessive force claim, and state claims of battery, negligence, and violation of the Bane Act.  Defendants also raise the defense of qualified immunity on behalf of Deputies Stanley and Cassidy as to Randall's federal constitutional claim.

### A.    Excessive Force

Under the Fourth Amendment, the degree of force used to effectuate a seizure or arrest must be "objectively reasonable" under the circumstances.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Courts in the Ninth Circuit assess reasonableness by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).  Reasonableness "must be judged from the perspective of a reasonable officer on scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  Further, "whether a particular use of force was reasonable is rarely determinable as a matter of law," and is often left for the jury. *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994); *see also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc); *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011) (summary judgment "in excessive force cases should be granted sparingly").

The Court must first determine the nature and quality of the intrusion by considering "the type and amount of force inflicted." *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001) (internal quotation marks omitted).  The Court will next evaluate the government's interests in using force.  The Court may consider any number of non-exclusive factors. *Lowry v. City of San Diego*, 858 F.3d 1248, 1257 (9th Cir. 2017).  Some relevant factors include: (1) the severity of the crimes

at issue, (2) whether Randall posed an immediate threat to the officers or others' safety, (3) whether Randall was actively resisting or attempted to evade arrest by flight, (4) whether warnings were given, and (5) the availability of less intrusive alternatives of force. *See Graham*, 490 U.S. at 396; *Felarca*, 891 F.3d at 817. The second factor is the most important of the five. *Felarca*, 891 F.3d at 817. Lastly, the Court will balance the nature of the intrusion against government interests. *Graham*, 490 U.S. at 396.

Plaintiff claims two separate intrusions constituted excessive force: (1) Cassidy's use of two less-than-lethal taser charges and (2) Stanley's use of lethal rounds from his service firearm.

### 1. Tasing

Taser deployment is an intermediate intrusion into Randall's Fourth Amendment rights. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (holding use of tasers constitutes an "intermediate or medium, though not insignificant, quantum of force").

Resolving all genuine disputes of material fact in Randall's favor, there was minimal governmental interest in deploying tasers. First, it is heavily disputed Randall posed any danger to the Deputies. Defendants state Cassidy's initial tasing was justified because Randall appeared aggressive, took a "bladed stance," flexed his muscles, and balled his fists near his waistband. [SOF ¶¶ 27–28, 31–33]. Randall challenges this characterization, and when viewing the evidence in a light most favorable to Randall, the video does not depict any indication of aggression or violence. [*Id*. ¶¶ 27–28, 31–33; Video 1]. Additionally, the surveillance video shows Randall did not move towards the Deputies before the first taser deployment. [Video 1].

Defendants contend Cassidy deployed her taser a second time because Randall swung the box-cutter downward towards Cassidy "in a slashing manner." [SOF ¶ 60]. However, Randall disputes this as well. [*Id*.]. Randall states Cassidy never mentioned any slashing with the box-cutter in her first interview and deposition, a point Defendants do not deny. [*Id*. ¶ 62]. In fact, a box-cutter was not recovered in Randall's hand or vicinity after the shooting. [*Id*. ¶ 146]. Moreover, Stanley estimated there was eight to ten feet between Randall and Cassidy when the taser was deployed, so Cassidy was not in striking distance. [Dkt. 32-5 at 18]. Lastly, the surveillance footage is inconclusive, showing the Deputies shooting at Randall just as he spins around to face them. [Video 1].

Further, there are no undisputed facts that Randall directly harmed or attempted to harm any customer before either taser deployment. The surveillance footage shows multiple people walking close to Randall and his seeming disinterest. [Video 1]. When Cassidy deployed her taser the first time, there was no one in the aisle besides Randall and the Deputies. [*Id*.]. Defendants argue Randall was fleeing with a weapon towards members of the public when Cassidy deployed her taser a second time. [SOF ¶ 53]. However, Randall contends he was running from the taser, a natural reaction which the Deputies are trained to deal with and de-escalate. [*Id*.]. It is also undisputed Randall stopped running and turned around to face the Deputies prior to the second tasing. [*Id*. ¶¶ 57–59]. In all, viewing the evidence most favorably to the non-movant, Randall did not pose an immediate threat to the officers' or others' safety, the most important factor.

Additionally, the other factors do not strengthen the government's interest in using force. First, the crimes at issue were not severe. The Deputies cite probable cause concerning (1) trespass, (2) public intoxication, and (3) brandishing a weapon. [*Id*. ¶ 19]. Crimes of trespass and intoxication are not particularly grave crimes, and the factual disputes regarding Randall's "slashing" of the box-cutter weaken the import of this factor. Second, as stated, it is disputed whether Randall was evading arrest or running from the first taser deployment, and it is undisputed Randall stopped running prior to the second tasing. Third, it is undisputed the Deputies did not issue a warning prior to either taser deployment (or shooting). [*Id*. ¶¶ 110, 121]. Lastly, Randall indicates Stanley had OC spray on him at the time, so an alternative, less-intrusive measure was available. [*Id*. ¶ 100].

Thus, a reasonable jury could conclude Defendants' minimal governmental interest in force does not justify the use of intermediate force here.

### 2.    Shooting

Use of a firearm is deadly force which is the highest possible intrusion into Randall's Fourth Amendment rights. *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Deadly force is an intrusion of the maximum extent, "[t]he intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). Defendants posit the same facts justified Stanley's seven lethal rounds as justified Cassidy's second taser deployment. [Motion at 16–18]. Because a reasonable jury could find Cassidy's use of intermediate force was unreasonable, it

then follows a reasonable jury could find Stanley's use of deadly force even less reasonable.

## B.    Qualified Immunity

Even so, the Deputies may still be immune from liability under the doctrine of qualified immunity.  To determine if qualified immunity protects the officer conduct in question, the Court must engage in a two-step inquiry.  First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Scott v. Harris*, 550 U.S. 372, 377 (2007).  Second, the Court must ask whether the rights alleged to be violated are "clearly established."  *Id*.  Because the Court already determined the first step, the Court will proceed to the second.

A right is clearly established if "the statutory or constitutional question [is] beyond debate," although there need not be a case directly on point.  *Ashcroft v. al-Kid*d, 563 U.S. 731, 741 (2011).  If a "right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating" that right, it is clearly established.  *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).  Particularly in the Fourth Amendment context, a right must be defined with "specificity" such that cases "provide an officer notice that a specific use of force is unlawful."  *Kisela v. Hughes*, 584 U.S. 100, 104–05 (2018).

### 1.    Shooting

It is clearly established Stanley's seven lethal rounds violated Randall's right to be free from excessive force.  Resolving all genuine factual disputes in Randall's favor, Stanley applied deadly force seven times to a non-violent intoxicated man when less-lethal force was available, and no warnings were given.  [SOF ¶¶ 17, 26–28, 67, 91, 100].  While Randall ran away from Deputies after being tased, it is undisputed he stopped and faced the Deputies prior to the shooting.  [*Id*. ¶¶ 57–59].  The only weapon he possessed was a box-cutter with a one-inch blade, and the nearest Deputy was eight to ten feet from him, with no customers in his vicinity.  [*Id*. ¶¶ 2, 15, 60; Video 1; Video 2].  Though Randall did not comply with orders to drop the box-cutter, he also made no movement towards the Deputies, exhibited no signs of aggression, and was clearly inebriated.  [*Id*. ¶¶ 17, 23–25, 29–30, 34–35; Video 1].

The facts here are substantially similar to *Glenn v. Washington County* such that Stanley was on notice his conduct was unconstitutional.  673 F.3d 864 (9th

Cir. 2011). In *Glenn*, the Ninth Circuit found lethal force without warning against an intoxicated individual with a pocketknife who did not comply with orders to drop the weapon and ran from officers' use of beanbag rounds towards bystanders yards away was excessive. *Id.* at 873–78. The same facts apply here.

The Ninth Circuit has also held lethal force against individuals in similar situations but displaying actual violent conduct to be unreasonable. In *Vos v. City of Newport Beach*, the Ninth Circuit reversed the district court's grant of summary judgment on plaintiff's excessive force claim where an erratic suspect in a 7-Eleven cut someone with scissors, did not comply with officers' orders to drop the weapon, and "charged at officers with something in his upraised hand." 892 F.3d 1024, 1029, 1034–35 (9th Cir. 2018). Far from charging at the Deputies, Randall exhibited no aggressive or violent behavior. [*See* Video 1]. Even assuming Defendants' version of events, the most Randall did was flex his arms. [*See* SOF ¶ 26]. If the lethal force against the individual in *Vos* was excessive, then Stanley was on notice seven lethal rounds against Randall would be excessive as well.

Further, the Ninth Circuit has consistently held lethal force against individuals more dangerous than Randall to be excessive. *See Hughes v. Kisela*, 862 F.3d 775 (9th Cir. 2016), *as amended* (June 27, 2017), *rev'd on other grounds*, 584 U.S. 100 (2018) (reversed on ground that constitutional right was not clearly established in 2010) (holding shooting a woman who behaved erratically, refused to drop a large kitchen knife, and moved towards another person was excessive force); *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017) (holding shooting an intoxicated and aggressive individual who grabbed a knife without warning and when a non-lethal Taser gun was available was excessive force).

Thus, when resolving all genuine factual disputes in Randall's favor, it is clearly established Stanley's use of lethal force against Randall was excessive and unreasonable, and Stanley is not entitled to qualified immunity. Defendants' Motion is **DENIED** as to Randall's federal constitutional claim against Stanley for the seven rounds from his firearm.

### 2.    Tasing

Here, Randall has not met his burden in showing the rights allegedly violated were clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) ("Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'").

Randall cites to three cases implicating excessive use of non-lethal force, only two of which involve tasers, and none of which are sufficient to put Cassidy on notice of her allegedly unconstitutional actions. [Opp. at 20–22]. In *Bryan v. MacPherson,* the Ninth Circuit held it was excessive to deploy a taser against an unarmed individual during a traffic stop for a seatbelt infraction who complied with most officer commands. 630 F.3d 805, 821, 826 (9th Cir. 2010). Here, Randall held a box-cutter in a grocery store and did not comply with the Deputies' orders to drop it.

Similarly unavailing is Randall's invocation of *Deorle* where officers tased an unarmed and distraught individual who complied with police orders while walking on his own property. 272 F.3d at 1282–83. Again, Randall held a box-cutter and was non-compliant. Randall also cites to *Glenn*, albeit presenting a factually analogous situation, but there, the officers used a "beanbag shotgun," a "less-lethal weapon" that still has the potential to kill or seriously harm an individual. 673 F.3d at 871–72. Here, Cassidy deployed a taser, the alternative to the beanbag and firearm the Ninth Circuit championed in *Glenn*. *Id*. at 877–78. Thus, none of the cases Randall cites are sufficient to demonstrate a clearly established right.

Randall additionally asks the Court to deny qualified immunity based on the outstanding disputed issues of material fact. [Opp. at 18–19]. However, even resolving the facts in Randall's favor, Randall has not demonstrated Cassidy was on notice that tasing a non-violent, non-compliant, intoxicated man with a box-cutter in a public space was unconstitutional. And while Randall asserts Deputies violated police training, [Opp. at 23], Randall only provides evidence Stanley violated Peace Officer Standards and Training guidelines. [*See* SOF ¶¶ 91, 92, 166]. Because Randall has not met his burden, the Court must grant Cassidy qualified immunity. Therefore, Defendants' Motion is **GRANTED** as to Randall's excessive force claim against Cassidy.

## C.    Battery and Negligence

California state law battery claims are a "counterpart to a federal claim of excessive use of force." *See Brown v. Ransweiler*, 171 Cal. App. 4th 516, 533 (2009). Like a federal excessive force claim, Randall must show the "unreasonableness of the force used." *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998). Similarly, under California negligence law, Randall must show the Deputies breached their duty of care to act reasonably. *Hayes v. County of San Diego*, 305 P.3d 252, 256 (2013). The Court has already declined to grant

Defendants' summary judgment on the issue of excessive force as to both the tasing and shooting, and thus will decline to do so here.  The Motion is **DENIED**.

### D.    Bane Act

To prevail on a Bane Act claim, Plaintiffs must prove (1) that a person interfered with or attempted to interfere with his rights under federal or state law (2) through the use of threat, intimidation, or coercion.  *Inman v. Anderson*, 294 F. Supp. 3d 907, 923 (N.D. Cal. 2018); Cal. Civ. Code § 52.1(a).

Defendants only argument for summary judgment on this claim is that Randall does not have a constitutional right to not cooperate with law enforcement's lawful arrest.  [Motion at 22–23].   However, this misunderstands Randall's claim; he alleges Defendants interfered with his right to be free from excessive force.  [Opp. at  24].  Because the Court has already found disputed material facts preclude a finding of reasonable force, the Court **DENIES** Defendants' Motion as to Randall's Bane Act claim.

## V.    CONCLUSION

Accordingly, Defendants' Motion is **GRANTED, IN PART,** and **DENIED, IN PART**.  [Dkt. 26].  Defendants' Motion is:

- **GRANTED** as to Randall's First Claim for Excessive Force only as to Deputy Cassidy due to qualified immunity; and
- **DENIED** as to Randall's First Claim for Excessive Force as to Deputy Stanley, Sixth Claim for Battery, Seventh Claim for Negligence, and Eighth Claim for Violation of the Bane Act.

**IT IS SO ORDERED.**