Christopher P. Wesierski [Bar No. 086736]
 *cwesierski@wzllp.com*
Kristen R. Rodriguez [Bar No. 289668]
 *krodriguez@wzllp.com*
WESIERSKI & ZUREK LLP
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

Attorneys for Defendants, COUNTY OF
SAN BERNARDINO, CORRIN
CASSIDY, and CAMERON STANLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>                Plaintiff,<br><br>     vs.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; CAMERON STANLEY and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. 5:24-cv-00086-SSS-SP<br>*Assigned to*:<br>Hon. Sunshine S. Sykes<br><br>**DECLARATION OF KRISTEN R. RODRIGUEZ IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT ROGER CLARK REGARDING THE MENTAL HEALTH OF PLAINTIFF BASED ON THE CLAIM PLAINTIFF WAS MENTALLY ILL OR EXPERIENCING A MENTAL HEALTH CRISIS**<br><br>Date:    June 20, 2025<br>Time:    2:00 p.m.<br>Crtrm.: 2<br><br>Trial Date: July 14, 2025<br>FPTC: June 27, 2025 |

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

1

## <u>DECLARATION OF KRISTEN R. RODRIGUEZ</u>

I, Kristen R. Rodriguez, declare as follows:

1.     I am an attorney licensed to practice before all court of the State of California and am a Partner at Wesierski & Zurek LLP, counsel of record for Defendants COUNTY OF SAN BERNARDINO, CORRIN CASSIDY, and CAMERON STANLEY ("Defendants"), Parties in the above-entitled action.

2.     I have personal knowledge of the facts set forth herein, except as to those stated on information and belief, and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

3.     Pursuant to Local Rule 7-3, prior to filing this motion, the Parties met and conferred on May 9, 2025 via Zoom at 11:30 a.m. The zoom meeting lasted 15 minutes and the Parities discussed the potential motions in limine each may file, including this motion to exclude opinions of Plaintiff's expert, Roger Clark.

4.     In attendance were counsel for Plaintiff, Renee Masongsong, and myself, as counsel for Defendants.

5.     Following the Zoom meeting, the Parties' exchanged numerous emails in an attempt to try to stipulate to issues and avoid unnecessary motion practice.

6.     Ultimately, the Parties were able to stipulate to a few issues, including the stipulation that no party shall attempt to introduce evidence regarding any prosecutorial decision/declination to criminally prosecute any deputy based on that deputy's actions/conduct during the subject incident. No party shall attempt to introduce evidence regarding any findings by any law enforcement agency that any deputy's actions/conduct during the subject were within, or in violation of, San Bernardino Sheriff's Department policy.

7.     In his Complaint, Plaintiff alleges and presents the legal theory that he was suffering from mental illness and/or experiencing a mental health crisis. Plaintiff alleges that a reasonable sheriff's deputy in the position of the Defendant Deputies

WESIERSKI & ZUREK LLP

LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

2

1   would have recognized that Plaintiff may be mentally ill or experiencing a mental

2   health crises and responded differently. A true and correct copy of Plaintiff's

3   Complaint is attached hereto as **Exhibit A**.

4          8.     Plaintiff's expert, Roger Clark, proffered opinions related to Plaintiff's

5   mental health and whether Plaintiff was experiencing a mental health crisis in three

6   different settings: (1) Mr. Clark's Rule 26 Report; (2) Mr. Clark's deposition

7   testimony; and (3) Mr. Clark's Declaration filed in opposition to Defendants' Motion

8   for Summary Judgment.

9          9.     A true and correct copy of Roger Clark's Rule 26 Expert Report is

10  attached hereto as **Exhibit B**.

11        10.    A true and correct copy of portions of Roger Clark's Deposition

12  Transcript is attached hereto as **Exhibit C**.

13        11.    A true and correct copy of Roger Clark's Declaration filed in support of

14  Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or in the

15  alternative, Partial Judgment is attached hereto as **Exhibit D**.

16        I declare under penalty of perjury under the laws of the State of California that

17  the foregoing is true and correct.

18

19        Executed on this 16th day of May, 2025, at Lake Forest, California.

20

21

22                             KRISTEN R. RODRIGUEZ

23

24

25

26

27

28

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

3

DECLARATION OF KRISTEN R. RODRIGUEZ IN SUPPORT OF
DEFENDANTS' MOTION IN LIMINE NO. 3

# EXHIBIT "A"

Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (Bar No. 281819)
rvalentine@galipolaw.com
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Sharon J. Brunner, Esq. (Bar No. 229931)
sharonjbrunner@yahoo.com
LAW OFFICE OF SHARON J. BRUNNER
14393 Park Ave., Suite 100
Victorville, CA 92392
Tel: (760) 243-9997 / Fax: (760) 843-8155

James S. Terrell, Esq. (Bar No. 170409)
LAW OFFICE OF JAMES TERRELL
jim@talktoterrell.com
15411 Anacapa Rd.
Victorville, CA 92392
Tel: (760) 951-5850 / Fax: (760) 952-1085

Attorneys for Plaintiff, Todderick Randall

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; CAMERON STANLEY and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00086<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)<br>3. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>4. Municipal Liability—Ratification (42 U.S.C. § 1983)<br>5. Municipal Liability—Failure to Train (42 U.S.C. § 1983)<br>6. Battery<br>7. Negligence<br>8. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff TODDERICK RANDALL, for his Complaint against Defendants CORRIN CASSIDY, CAMERON STANLEY, the COUNTY OF SAN BERNARDINO and Does 1-10, inclusive, and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

3.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the officer-involved shooting of Plaintiff TODDERICK RANDALL on August 19, 2022.

## PARTIES

4.     At all relevant times, Plaintiff TODDERICK RANDALL ("Plaintiff" or "RANDALL") was an individual residing in the County of San Bernardino, California.  Plaintiff seeks compensatory and punitive damages under federal and state law.

5.     At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department ("SBCSD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the SBCSD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of Defendants STANLEY, CASSIDY and DOES 1-10.

6.     Defendant CAMERON STANLEY ("STANLEY") is a sheriff's deputy working for the SBCSD. At all relevant times, STANLEY was acting under color of law within the course and scope of his duties as sheriff's deputy for the SBCSD. STANLEY was acting with the complete authority and ratification of his principal, Defendant COUNTY, at all relevant times. STANLEY fired lethal shots against the Plaintiff in this case.

7.     Defendant CORRIN CASSIDY ("CASSIDY") is a sheriff's deputy working for the SBCSD. At all relevant times, CASSIDY was acting under color of law within the course and scope of her duties as sheriff's deputy for the SBCSD. CASSIDY was acting with the complete authority and ratification of his principal, Defendant COUNTY, at all relevant times. CASSIDY deployed a Taser against Plaintiff, which Plaintiff alleges was an excessive and unreasonable use of force. Plaintiff also alleges that CASSIDY integrally participated or failed to intervene in the shooting, and that CASSIDY had a responsibility and realistic opportunity to intervene.

8.     Defendants DOES 1-6 ("DOE DEPUTIES") are sheriff's deputies working for the SBCSD. At all relevant times, DOE DEPUTIES were acting under

color of law within the course and scope of their duties as sheriff's deputies for the SBCSD. At all relevant times, DOE DEPUTIES were acting with the complete authority and ratification of their principal, Defendant COUNTY.

9. Defendants DOES 7-10 are managerial, supervisorial, and policymaking employees of the COUNTY/SBCSD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the COUNTY/SBCSD. DOES 7-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

10. On information and belief, STANLEY, CASSIDY and DOES 1-10 were residents of the COUNTY.

11. In doing the acts and failing and omitting to act as hereinafter described, Defendants STANLEY, CASSIDY and DOE DEPUTIES were acting on the implied and actual permission and consent of Defendants DOES 7-10 and the COUNTY.

12. In doing the acts and failing and omitting to act as hereinafter described, Defendants STANLEY, CASSIDY and DOES 1-10 were acting on the implied and actual permission and consent of the COUNTY.

13. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sue these Defendants by such fictitious names. Plaintiff will seek leave to amend his complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

14. At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

15. All of the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents,

-4-
COMPLAINT FOR DAMAGES

servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

16. STANLEY, CASSIDY and DOES 1-10 are sued in their individual capacity.

17. On February 22, 2023, Plaintiff filed a comprehensive and timely claim for damages with the COUNTY pursuant to applicable sections of the California Government Code. The claim was rejected on July 18, 2023.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

18. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 17 of his Complaint with the same force and effect as if fully set forth herein.

19. On August 19, 2022, at approximately 12:00 p.m. on that date, CASSIDY and STANLEY responded to a call reporting that a person, later identified as RANDALL, was carrying a knife inside the WinCo grocery store located at 15350 Roy Rodgers Drive, in Victorville, California. Prior to CASSIDY and STANLEY responding, there were no reports that RANDALL had injured or attempted to injure anyone, threatened anyone with the knife, or committed any crime. A reasonable sheriff's deputy in the positions of CASSIDY and STANLEY would have recognized that RANDALL may be mentally ill or experiencing a mental crisis. RANDALL ran away from CASSIDY and STANLEY, around the corner of an aisle. CASSIDY and STANLEY approached RANDALL. CASSIDY deployed a Taser at RANDALL, and RANDALL ran away from the deputies. RANDALL turned the corner of an aisle and stopped running. At that time, STANELY fired seven rounds from his handgun at RANDALL. Simultaneous with the shots, CASSIDY deployed a Taser a second time. RANDALL was struck multiple times by gunfire. After the shooting, the deputies handcuffed RANDALL.

20.     At all relevant times, including during both Taser deployments and during all of the shots, RANDALL posed no immediate threat of death or serious bodily injury to any person.  Therefore, the Taser deployment and shooting were excessive, unreasonable, unnecessary, inappropriate, and contrary to basic police training.  The use of the Taser escalated the situation, particularly because RANDALL was mentally ill or experiencing a mental crisis.

21.     On information and belief, STANLEY failed to give RANDALL a verbal warning that deadly force would be used prior to shooting.  The shooting violated STANLEY'S training and standard sheriff's deputy training, including violating training with respect to the use of deadly force.  Additionally, CASSIDY failed to give RANDALL a verbal warning that the Taser would be used, which violated her training and standard sheriff's deputy training.

22.     After being shot with rounds from a lethal firearm, RANDALL was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat RANDALL.  The delay of medical care to RANDALL caused RANDALL extreme physical and emotional pain and suffering, and was a contributing cause of RANDALL's serious physical injuries.

23.     As a result of the shooting, RANDALL sustained life threatening injuries, and underwent surgery.  RANDALL also incurred financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to suffering pain, emotional and mental distress, humiliation, and disfigurement.

## **FIRST CLAIM FOR RELIEF**

### **Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

(Against STANLEY and CASSIDY)

24.     Plaintiff repeats and re-alleges each and every allegation in the prior paragraphs of his Complaint with the same force and effect as if fully set forth herein.

25. On August 19, 2022, at approximately 12:00 p.m. on that date, CASSIDY and STANLEY responded to a call reporting that a person, later identified as RANDALL, was carrying a knife inside the WinCo grocery store located at 15350 Roy Rodgers Drive, in Victorville, California. Prior to CASSIDY and STANLEY responding, there were no reports that RANDALL had injured or attempted to injure anyone, threatened anyone with the knife, or committed any crime. A reasonable sheriff's deputy in the positions of CASSIDY and STANLEY would have recognized that RANDALL may be mentally ill or experiencing a mental crisis. RANDALL ran away from CASSIDY and STANLEY, around the corner of an aisle. CASSIDY and STANLEY approached RANDALL. CASSIDY deployed a Taser at RANDALL, and RANDALL ran away from the deputies. RANDALL turned the corner of an aisle and stopped running. At that time, STANELY fired seven rounds from his handgun at RANDALL. Simultaneous with the shots, CASSIDY deployed a Taser a second time. RANDALL was struck multiple times by gunfire. After the shooting, the deputies handcuffed RANDALL.

26. At all relevant times, including during both Taser deployments and during all of the shots, RANDALL posed no immediate threat of death or serious bodily injury to any person. Therefore, the Taser deployment and shooting were excessive, unreasonable, unnecessary, inappropriate, and contrary to basic police training. The use of the Taser escalated the situation, particularly because RANDALL was mentally ill or experiencing a mental crisis.

27. On information and belief, STANLEY failed to give RANDALL a verbal warning that deadly force would be used prior to using deadly force. The shooting violated STANLEY'S training and standard sheriff's deputy training, including violating training with respect to the use of deadly force. Additionally, CASSIDY failed to give RANDALL a verbal warning that the Taser would be used, which violated her training and standard sheriff's deputy training.

28. STANLEY'S unjustified shooting of RANDALL, as well as CASSIDY'S unjustified Taser deployments, deprived RANDALL of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

29. As a result of the foregoing, RANDALL suffered great physical pain and emotional distress, and lost earning capacity.

30. The conduct of CASSIDY and STANLEY was willful, wanton, malicious, and done with reckless disregard for the rights and safety of RANDALL, and therefore warrants the imposition of exemplary and punitive damages as to CASSIDY and STANLEY.

31. Plaintiff seeks damages on this claim, including for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement. Plaintiff also seeks attorney's fees under this claim.

## **SECOND CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(Against CASSIDY and STANLEY)

32. Plaintiff repeats and re-alleges each and every allegation in the prior paragraphs of his Complaint with the same force and effect as if fully set forth herein.

33. After being shot with a lethal firearm, RANDALL was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment. Defendants did not timely summon medical care or permit medical personnel to treat RANDALL. Rather, the deputies handcuffed the injured RANDALL. The delay of medical care to RANDALL caused RANDALL extreme physical and emotional pain and suffering and was a contributing cause of

1  RANDALL's serious physical injuries.

2    34.    The denial of medical care by STANLEY and CASSIDY deprived

3  RANDALL of his right to be secure in his person against unreasonable searches and

4  seizures as guaranteed to him under the Fourth Amendment to the United States

5  Constitution and applied to state actors by the Fourteenth Amendment.

6    35.    As a result of the foregoing, RANDALL suffered great physical pain

7  and emotional distress, and loss of earning capacity.

8    36.    STANLEY and CASSIDY knew that failure to provide timely medical

9  treatment to RANDALL could result in further significant injury or the unnecessary

10  and wanton infliction of pain, but disregarded that serious medical need, causing

11  RANDALL great bodily harm.

12    37.    The conduct of CASSIDY and STANLEY was willful, wanton,

13  malicious, and done with reckless disregard for the rights and safety of RANDALL

14  and therefore warrants the imposition of exemplary and punitive damages as to

15  CASSIDY and STANLEY.

16    38.    Plaintiff seeks damages on this claim, including for his financial loss in

17  the form of past and future loss of earnings and past and future medical expenses, in

18  addition to his pain and suffering, emotional and mental distress from the physical

19  injuries, humiliation, and disfigurement.  Plaintiff also seeks attorney's fees under

20  this claim.

21

22                    **THIRD CLAIM FOR RELIEF**

23    **Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

24              (Against Defendants COUNTY and DOES 7-10)

25    39.    Plaintiff repeats and re-alleges each and every allegation in the prior

26  paragraphs of his Complaint with the same force and effect as if fully set forth herein.

27    40.    STANLEY and CASSIDY acted under color of law at all relevant times,

28  including during the uses of force.

41.     When STANLEY and CASSIDY unlawfully detained and arrested RANDALL, used lethal and less-than-lethal force against him while he was committing no crime, failed to de-escalate a situation, and denied him prompt and necessary medical care after STANLEY shot RANDALL, STANLEY and CASSIDY acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

42.     On information and belief, STANLEY and CASSIDY were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with their conduct toward RANDALL.

43.     Defendants DOES 7-10, together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive force, including excessive use of deadly force and the unnecessary use of less-lethal force;

(b)     Providing inadequate training regarding the use of force, including failing to train that the use of less-lethal force can escalate a situation involving a mentally-ill individual;

(c)     Employing and retaining as sheriff's deputies individuals such as CASSIDY and STANLEY, whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)     Inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies and other personnel, including CASSIDY and STANLEY, whom Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY deputies;

(f) Failing to adequately discipline COUNTY deputies for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g) Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h) Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which law enforcement officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

(j) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

44. By reason of the aforementioned acts and omissions, Plaintiff incurred financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to enduring pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement.

45. Defendants COUNTY and DOES 7-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendants COUNTY and DOES 7-10, condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of RANDALL and other individuals similarly situated.

46. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 7-10 acted with intentional, reckless, and callous disregard for the life of RANDALL and his constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 7-10 were affirmatively linked to and were a significantly influential force behind the injuries of RANDALL.

47. The following are only a few examples of continued misconduct by SBCSD officers, which indicate the COUNTY's failure to properly train its sheriff's deputies:

a) In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b) In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's

deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the *Archibald* case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected Woods' version of the shooting. Woods continued to work at SBSD after the *Archibald* shooting, and then he was involved in another shooting. On January 14, 2018, after the *Archibald* shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

c) In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement.

d) In *Young v. County of San Bernardino, et al.*, case number 5:15-CV-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

e) Numerous prior incidents at County San Bernardino detention centers also support Plaintiff's claim for Municipal Liability in this case. For

-13-
COMPLAINT FOR DAMAGES

example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

48. Accordingly, Defendants COUNTY and DOES 7-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

49. Plaintiff seeks damages on this claim, including for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement. Plaintiff also seeks attorney's fees under this claim.

### FOURTH CLAIM FOR RELIEF

### Municipal Liability—Ratification (42 U.S.C. § 1983)

(Against Defendants COUNTY and DOES 7-10)

50. Plaintiff repeats and re-alleges each and every allegation in the prior paragraphs of this Complaint with the same force and effect as if fully set forth herein.

51. STANLEY'S and CASSIDY'S acts, including unlawfully detaining and arresting RANDALL, using force against RANDALL while he was committing no serious crime, STANLEY failing to give a warning that deadly force would be used

COMPLAINT FOR DAMAGES

prior to shooting, failing to de-escalate the situation, and then denying RANDALL prompt and necessary medical care, deprived RANDALL of his rights under the United States Constitution.

52. At all relevant times, STANLEY and CASSIDY were acting under color of law.

53. Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning STANLEY's and CASSIDY'S acts, ratified STANLEY's and CASSIDY'S acts and the bases for them. Upon information and belief, the final policymakers knew of and specifically approved of STANLEY's and CASSIDY'S acts, including the shooting. Upon information and belief, the final policymaker(s) have determined that STANLEY's and CASSIDY'S actions were "within policy."

54. By reason of the aforementioned acts and omissions, Plaintiff incurred financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to enduring pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement.

55. Plaintiff seeks damages on this claim, including for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement. Plaintiff also seeks attorney's fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(Against Defendants COUNTY and DOES 7-10)

56. Plaintiff repeats and re-alleges each and every allegation in the prior paragraphs of his Complaint with the same force and effect as if fully set forth herein.

57. Defendants STANLEY and CASSIDY acted under color of law.

58.  STANLEY's and CASSIDY'S acts, including unlawfully detaining and arresting RANDALL, STANLEY shooting RANDALL while he was committing no crime, escalating the situation by deploying the Taser, failing to give a warning that deadly force would be used prior to shooting, and then denying RANDALL prompt and necessary medical care, deprived RANDALL of his particular rights under the United States Constitution.

59.  The training policies of Defendant COUNTY were not adequate to train its officers to handle the usual and recurring situations with which they must deal. This includes training polices with respect to the use of the use of force, including deadly force, and with respect to handling and de-escalating situations.

60.  Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

61.  The failure of Defendant COUNTY to provide adequate training caused the deprivation of Plaintiff's rights by STANLEY and CASSIDY; that is, the defendants' failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

62.  The following are only a few examples of continued misconduct by sheriff's deputies working for the COUNTY, which indicate the COUNTY's failure to properly train its sheriff's deputies:

f) In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

g) In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case

returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the *Archibald* case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected Woods' version of the shooting. Woods continued to work at SBSD after the *Archibald* shooting, and then he was involved in another shooting. On January 14, 2018, after the *Archibald* shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

h) In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement.

i) In *Young v. County of San Bernardino, et al.*, case number 5:15-CV-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

j) Numerous prior incidents at County San Bernardino detention centers also support Plaintiff's claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving

violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB)
Johnny Alcala and 14 other inmates sued the County, and David Smith
filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of
torture by COUNTY correctional officers. Moreover, the ACLU also
brought a class action lawsuit alleging unconstitutional practice of
LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP).
The ACLU's lawsuit addressed the trouble of WVDC in denying
services in unconstitutional manner, including failure to make safety
checks as mandated by Title 15, and the suit represented approximately
600 individuals.

63.     Accordingly, Defendants COUNTY and DOES 7-10 each are liable to
Plaintiff for compensatory damages under 42 U.S.C. § 1983.

64.     By reason of the aforementioned acts and omissions, Plaintiff has
suffered damages. Plaintiff seeks damages on this claim, including for his financial
loss in the form of past and future loss of earnings and past and future medical
expenses, in addition to his pain and suffering, emotional and mental distress from
the physical injuries, humiliation, and disfigurement.  Plaintiff also seeks attorney's
fees under this claim.

## SIXTH CLAIM FOR RELIEF

### Battery

(Against Defendants COUNTY, CASSIDY and STANLEY)

65.     Plaintiff repeats and re-alleges each and every allegation in the prior
paragraphs of his Complaint with the same force and effect as if fully set forth herein.

66.     On August 19, 2022, at approximately 12:00 p.m. on that date,
CASSIDY and STANLEY responded to a call reporting that a person, later identified
as RANDALL, was carrying a knife inside the WinCo grocery store located at 15350
Roy Rodgers Drive, in Victorville, California.  Prior to CASSIDY and STANLEY

responding, there were no reports that RANDALL had injured anyone or committed any crime. A reasonable sheriff's deputy in the positions of CASSIDY and STANLEY would have recognized that RANDALL may be mentally ill or experiencing a mental crisis. CASSIDY and STANLEY observed RANDALL remove a bottle of drink mixer from the grocery aisle and drink from the bottle. RANDALL ran away from CASSIDY and STANLEY, around the corner of an aisle. CASSIDY and STANLEY approached RANDALL. CASSIDY deployed a Taser at RANDALL, and RANDALL ran away from the deputies. RANDALL turned the corner of an aisle and stopped running. At that time, STANELY fired seven rounds from his handgun at RANDALL. Simultaneous with the shots, CASSIDY deployed a Taser a second time. RANDALL was struck multiple times by gunfire. After the shooting, the deputies handcuffed RANDALL.

67. At all relevant times, including during both Taser deployments and during all of the shots, RANDALL posed no immediate threat of death or serious bodily injury to any person. Therefore, the Taser deployment and shooting were excessive, unreasonable, unnecessary, inappropriate, and contrary to basic police training. The use of the Taser escalated the situation, particularly because RANDALL was mentally ill or experiencing a mental crisis.

68. On information and belief, STANLEY failed to give RANDALL a verbal warning that deadly force would be used prior to shooting. The shooting violated STANLEY'S training and standard sheriff's deputy training, including violating training with respect to the use of deadly force. Additionally, CASSIDY failed to give RANDALL a verbal warning that the Taser would be used, which violated her training and standard sheriff's deputy training.

69. As a direct and proximate result of the uses of excessive force as alleged above, RANDALL suffered damages, including for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical injuries,

humiliation, and disfigurement.

70. The COUNTY is vicariously liable for the wrongful acts of STANLEY and CASSIDY pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

71. The conduct of STANLEY and CASSIDY was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of RANDALL, entitling Plaintiff to an award of exemplary and punitive damages as to STANLEY and CASSIDY.

72. Plaintiff seeks damages on this claim, including for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement. Plaintiff also seeks attorney's fees under this claim.

## SEVENTH CLAIM FOR RELIEF

### Negligence

(Against all Defendants)

73. Plaintiff repeats and re-alleges each and every allegation in the prior paragraphs of his Complaint with the same force and effect as if fully set forth herein.

74. Sheriff's deputies, including STANLEY and CASSIDY, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

75. STANLEY and CASSIDY breached this duty of care. The actions and inactions of Defendants STANLEY and CASSIDY were negligent and reckless, including but not limited to:

    (a) the failure to properly and adequately assess the need to use deadly force and less-lethal against RANDALL;

    (b) the negligent tactics and handling of the situation with RANDALL, including pre-shooting negligence that escalated the situation;

    (c) the negligent use of deadly force and less-lethal force against RANDALL;

    (d) the failure to provide prompt medical care to RANDALL;

    (e) the COUNTY'S failure to properly train and supervise STANLEY with respect to the use of deadly force;

    (f) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of RANDALL; and

    (g) the negligent communication of information during the incident.

76. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, RANDALL was caused to suffer severe pain and suffering and to incur financial loss.

77. The COUNTY is vicariously liable for the wrongful acts of STANLEY and CASSIDY pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

78. Plaintiff seeks damages on this claim, including for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical

1 | injuries, humiliation, and disfigurement.  Plaintiff also seeks attorney's fees under
2 | this claim.

3

4 | ### EIGHTH CLAIM FOR RELIEF

5 | **(Violation of Cal. Civil Code § 52.1)**

6 | (Against all Defendants)

7 | 79.    Plaintiff repeats and re-alleges each and every allegation in the prior
8 | paragraphs of his Complaint with the same force and effect as if fully set forth herein.

9 | 80.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person
10 | from intentionally interfering with a person's constitutional rights, which can be
11 | shown by a reckless disregard for that person's constitutional rights.  Here,
12 | STANLEY and CASSIDY acted with a reckless disregard for RANDALL's
13 | constitutional rights when they used a Taser against him, which escalated the
14 | situation, and then shot him, which shows STANLEY'S and CASSIDY'S intent to
15 | violate RANDALL's constitutional rights.

16 | 81.    On information and belief, STANLEY and CASSIDY, while working
17 | for the COUNTY and acting within the course and scope of his duties, intentionally
18 | committed and attempted to commit acts of violence against RANDALL, including
19 | deploying the Taser against him, shooting him with a firearm without justification or
20 | excuse and denying him necessary medical care.

21 | 82.    When STANLEY shot RANDALL with a lethal firearm, and when
22 | CASSIDY deployed the Taser against RANDALL, they interfered with his
23 | constitutional rights to be free from unreasonable searches and seizures, to due
24 | process, to equal protection of the laws, to medical care, to be free from state actions
25 | that shock the conscience, and to life, liberty, and property.

26 | 83.    On information and belief, STANLEY intentionally shot RANDALL,
27 | and CASSIDY intentionally Tased RANDALL, both to discourage RANDALL from
28 | exercising his civil rights, to retaliate against him for invoking such rights, or to

1   prevent him from exercising such rights, which he was fully entitled to enjoy.  On
2   information and belief, RANDALL reasonably believed and understood that the
3   violent acts committed by STANLEY and CASSIDY were intended to discourage
4   him from exercising his constitutional rights, to retaliate against him for invoking
5   such rights, or to prevent him from exercising such rights.

6       84.    The conduct of STANLEY and CASSIDY was a substantial factor in
7   causing Plaintiff's harms, losses, injuries, and damages.

8       85.    The COUNTY is vicariously liable for the wrongful acts of STANLEY
9   and CASSIDY pursuant to section 815.2(a) of the California Government Code,
10  which provides that a public entity is liable for the injuries caused by its employees
11  within the scope of the employment if the employee's act would subject him or her to
12  liability.  Defendants DOES 7-10 are vicariously liable under California law and the
13  doctrine of *respondeat superior*.

14      86.    The conduct of STANLEY and CASSIDY was malicious, wanton,
15  oppressive, and accomplished with a conscious disregard for RANDALL'S and
16  Plaintiff's rights, justifying an award of exemplary and punitive damages as to
17  STANLEY and CASSIDY.

18      87.    Plaintiff seeks damages on this claim, including for his financial loss in
19  the form of past and future loss of earnings and past and future medical expenses, in
20  addition to his pain and suffering, emotional and mental distress from the physical
21  injuries, humiliation, and disfigurement.  Plaintiff also seeks attorney's fees under
22  this claim.

23      88.    Plaintiff also seeks attorney's fees and a multiplier under this claim
24  pursuant to Cal. Civ. Code §52 *et seq.*

25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff TODDERICK RANDALL requests entry of judgment in his favor and against Defendants CAMERON STANLEY, CORRIN CASSIDY, the County of San Bernardino and Does 1-10, inclusive, as follows:

A.  For compensatory damages under federal and state law, in the amount to be proven at trial, including damages for his financial loss in the form of past and future loss of earnings and past and future medical expenses, in addition to his pain and suffering, emotional and mental distress from the physical injuries, humiliation, and disfigurement.

B.  For punitive damages against the individual defendants in an amount to be proven at trial;

D.  For interest;

E.  For reasonable attorneys' fees, including litigation expenses;

F.  For costs of suit; and

G.  For such further other relief as the Court may deem just, proper, and appropriate.

DATED: January 16, 2024      LAW OFFICES OF DALE K. GALIPO

*s/ Dale K. Galipo*
Dale K. Galipo
*Attorney for Plaintiff*

DATED: January 16, 2024      LAW OFFICES OF SHARON J. BRUNNER

*s/ Sharon J. Brunner*
Sharon J. Brunner
*Attorney for Plaintiff*

/ / /

/ / /

/ / /

DATED: January 16, 2024

LAW OFFICES OF JAMES S. TERRELL

*s/ James S. Terrell*

James S. Terrell
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: January 16, 2024      LAW OFFICES OF DALE K. GALIPO

*s/ Dale K. Galipo*

Dale K. Galipo
*Attorney for Plaintiff*

DATED: January 16, 2024      LAW OFFICES OF SHARON J. BRUNNER

*s/ Sharon J. Brunner*

Sharon J. Brunner
*Attorney for Plaintiff*

DATED: January 16, 2024      LAW OFFICES OF JAMES S. TERRELL

*s/ James S. Terrell*

James S. Terrell
*Attorney for Plaintiff*

COMPLAINT FOR DAMAGES

# EXHIBIT "B"

# Roger Clark

### Police Procedures Consultant, Inc.

10207 Molino Road. Santee, CA 92071
Phone: (208) 351-2458, rclark9314@aol.com

December 27, 2024

Dale K. Galipo, Esq,
Renee V. Masongsong, Esq.
The Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

**Regarding:**  ***Todderick Randall vs. County of San Bernardino; Corrin Cassidy;***
***Cameron Stanley***
***Case No.: 5:24-cv-00086.***

Dear Counsel:

Thank you for retaining me to analyze and render opinions regarding the officer-involved shooting of Mr. Todderick Randall (Mr. Randall) and other uses of force against him by County of San Bernardino Sheriff's Department (SBSD) Deputy Cameron Stanley (Deputy Stanley) and Deputy Corrin Cassidy (Deputy Cassidy). Pursuant to the requirements of Rule 26, I have studied the investigative reports, interviews, deposition transcripts, recordings, photographs and other material (as listed below) provided to me thus far regarding this case. Please be advised that if/when any additional information is submitted, a supplemental report may be necessary.

## Materials Provided and Reviewed Thus Far:

1. Plaintiff's Complaint for Damages.

2. Protective Order.

3. Interviews:
   a. Deputy Corrin Cassidy.
   b. Deputy Cameron Stanley.
   c. Plaintiff Todderick Randall.

    d.    WinCo Employees.
        i.    Cristina Maley (with summary).
        ii.    David Sanchez (with summary).
        iii.    Fracisco Gonzalez (with summary).
        iv.    Frank Calderon (with summary).
        v.    Juan Verdin (with summary).
        vi.    Ellie Filippi (with summary).
        vii.    Edelmira Marron (with summary).
    e.    Irene Meza Gonzalez (with summary).
    f.    Medical Personnel and Emergency Responders.
        i.    Paramedic Kenneth Sexton (with summary).
        ii.    EMT Jared Falkowski (with summary).
        iii.    Paramedic Aren Andreasian (with summary).
        iv.    Flight Nurse Denise Bedolla (with summary).
        v.    Benjamin Archambeau.
        vi.    Paramedic David Mears (with summary).
        vii.    Chief David Groat (with summary).
        viii.    Grand Derose (with summary).
        ix.    Paramedic James Lammon (with summary).
        x.    Joshua Mendoza (with summary).
        xi.    Paramedic Justyn Combado (with summary).
        xii.    Tiffany Trinidad.

4.    Audio Recordings:
    a.    Deputy Cameron Stanley belt recording.
    b.    Deputy Corrin Cassidy belt recording.
    c.    911 Call.
    d.    Dispatch to Officers.

5.    Deposition Transcripts:
    a.    Deputy Cameron Stanley (with Exhibits 1-11).
    b.    Deputy Corrin Cassidy.

6.    Reports:
    a.    Crime Report.
    b.    Call History.
    c.    Briefing Notification.
    d.    Scene Walk Through.
    e.    Officer Processing—Cameron Stanley.
    f.    Officer Processing—Corrin Cassidy.

      g.     Station Reports.
      h.     Interview Summaries as noted above.
      i.     Evidence—Lab Reports.
      j.     Surveillance Video Review.

7. Video Recordings:
      a.     Initial Contact.
      b.     LFE Encounter.

8. POST Basic Learning Domains:
      a.     #1: "Leadership, Professionalism, and Ethics."
      b.     #2: "Criminal Justice System."
      c.     #3: "Policing in the Community."
      d.     #5: "Introduction to Criminal Law."
      e.     #15. "Laws of Arrest."
      f.     #18: "Investigative Report Writing."
      g.     #20: "Use of Force."
      h.     #21: "Patrol Techniques."
      i.     #22: "Vehicle Pullovers."
      j.     #23: "Crimes in Progress."
      k.     #33: "Arrest Methods/Defensive Tactics."
      l.     #34: "First Aid and CPR."
      m.     #35: "Firearms/Chemical Agents."
      n.     #37: "People with Disabilities,"

9. *2011 Electronic Control Weapon Guidelines.* U.S. Department of Justice Office of Community Oriented Policing Services and Police Executive Research Forum (PERF), Washington, D.C., March, 2011.

10. TASER International Training Materials and Product Warnings.

11. Photographs:
      a.     Scene Photographs.
      b.     Officer Processing Photographs.

12. SBSD Manual.

**Brief Overview of Events and Commentary:**

On August 19, 2022, Deputy Cassidy and Deputy Stanley were working for the County of San Bernardino Sheriff's Department, in the course and scope of their employment. On that date, at approximately 12:00 p.m., Deputies Stanley and Cassidy were dispatched to the WinCo Foods Supermarket in Victorville, California. Deputies Stanley and Cassidy arrived at the WinCo at approximately 12:08 p.m. When Deputy Stanley responded to the scene, he had information from dispatch that there was a Black male adult inside of the WinCo drinking alcohol with a knife exposed in his hand. Prior to contacting Mr. Randall, Deputies Stanley and Cassidy did not have any information that Mr. Randall had physically injured anyone or verbally threatened to harm anyone. Prior to entering WinCo, Deputies Stanley and Cassidy did not have any discussion as to how they would tactically handle the situation.

When Deputies Stanley and Cassidy first observed Mr. Randall, he appeared to be holding a bottle of margarita mix in his left hand and a box cutter or construction tool knife in his right hand. The deputies did not observe Mr. Randall drinking from the bottle. Deputy Stanley estimated that the blade of the box cutter was about one inch or 1.5 inches. Deputy Stanley gave Mr. Randall commands to drop the knife from approximately 15 to 20 feet. Prior to this incident, Deputy Stanley had been trained to keep a distance of at least 21 feet from someone with an edged weapon.

Deputy Cassidy deployed her first Taser cycle against Mr. Randall from approximately 10-15 feet. Deputy Cassidy did not give Mr. Randall a warning prior to Tasing him. Prior to the first Taser deployment, Mr. Randall did not charge or advance toward either deputy or any other person. The Taser probes stuck Mr. Randall in the stomach and right-thigh area.

At the time of the incident, Deputies Stanley and Cassidy were aware that the Taser could cause muscular incapacitation subsequent to the Taser deployment. Deputies Stanley and Cassidy were trained at the academy that a Taser can be used in certain circumstances against an individual with an edged weapon. In response to being Tased, Mr. Randall grabbed the Taser wires and attempted to pull them out. Deputies Stanley and Cassidy were trained that this is a common response to being Tased. After that, Mr. Randall turned and ran away from the Deputies. The Deputies pursued Mr. Randall. Mr. Randall turned and rounded a corner. The Deputies continued to pursue Mr. Randall. When Deputy Stanley rounded the corner, he did not see any other customers in the store nearby Mr. Randall or the Deputies.

Mr. Randall got to the end of the grocery aisle and turned around the corner of the aisle. Mr. Randall went out of Deputy Stanley's view for approximately one second. When Mr. Randall came back into view, Deputy Cassidy deployed the Taser against Mr. Randall a second time from a distance of approximately 8-10 feet. Almost simultaneously, Deputy Stanley fired seven shots at Mr. Randall from a distance of approximately five to eight feet. Deputy Stanley did not give Mr. Randall any commands between the time that Mr. Randall went out of his view and the time that he fired his shots at Mr. Randall. When Deputy Stanley fired his shots, Mr. Randall was not moving in Deputy Stanley's direction. During the shots, the distance between Deputy Stanley and Mr. Randall increased. During the shots, Deputy Stanley stepped backwards, and Mr. Randall fell away from Deputy Stanley.

At the time of this incident, Deputy Stanley was trained to give a verbal warning before using deadly force, when feasible, and to consider other reasonable alternative options. Contrary to his training, Deputy Stanley did not give Mr. Randall a verbal warning that deadly force would be used prior to shooting him.

At the time that Deputy Stanley fired his lethal shots, he was aware that the Taser was a less-lethal alternative available. At the time of this incident, Deputy Stanley had a Taser (X2) on him. The length of the cartridge wires in the X2 are approximately 25 feet. The X2 Taser has two sets of cartridges that can be deployed without pausing to reload.

Deputy Stanley also had a police baton and OC spray on him at the time of the incident. OC spray when properly deployed would have rendered Mr. Randall blind and disoriented to provide further time for observation (including no blade in the box cutter), tactical repositioning and safe apprehension.

Prior to this incident, Deputy Stanley was also trained to consider his background when shooting. In this case, five of Deputy Stanley's seven shots struck Mr. Randall, and two missed Mr. Randall, striking items in the grocery store.

It cannot be overstated that after the shooting, Deputy Stanley observed injuries on Mr. Randall, including shots to his arm, shoulder, and stomach. After the shooting, Deputy Stanley did not see the box cutter in Mr. Randall's hand, and he did not locate the box cutter near Mr. Randall. The handle of the box cutter was located some distance away from Mr. Randall, under a display partition, without a blade. Investigators were unable to locate a blade. (RANDALL/SBD-000063). There is some evidence in the record that Mr. Randall may have discarded the box cutter before being fatally shot. (RANDALL/SBD-000011).

**POST Force Options:**

Officers receive training that a subject's resistance/actions to an arrest coupled with the totality of circumstances will determine the type of force used by peace officers. The following chart illustrates how a subject's resistance/actions can correlate to the force applied by an officer. (Listed as Subject's Actions, Description of Resistance and Possible Force Option):

Compliant - Subject offers no resistance:

- Mere professional appearance
- Nonverbal actions
- Verbal requests and commands

Passive non-compliance - Does not respond to verbal commands but also offers no physical form of resistance:

- Verbal requests and commands.
- Officers' strength to take physical control, including lifting/carrying.
- Control holds and techniques to direct movement or immobilize a subject.

Active resistance - Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally signaling an intention to avoid or prevent being taken into or retained in custody:

- Control holds and techniques to control the subject and situation
- Use of personal weapons in self-defense and to gain advantage over the subject
- Use of devices to secure compliance and ultimately gain control of the situation

Assaultive - Aggressive or combative; attempting or threatening to assault the officer or another person:

- Use of devices and/or techniques to secure compliance and ultimately gain control of the situation
- Use of personal body weapons in self-defense and to gain

Page 6 of 22

advantage over the subject

Life-threatening - Any action likely to result in serious injury or possibly the death of the officer or another person.

- Utilizing firearms or any other available weapon or action in defense of self and others

Officers are trained that they must take into account the totality of the circumstances when selecting a reasonable force option (it is not the intent of the above chart to imply that an officer's force options are limited based on any single factor). Officers are also trained that they must use the force option appropriate for the situation as conditions may change rapidly. And therefore must continually reevaluate the subject's action and must be prepared to transition as needed to the appropriate force options. (LD 20: Chapter 3 – Force Options)

## Considerations Regarding the Use of Deadly Force:

The use of deadly force is the most serious decision a peace officer has to make. Deadly force applied by a peace officer is force that creates a substantial risk of causing death or serious bodily injury. (LD 20: Chapter 4—Deadly Force, page 3).

Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use objectively reasonable force to effect arrest, to prevent escape, or to overcome resistance. (Penal Code Section 835a(b); CACI No. 1305B).

A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary. (Penal Code Section 835a(c); CACI No. 1305B).

The decision to use deadly force to defend against an imminent threat of death or serious bodily injury to the officer or to another person is guided by federal case law and California state law. (LD 20: Chapter 4—Deadly Force, page 4).

California Penal Code Section 835a states in part: "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use objectively reasonable force to effect the arrest, to prevent escape, or to overcome resistance." (Penal Code Section 835a(b)).

Page 7 of 22

A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person. (Penal Code Section 835a(c)(1)(A)).  (LD 20: Chapter 4—Deadly Force, page 4).

Related Terms: Per POST, in order for peace officers to understand the aspects of the use of deadly force, they need to become familiar with the following terms:

> Serious bodily harm or injury means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement. (Penal Code Section 243(f)(4)).

> Deadly force means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm. (Penal Code Section 835a(e)(1)).

> Imminent means: a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the **present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury** to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. (Penal Code Section 835a(e)(2); CACI No. 1305B).

> Totality of the Circumstances means all facts known to the peace officer at the time, including the conduct of the officer and the subject leading up to the use of deadly force. (Penal Code Section 835a(e)(3); CACI No. 1305B).

According to Penal Code Section 835a, **fear alone does not justify the use of deadly force**. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

The courts have held that:

- • A simple statement of fear for your safety is not enough; there must be objective factors to justify your concern.
- • It must be objectively reasonable.
- • It must be based on the facts and circumstances known to the officer at the time. (LD 20: Chapter 4—Deadly Force, pages 7-8).

This comports with Judicial Council of California of California Civil Jury Instructions (CACI), Instruction No. 1305B, Battery by Peace Officer (Deadly Force). Per CACI 1305B:

> "[a] threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed."

The POST training domains in this regard have identified an officer's mentality to make such a decision (to depart from basic tactics) and given a specific name to tactical mistakes that are likely to lead to injury or death as: "Fatal Error." The following "fatal errors" are apparent in this set of facts:

*Inappropriate attitude:*
- • Too aggressive.

*Poor or no planning:*
- • No consideration of alternative actions.

*Inadequate communication:*
- • Failure to notify dispatch of actions.
- • Failure to give warning before use of deadly force.

*Poor Positioning:*
- • Abandoning a safe position and failure to find appropriate cover.
- • Being too close or directly behind the suspect. (POST

Page 9 of 22

Learning Domain # 21, pages 1-21 & 1-22.)

## Professional Standards Regarding the Use of Deadly Force in this Incident:

Peace officers are trained that the use of deadly force constitutes a lawful and justifiable act of self-defense when the officer using deadly force actually and reasonably believes one or more of the following facts exist:

- That there is an imminent danger that the person against whom the deadly force is used will either kill or cause great bodily injury to another person.
- That it is necessary under the circumstances to use deadly force to prevent that person from killing or causing great bodily injury to the officer confronting the suspect.
- That it is necessary under the circumstances to prevent the escape of a suspect who presents a clear danger to the community as evidenced by the nature of the crime, or other obvious factors. In such cases deadly force is not allowed to prevent the escape of misdemeanor and most felony suspects.

Key known facts that should have determined that Officer Stanley should not have used deadly force, which I assume to be true for the purposes of my opinions, based on my review of the evidence above, include:

- Deputy Stanley did not observe the box cutter in Mr. Randall's hand when he (Deputy Stanley) fired at Mr. Randall while using his sights.
- Mr. Randall ran away from Deputies.
- Mr. Randall was shot without ever uttering any threat.
- Mr. Randall did not physically harm anyone.
- Mr. Randall did not verbally threaten anyone.
- Deputy Stanley had reasonable less intrusive alternative options available, including continuing to reposition.
- Deputy Stanley did not give a verbal warning.
- Deputy Stanley had the ability to move, including moving behind other grocery aisles.
- Deputy Stanley does not appear to have assessed between shots.
- Deputy Stanley was not injured prior to the shots.
- Deputy Stanley was a seasoned Deputy.
- Deputies were not responding to a serious or violent crime.

- Deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability.
- Deputies had no prior contact with Mr. Randall or awareness of whether he had a propensity for violence.

In my opinion, under the set of facts demonstrated here, Deputy Stanley could not have reasonably believed that any of the above circumstances existed at the time he used deadly force on Mr. Randall.

## Additional Opinions Thus Far:

1. From my review of the materials provided, the uses of force inflicted on Mr. Randall, including Deputy Cassidy's two Taser deployments and Deputy Stanley's use of deadly force (7 lethal shots), were inappropriate, unjustified, excessive, unreasonable, negligent, and contrary to basic police training and POST standards.

   At the time that Deputy Stanley fired rounds at Mr. Randall from his lethal firearm, Mr. Randall posed no immediate threat of death or serious bodily injury to any person. Prior to the shooting, Deputy Stanley had no information that Mr. Randall had injured anyone or verbally threatened to harm anyone, and neither Deputy Stanley nor Deputy Cassidy observed Mr. Randall attack or attack anyone. The Deputies were not responding to a serious or violent crime. The Deputies did not have any information that Mr. Randall was dangerous or violent. Mr. Randall was not moving toward the Deputies at the time of any of Deputy Stanley's seven shots. To the contrary, the distance between Deputy Stanley and Mr. Randall increased during the shots. Additionally, Mr. Randall was being Tased by Deputy Cassidy at the time that Deputy Stanley fired his lethal shots at Mr. Randall.

   A reasonable police officer under similar circumstances would not have believed deadly force was ever justified, including because there was no immediate defense of life situation in this case. Any subjective fear on Deputy Stanley's part was insufficient to justify the use of deadly force. Police officers are trained that deadly force

can only be used as a last resort and are trained to show a reverence for human life. Deputy Stanley showed no reverence for Mr. Randall's life when he shot him, and shooting Mr. Randall was not a last resort. Deputy Stanley's actions also reflect a deliberate indifference to the life and safety of Mr. Randall. Additionally, Deputy Stanley had other reasonable alternative measures to shooting Mr. Randall, including deploying his Taser or other less-lethal weapon, repositioning, and/or issuing further commands or a warning that deadly force would be used.

The use of deadly force is only justified by an objectively reasonable belief that the subject poses an immediate threat of death or serious bodily injury to the officer or others. Pursuant to California Penal Code Section 835(a), the officer must have an objectively reasonable belief that the person has the "present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed." (Penal Code Section 835a(e)(2); CACI No. 1305B). In other words, a potential threat or fear of a future threat is not enough to justify using deadly force.

Deputy Cassidy's two Taser deployments against Mr. Randall, including prior to the shooting and simultaneous with the shooting, were also excessive, unreasonable, and contrary to basic police training and POST standards. Deputy Cassidy's use of the Taser escalated the situation and led to the use of deadly force. Police officers are trained that if someone is shot with less-lethal munitions, particularly if that person is experiencing a mental health crisis, then they may run away from the less-lethal, which is what occurred in this case. The Deputies knew or should have known that Mr. Randall would run away from the Taser deployment.

2.    Police officers are trained that overreaction in the use of deadly force is excessive force. Deputy Stanley's overreaction in shooting Mr. Randall was a use of excessive force, and his subjective fear was insufficient to justify the use of deadly force.

3. Officers are trained that a verbal warning that deadly force will be used must be given when feasible. The record reflects that Deputy Stanley failed to give any warning that deadly force was going to be used despite it appearing that it was feasible to do so.

4. It should have appeared to trained officers such as Deputy Cassidy and Deputy Stanley that Mr. Randall was having a mental crisis or was mentally ill. Officers are trained to identify individuals with mental health issues based on POST Learning Domain 37 and are trained to de-escalate situations rather than escalate them. Here, Deputy Cassidy escalated the situation by deploying the Taser against Mr. Randall.

5. Deputies Stanley and Cassidy engaged in negligent tactics during this incident. The Deputies failed to formulate a tactical plan prior to using force against Mr. Randall. Additionally, Deputy Stanley did not take the background of the shooting into consideration when he fired his lethal shots at Mr. Randall. Two of his shots missed and struck objects in the grocery store, indicating that customers could have been struck if they were in the nearby vicinity.

6. Officers are trained that their pre-shooting conduct leading up to a deadly use of force may affect whether a use of force is ultimately reasonable and therefore may be considered in the analysis of a use of deadly force. And that the reasonableness of an officer's use of deadly force includes consideration of the officer's tactical conduct and decisions leading up to the use of deadly force. Deputy Stanley's and Cassidy's actions here demonstrate inappropriate tactics that appear to be directly connected to the unreasonable and unnecessary infliction of deadly force on Mr. Randall.

Officers are also trained that sound tactics accommodate the opportunity for a safe and realistic assessment of the credible risks at hand to be tactically resolved. The most fundamental tactical response is in this set of facts (a possible edged weapon) for Deputies Stanley and Cassidy was for them to use the available cover and distance available within the store. This tactic is taught as: Cover + Distance = Time (C+D=T). In this incident, Deputies Stanley and Cassidy were required to take a position of safety --

Page 13 of 22

"cover" -- and take the necessary time as events unfolded for an apprehension without the use of deadly force.

## My Qualifications To Review This Case:

My opinions are based in part on my training, professional experience and education. I am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD). I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5, 1988). The POST Command College was a Masters level two-year course of study requiring a thesis, in Police Administration, with the diploma awarded by the California Department of Justice (and not the California University system). During the course of my service with the department, I had a wide range of duties. Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail). I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units. I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers. Those cases included possible complaints relating to both misdemeanor and felony crimes. They frequently required follow up investigations and interviews before the exact nature of the case could be determined. As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported

Page 14 of 22

on the use of force and officer-involved shootings. I was also assigned by my Department
to sit as a member of Departmental review committees regarding the reasonable or
unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's
Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent
promotion to Lieutenant, I returned to the same facility approximately 10 years later.
During that time, I was assigned as a Jail Watch Commander, and as the Facility Training
and Logistics Administrator. At the time of my assignment, the MCJ held a daily
population in excess of 7,000 inmates, including a hospital, which was serviced by a staff
of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve
Forces Bureau, I worked closely with the State of California Peace Officer Standards and
Training in revamping our Reserve Academy to bring it into state compliance. This
process gave me an expertise in the POST Basic curriculum. I also supervised the training
of cadets at our Reserve Training Academy. They were taught proper investigation,
interview, and apprehension procedures. Among other topics, I lectured the Reserve
Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the
Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations
Center.

During the last five and one half years of my career, I commanded a specialized unit
known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.),
which was created to investigate, locate, observe and arrest major (career) criminals. I
held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with
homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police
corruption. The majority of our cases were homicide cases, including the murder of police
officers. Arrests frequently occurred in dynamic circumstances including crimes in
progress.

My unit also conducted major narcotics investigations including undercover narcotics
buys, buy busts, and reverse stings. We frequently deployed at the request of investigative
units, such as Narcotics, which provided the initial investigative leads for our operations.
These narcotics cases usually involved multiple kilogram quantities of drugs and amounts
of money ranging from one hundred thousand to more than one million dollars.

Page 15 of 22

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations. In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 1900 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents. From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested. Many of these suspects were armed and considered to be very dangerous. Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension. This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department. These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Florida, Illinois, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and Wisconsin. I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury. I have also submitted written opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New

York, Oregon, Kentucky, and Wyoming Federal and State Courts. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana. I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons." On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert." On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons. I was selected (January 24, 2020) to present on the topic of: "Use of force litigation under California's negligence standard and the impact of AB 392" at the National Police Accountability Project held at Loyola Law, Los Angeles, California. On February 18, 2020, and on March 10, 2021, I lectured (at request) at the University of California - Irvine, School of Law, Civil Rights Litigation Clinic.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas). As a result of my expert testimony in Border Network, et al. v. Otero County, et al., Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden. The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in Burns v. City of Redwood City, 737 F.Supp.2d.1047. I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in Blankenhorn v. City of Orange, et al., 485 F.3d 463, 485 (9th Cir. 2007). The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. Torres, et al. v. City of Los Angeles, et al., 540 F.3d 1031, 1042-43 (9th Cir. 2008). The Torres case was appealed to the U.S. Supreme Court and returned for trial. I provided the expert opinion in Chavies Hoskin v. City of Milwaukee, et al. (E.D. Wis Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in

significant policy changes within the MPD. My opinions supported argument in the Ninth Circuit case: A. D., a Minor; J. E., a Minor; Sue Casey, Plaintiffs-Appellees, v. State of California Highway Patrol, Defendant, and Stephen Markgraf., No. 09-16460, D.C. No. 3:07-cv-05483-SI (9th Circuit, Published Opinion). My opinions supported argument in the Ninth Circuit case: Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1102 (9th Cir. 2014). The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, Hayes v. County of San Diego, 658 F.3d 867 (9th Cir. 2011), and Young v. County of Los Angeles, 655 F.3d 1156 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective, in AD v. California Highway Patrol, 712 F. 3d 446 (9th Cir. 2013). The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in Bishop et al. v. Arcuri et al., 674 F.3d 456 (5th Cir. 2012). The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in Nelson v. City of Davis, 685 F.3d 867 (9th Cir. 2012). I was the expert in the Ninth Circuit opinion regarding the allegations proffered by police officers and their use/display of firearms against civilians in Green v. City and County of San Francisco, 751 F. 3d 1039 (9th Cir. 2014). Most recently, I was the expert in an important Ninth Circuit opinion regarding the allegations proffered by police officers and their use of lethal force against unarmed persons in Jennifer Cruz, et al., v. City of Anaheim, et al., 765 F.3d 1076 (9th Cir. 2014). I was the expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in Estate of Manuel Diaz, v. City of Anaheim, et al., No. 14-55644. My opinion is quoted in the Ninth Circuit opinion regarding the use of lethal force in A.K.H. a minor, et al, v. City of Tustin, et al., No. 14-55184. My opinions supported argument in the Ninth Circuit case: Estate of Angel Stanley, et al., v. Kristopher Michael Walb, No. 14-57007 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: Estate of Shakina Ortega, et al., v. City of San Diego, et al. No. 14-56824 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: Jerry Newmaker, et al., v. City of Fortuna, et al. No. 14-15098 (for publication). My opinions supported argument in the Ninth Circuit Case: Tonya E. Shirar, v. Miguel Guerrero, et al. regarding use of lethal force and "suicide by cop," No. 15-55029 (not for publication). My opinions supported argument in the Ninth Circuit Case Angel Mendez; Jennifer Lynn Garcia, v County of Los Angeles, et al., Nos. 13-56686, and 13-57072 (for publication) and which was settled before the Supreme Court, No. 16-369, regarding the use of lethal force and searches. My opinions supported argument in the Ninth Circuit case: Chien Van Bui, et al, v City and County of San

Francisco, et al, No. 14-16585 (not for publication), regarding the use of lethal force. My opinions supported argument in the Sixth Circuit opinion, Case No. 16-5322, Carey Woodcock v. City of Bowling Green, et al, Originating Case No. 1:13-cv-00124 regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. No. 14-17388 (for publication), Johnathan Jones, et al v. Las Vegas Metropolitan Police Department, et al, Originating Case No. 2:12-cv-01636- regarding the use of lethal force and Taser weapons. My opinions supported argument in the Ninth Circuit opinion, Case No. 16- 15606 (for publication), Christian Longoria, et al v. Pinal County, et al, Originating Case No. 2:15-cv-00043, PHX SRB, regarding the use of lethal force after a vehicle pursuit.

My opinions supported argument in the Ninth Circuit case: S. B. v. County of San Diego, 864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding issues of qualified immunity. My opinions supported argument in the Tenth Circuit case: Russell Tenorio v. Brian Pitzer, Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of qualified immunity and use of deadly force. I participated as a retained expert in the USDC Fifth District case, Stephen McCollum et al., v. Texas Department of Criminal Justice, et al., Case No.3:12-CV-02037 regarding in-custody hyperthermia deaths. My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 17-55116 (for publication), Susan Mellen, et al v. Marcella Winn, et al, D.C. Case No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit Case Richard Vos; Jenelle Bernacchi, v City of Newport Beach, et al., Nos. 16-56791 (for publication) and which was settled by the Supreme Court, No. 16-56791, regarding the use of lethal force and mental illness. My opinions (and quoted by name) supported argument in the Ninth Circuit Case S.R. Nehad, et al. v. Browder, et al., No. 18-55035 (for publication) regarding the use of lethal force and custom and practice. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-55930 (not for publication), Estate of Kevin Brown, et al. v. Michael Lambert, et al., D.C. No. 3:15-cv-01583-DMS-WVG, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 15-56339 (for publication), Shane Horton, by his Guardian Ad, Litem Yvonne Horton, v. City of Santa Maria; Santa Maria Police Department; Andrew Brice, D.C. Case No. 2:14-cv-06135- SJO-PJW, and Jonathan Michael Castro v. County of Los Angeles, et al, D.C. Case No. CV 10-5425 DSF (JEMx), 833 F.3d 1060 (9th Cir. 2016) (en banc), regarding in-custody suicidal prisoners and qualified immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-56270 (not for publication), James Soler v. County of San Diego, et al., D.C. No. 3:14-cv-02470-MMA-RBB, regarding required verification of persons taken into custody pursuant to a warrant of arrest. My opinions supported argument in the Ninth Circuit opinion, Case No. 18-17404 (for publication) Tan Lam, v. City of Los Banos, et

al. D.C. No. 2:15-cv-00531-MCE-KJN, regarding the use of lethal force. My opinions
supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No.
19-56035 (for publication), Tiffany Tabares, et al v. City of Huntington Beach, et al,
D.C. Case No. 8:18-cv-00821, JLS-JDE, regarding use of force and subjects suffering
mental illness. I was retained as consultant regarding the October 15, 2019 Law
Enforcement Activity Related Death (including positional asphyxia) of Mr. Angel Zapata-
Hernandez by San Diego Metropolitan Transit System (MTS) Code Compliance Officers.
My consultations included recommendations and resulted in significant changes in policy
and training by the MTS. I was a retained expert in the Temporary Restraining Order
restricting the use of kinetic weapons during demonstrations issued April 19, 2021 in
Black Lives Matter v. City of Los Angeles, et al, Case No.: CV 20-5027 CBM (Asx). .
My opinions supported argument in the Ninth Circuit opinion, Case No. 20-16351 (not
for publication), Terrance Amons, et al., v. Dillon Tindall et al. D.C. No. 4:19-cv-00301
KAW regarding use of lethal force.

The California Court of Appeal (Second Appellate District) drew in part from my expert
report regarding search warrant service, Macias v. County of Los Angeles, 144 Cal.
App.4th 313, 50 Cal. Rptr.3d 364 (2006). The California Supreme Court drew in part
from my expert opinion regarding police tactics and the use of deadly force, Hayes et al.
v. County of San Diego et al., 57 Cal.4th 622 (2013). I was quoted by the California
Appellate Court (Second Appellate District, Division Three) in B.B., a Minor, etc., et al.,
v. County of Los Angeles, et al., Case No. B264946 Super. Ct. Nos. TC027341,
TC027438, BC505918 regarding positional asphyxia issues.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of
Administration by United States Attorney General, the Honorable Edwin Meese III, for
my work to establish California Penal Code Section 311.11 (forbidding the Possession of
Child Pornography). On February 22, 1993 (at the time of my retirement), Mr. Meese
presented a second personal commendation for the success of this critical five-year effort
to bring this law into effect. California Penal Code Section 311.11 is required training for
all Law Enforcement Officers in California and taught extensively in the POST Basic
Learning Domain #9: "Crimes Against Children,"pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my
opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of
Tamir Rice by City of Cleveland police officers. In March, 2016 I was requested by the
Delaware Attorney General to review and provide my opinions regarding the shooting
death of Jeremy McDole. The AG report was published May 12, 2016. I provided a
written Opinion for New Mexico AG regarding the shooting Death of Teresa Anaya that
included requested training opinions. I have also consulted with, and provided written

opinions at the request of the U.S. Attorney (New York), the Santa Clara County District Attorney, and the San Francisco District Attorney. On June 16, 2021, I was selected by the Los Angeles County District Attorney as a member of FACCT - an independent team assigned to re-examine fatal use of force incidents by law enforcement officers and recommend further action when appropriate. On November 7, 2021, I was an Honoree of the 2021 National Lawyers Guild of Los Angeles at their annual Awards Gala as a recognized defender of Constitutional Rights.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case. A number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs. I own each, along with the download software. I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices. I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage. Two published examples are Lee v. Nashville, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and Heston v. City of Salinas, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007). My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in William Mears, et al., v. City of Los Angeles, et al, USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al, USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW, and on November 1, 2018 in Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS. There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed December 27, 2024.

Roger A. Clark

# EXHIBIT A

## ROGER A. CLARK

*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present.................................................................. **31 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 2650 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003....................................................................... **9 years**

I substitute teach at all levels in the school district (elementary to high school).  As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993.................................**27 years 4 months**

**Note:** In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn and 3,000 civilian personnel and a daily County Jail inmate population of 23,000.

### Service as a Lieutenant (15 Years, 0 Months):

**1. Field Operations Region I**
   **NORSAT**                          11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and arrest major (career) criminal offenders. This unit was designed as a multijurisdictional effort for the cities in the northern region of Los Angeles County. The command consisted of four (4) Sergeants, seventeen (17) Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3) civilian employees. The 1992 budget set at $1.5 million. The arrest rate averaged 500 career criminal arrests per year with a 97% conviction rate and no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

**2.     Executive Offices**
        **Reserve Forces Bureau**      05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

volunteers, and 450 law enforcement explorer scouts. The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

- Total restructure of the Academy training process for reserve Deputies.
- Implementation of upgrade programs to move lower level reserves to level I status.
- Departmental Reserve Certification procedures.
- Annual leadership seminar.
- The Reserve News, a nationally recognized police magazine.
- Computerization of the Bureau.


3.    **Field Operations Region I**
      **Crescenta Valley Station**    04/01/80 to 05/01/84  **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

- **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
- **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
- **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
- **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

- Negotiation of an enhanced city contract (at a savings to the City).
- Formation of a volunteer community support group.
- Development and implementation of an integrated community emergency response plan.
- High School undercover narcotics operation.
- Restructure of the Station Detective Bureau.
- The annual station picnic, which was effective in boosting station morale.

-3-

4.    **Custody Division**
      **Central Jail**              04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of California, with a daily inmate population of seven thousand (7,000), an assigned staff of six hundred (600), and two hundred (200) civilian personnel. My service at this command was equally divided into two major assignments:

- Training and Logistics Lieutenant (04/01/79 to 04/01/8).
- Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

- "Hot Fire" Training program, which is now a State (POST) mandated training module for all custody personnel throughout California.
- The "Defend in Place" fire safety operational plan for jail facilities.
- New fire safety specifications for jail bedding and mattresses.
- The development of fire safe jail mattress material.
- The development of a facility emergency response plan.
- The computerization of training, timekeeping, and scheduling for the facility (800 sworn and 200 civilian personnel).
- "Spouse day at CJ"--A program for spouses of employees.


**Service as a Sergeant (6 Years, 4 Months):**


5.    **Administrative Division**
      **Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my previous assignment (Emergency Operations Bureau). The unit provides millions of dollars in free federal excess and surplus food and property from clothing to heavy equipment and aircraft to the department each year. I am very proud of this contribution to the Department.

During this time I remained staff (Personnel Sergeant) of the Emergency Operations Bureau. This was simply a technical (paper) transfer.


6.    **Patrol Division**
      **Emergency Operations**       02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the

-4-

activities of the Department's planning    unit with emergency operations planning and preparation.  I was assigned as the Personnel and Logistics Sergeant.

Significant contributions while assigned at this command are:

- Formation of a new County Emergency Operations Center.
- Participation in the 1974 Federal earthquake studies of Los Angeles County.
- Development of the Department's specialized Field Command Post equipment.
- Development of the Department's Field Booking Team.
- Collateral assignment to the Patrol School

**7.    Patrol Division
Civil Defense Bureau**      12/01/73 to 02/01/74  **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.

**8.    Patrol Division
San Dimas Station**      12/12/72 to 12/01/73  **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.

**9.    Technical Serviced Division
Communications Bureau**      12/01/71 to 12/12/72  **12 months**

I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.

**Service as a Deputy (6 Years, 0 Months):**

**10.    Patrol Division
San Dimas Station
Detective Bureau**      01/01/70 to 12/01/71  **23 months**

-5-

I served as a Station Detective assigned to the evening watch. I handled the first response to all crimes requiring investigations. I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

11.    **Patrol Division**
       **San Dimas Station Patrol**    01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol: Jailer, Desk, Watch Deputy, Patrol, and Traffic.

12.    **Technical Services Division**
       **Transportation Bureau**    11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.

13.    **Custody Division**
       **Central Jail**            05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy. I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.

14.    **Administrative Division**
       **Academy**                01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.

15.    **Custody Division**
       **Central Jail**            12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.

## DEGREES AND CERTIFICATION

-6-

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

# EXHIBIT B

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road. Santee, CA 92071
(208) 351-2458, rclark9314@aol.com

December 27, 2024

Dale K. Galipo, Esq,
Renee V. Masongsong, Esq.
The Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

**Regarding:** *Todderick Randall vs. County of San Bernardino; Corrin Cassidy; Cameron Stanley, Case No.: 5:24-cv-00086.*

Dear Counsel:

My fee schedule is as follows:

- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $4,000.00 when initially retained will be used against the above listed fees. Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account. Payment is due upon receipt of the invoice.

There is no formal contract required. My Federal Tax ID Number is **72-1576857.** A **W-9** is attached.

Sincerely,

Roger A. Clark

| Form **W-9** (Rev. March 2024) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** Go to *www.irs.gov/FormW9* for instructions and the latest information. | **Give form to the requester. Do not send to the IRS.** |
|---|---|---|

Before you begin. For guidance related to the purpose of Form W-9, see *Purpose of Form*, below.

**1** Name of entity/individual. An entry is required. (For a sole proprietor or disregarded entity, enter the owner's name on line 1, and enter the business/disregarded entity's name on line 2.)

Roger A. Clark

**2** Business name/disregarded entity name, if different from above.

Roger Clark Police Procedures Consultant Inc.

**3a** Check the appropriate box for federal tax classification of the entity/individual whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor ☐ C corporation ☑ S corporation ☐ Partnership ☐ Trust/estate

☐ LLC. Enter the tax classification (C = C corporation, S = S corporation, P = Partnership) ____

Note: Check the "LLC" box above and, in the entry space, enter the appropriate code (C, S, or P) for the tax classification of the LLC, unless it is a disregarded entity. A disregarded entity should instead check the appropriate box for the tax classification of its owner.

☐ Other (see instructions)

**3b** If on line 3a you checked "Partnership" or "Trust/estate," or checked "LLC" and entered "P" as its tax classification, and you are providing this form to a partnership, trust, or estate in which you have an ownership interest, check this box if you have any foreign partners, owners, or beneficiaries. See instructions . . . . . . . . . . . ☐

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) ____

Exemption from Foreign Account Tax Compliance Act (FATCA) reporting code (if any) ____

*(Applies to accounts maintained outside the United States.)*

**5** Address (number, street, and apt. or suite no.). See instructions.

10207 Molino Road

**6** City, state, and ZIP code

Santee, CA 92071

Requester's name and address (optional)

**7** List account number(s) here (optional)

| **Part I** | **Taxpayer Identification Number (TIN)** |
|---|---|

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. See also *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

☐☐☐ - ☐☐ - ☐☐☐☐

or

Employer identification number

7 2 - 1 5 7 6 8 5 7

| **Part II** | **Certification** |
|---|---|

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and, generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign Here | Signature of U.S. person ▶ *[signature]* | Date 8/8/2024 |
|---|---|---|

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## What's New

Line 3a has been modified to clarify how a disregarded entity completes this line. An LLC that is a disregarded entity should check the appropriate box for the tax classification of its owner. Otherwise, it should check the "LLC" box and enter its appropriate tax classification.

New line 3b has been added to this form. A flow-through entity is required to complete this line to indicate that it has direct or indirect foreign partners, owners, or beneficiaries when it provides the Form W-9 to another flow-through entity in which it has an ownership interest. This change is intended to provide a flow-through entity with information regarding the status of its indirect foreign partners, owners, or beneficiaries, so that it can satisfy any applicable reporting requirements. For example, a partnership that has any indirect foreign partners may be required to complete Schedules K-2 and K-3. See the Partnership Instructions for Schedules K-2 and K-3 (Form 1065).

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS is giving you this form because they

Cat. No. 10231X

Form **W-9** (Rev. 3-2024)

# EXHIBIT C

# Roger Clark

### Police Procedures Consultant, Inc.
10207 Molino Road. Santee, CA 92071
Phone: (208) 351-2458, rclark9314@aol.com

### UPDATED LIST OF SWORN TESTIMONY FOR RULE 26

#### December 14, 2020 to December 17, 2024
(Revised December 18, 2024

**Deposition:** December 14, 2020. Cristobal Solano; M.H., et al. v. County of Orange, et al.; USCD Case No. 8:19-cv-00549-JVS-ADS.

**Deposition:** December 22, 2020. John F. Dunham v. County of Monterey, et al. Case No.: 3:18-cv-04467-EDL.

**Deposition:** December 28, 2020. Cameron Vincent, v. City and County of San Francisco, et al. Case No: 19-cv-0329..

**Deposition:** January 6, 2021. Rashid Adan vs. City of San Diego and Officer Jason Langley, Case No.: 3:19-cv-1523-LAB-AHG.

**Deposition:** January 11, 2021. Sabrina Paloni, et al. v.City of Albuquerque, et al. Judicial District Case No. D-202-CV-201800015.

**Deposition:** January 14, 2021. William Bernal, and Celia Bernal, Plaintiffs, vs. Sacramento County Sheriff Department, et al., Case No.: 2:19-cv-00482-MCE-AC.

**Deposition:** January 22, 2021. Tracy Jenkins, as Personal Representative of the Estate of Theoddeus R. Gray, et. al. v Tom Price, Jessie Smith, James Ziemiecki, Trevor Head, Travis Kaufman and City of St. Clair Shores, Michigan (19-cv-10383)

**Deposition:** January 27, 2021. Jose Magana, (Omar Magana), v. City of Los Angeles, et al. Case No. 2:19-cv-03631 CAS-AGR.

**Deposition:** February 1, 2021.  Estate of Logan Johnsrud, et al. v. Deputy Nathan Dean and Wood County, Wisconsin., Case No. 20-CV-108.

**Deposition:** February 3, 2021. Harry Donald Lemly, Jr., v. California Department of Parks and Recreation, et al. Case No. 8:19-CV-01603 DOC DFM.

**Deposition:** February 9, 2021. Christopher Ramos. v. County of Alameda et al. Case No. 4:19-cv-05715 DMR

Page 1 of 23

**Deposition:** February 10, 2021. Casmir Anumudu vs. David Salvador, Andrew Essig, et al., Case No.: 2:19-cv-04045-ODW.

**Deposition:** February 18, 2021. Abraam Sweiha. v. Alameda County, et al; Case No.: 3:19-cv-03098-LB.

**Deposition:** February 19, 2021. Albert Anthony Arteaga, v. City of Oakley, et al.. Case No. 3:19-cv-05725

**Deposition.** February 22, 2021. Jeannie Atienza, v Andrew Hall Case No.: 3:19-cv-03440.

**Preliminary Hearing.** February 23, 2021 and February 24, 2021. People v. Terrance Stangle Case No 20013301.

**Deposition:** February 26, 2021. D.T., a minor by and through his guardian Tanika Tyler vs. San Diego Metropolitan Transit Services, et al., Case No.: 3:19-cv-1523-LAB-AHG.

**Deposition:** March 3, 2021 James Stewart, et al. v. County of Yuba, et al., Case No.: 2:19-cv-01744-TLN-DB.

**Deposition:** March 4, 2021. Judy O'Neil, v. City and County of San Francesco, et al.; Case No.: 3:17-cv-07190-JCS.

**Deposition:** March 11, 2021. Vincent Henderson vs. Harris County Sheriff's Department, Rick Hickman, Michael Richard, Dan Richards, A/K/A Dan Richardson, and Deputy Brisco, Case No.: 4:18-CV-413

**Deposition:** March 18, 2021 Cynthia Ames, individually and as a successor in interest of Henry Simmons, deceased, v. County of San Bernardino, et al., Case No.: 5:18-cv-01362-SJO-FFM.

**Deposition:** March 19, 2021 Zakhary Gabriel Mallett, v. County of Los Angeles, et al Case No.: 2:19-cv-8506.

**Deposition:** March 24, 2021. Lourdes Toman, et al. v. City of Fullerton, et al. Case No.: 8:20-cv-00046 DOC-KES.

**Deposition:** April 1, 2021. Matthew Burghardt, as guardian of Matthew B. Burghardt, and Christian Beard v. Officer Ezekiel Ryan, and Officer Kristopher London. Consolidated Case Nos.:5:18CV00325, and 5:18CV02788.

**Deposition:** April 9, 2021 (continued from December 4, 2020) Melanie Dunne, et al, v. City of Las Cruces (New Mexico), et al. Case No. D-307-CV-2018-02315.

**Deposition:** April 13, 2021.  Villegas v. City of Los Angeles – C.D. Cal. Case No. 20-cv-07469-SB-JC.

**Deposition:** April 14, 2021.  Songhai Smith, v. City and County of Los Angeles, et al. Case No. 2:20-cv-03118-RGK.

**Deposition:** April 15, 2021.  James B. Shelton v. John Brandon et. al.,  Case No. 4:19-cv-00023 (Tennessee).

**Deposition:** April 23, 2021.  M.A., et al. v. County of San Bernardino, et al.  Case No. 8:20-cv-00567-and Z.M.A. v. County of San Bernardino, et al. Case No. 5:20-cv-00589-JFW-SHK

**Deposition:** May 3, 2021.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Deposition:** May 10, 2021.  David Andrews, Plaintiff, vs. County of Orange; Robert Seamans; Stephen Harder, et al., Case No.: 8:20-cv-00925-JLS-ADS.

**Trial:** May 12, 2021.  Araceli Flores (Juan Barillas), v. City of Los Angeles, et al.  Case No. 2:18-cv-09936 .

**Deposition:** May 18, 2021.  Sophia Larios, v. City of Long Beach, et al.  Case No.: 2:18–cv–10486 PSG (PJWx)

**Deposition:** May 19, 2021.  Shellie Cooke, v. City ot Los Angeles, et al.  Case No. 18STCV00882.

**Deposition:** May 21, 2021.  Bellagio Brown, Vs. City of Ontario; Gabriel Gutierrez, et al., Case No.: 5:20-cv-00476-DMG-SHK.

**Deposition:** May 24, 2021.  Kenneth Chamberlain, Jr. v. City of White Plains (New York), et al. Case No. 12-CV-5142 (CS).

**Deposition:** June 2, 2021.  J.A.J., et al., vs. Efrain Jimenez, et al., Case No.: 1:18-cv-01138 DAD-SKO.

**Trial:** June 11, 2021.  Richard Donastorg, vs. City of Ontario, et al.  Case No.: 5:18-cv-00992-JGB-SP.

**Trial:** June 11, 2021.  Harry Donald Lemly, Jr., v. California Department of Parks and Recreation, et al.  Case No. 8:19-CV-01603 DOC DFM.

**Deposition:** June 14, 2021. Paul R. Conforti, and Humana Caresource, vs. City of Franklin, Officer Christopher Rydelski, Officer Gary Wallace, et al., Case No.: 2020CV000758.

**Deposition:** June 15, 2021, Rosa "Patti" Andrade, et al., vs. City of Tucson, et al. Case No. C20194291.

**Deposition:** June 16, 2021. Barry John Montgomery, Jr. v. County of Los Angeles, et al. Case No. BC692204.

**Trial:** June 23, 2021. People v. Richard Lechuga, Superior Court(San Diego County), Case No. CE395395, DA No. NIBT461.

**Trial:** July 6 & 7, 2021. Jose Gomez, v. City of Houston, et al. Case No. 18-cv-1224.

**Deposition:** July 13, 2021. Nicholas Robinson v. City of San Jose, et al. Case No.: 5:19-CV-06768NC.

**Deposition:** July 15, 2021. Michael Moore vs. City of Los Angeles, et al. Case No.: -cv-03053-AB-AGR..

**Trial:** July 19, 2021 and July 20, 2021. Villegas v. City of Los Angeles – C.D. Cal. Case No. 20-cv-07469-SB-JC.

**Trial:** July 22, 2021. The Estate of Vu Anh Ngo, et al. v. County of Riverside, et al. Superior Court Case, RIC 1902381.

**Deposition:** July 30, 2021. Donnie Woodral v. County of Stanislaus, et al. Case No.: 1:20-cv-00372

**Deposition:** August 2, 2021. Darryl Speer v. County of San Bernardino USDC Case No. 5:20-cv-00044-JGB-SPx.

**Deposition:** August 5, 2021. Juan Jose Bermudez, v. County of San Bernardino, et al. Case No. 5:20-CV-438 JGB (SHKx).

**Depostion:** August 9, 2021. Marco Ortiz, v. San Joaquin County, et al. Case No.. 2:20-cv-00217-JAM-CKD.

**Trial:** August 12, 2021 Darryl Speer v. County of San Bernardino USDC Case No. 5:20-cv-00044-JGB-SPx.

**Deposition:** August 16, 2021. Cynthia Heffner Roberts, et al v. Manuel Cruz, Individually. Case No. 3:19-CV-186 RGJ-RSE (Kentucky).

**Deposition:** August 17, 2021. Gerardo Wence, v. Rayann Cruz. Contra Costa County Superior Court Case No.: CIVMSC18-02060.

**Deposition:** August 20, 2021. B.P., et al. v. County of San Bernardino, et al. Case No.: 5:19-cv-01243. JGB-SP.

**Deposition:** August 24, 2021. Rosa Ester Brizuela, et al, v. City of Sparks; et al. Case No.3:19-CV-00692-MMD-WGC.

**Deposition:** August 25, 2021. Robin Leeann Moore-Brown, et al, v. ·City of North Las Vegas, et al. Case No. 2:20-CV-01649-GMN-DJA.

**Trial:** August 26, 2021. Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Deposition:** September 8, 2021. Lisa Novak and Patrick Novak, et al, v. City of Madera, et al.. Case No.: 1:20-cv-00301-DAD-SKO.

**Deposition:** September 10, 2021 & October 19, 2021. Joseph Lopeteguy, v. Kern High School District, et al. Superior Court Case No. BCV-17-100576, and Gilbert Valdez, Jr., and Jarald Wyatt v. Kern High School District, et al. Superior Curt Case No. BCV-17-102617.

**Deposition:** September 13, 2021. Delon Thurston, vs. City of Vallejo, et al. , Case No.: 2:19-cv-01902-KJM-CK.

**Deposition:** September 16, 2021. Estate of Angela M. Zuniga et al, v. San Bernardino County, et al. Superior Court Case No CIVDS1620852

**Deposition:** September 20, 2021. Xavier Hermosillo, an individual; Olga Hermosillo, an individual and as successor in interest for Decedent, Luis Hermosillo, vs. County of Orange, et al. Case No. 8:20-cv-01387-JVS-(ADSx).

**Deposition:** September 24, 2021. Diane Lang (Donnell Lang) v. City of Redding, et al, Superior Court (Shasta County) Case No. 193947.

**Deposition:** October 8, 2021. Patrick Pursley, v. City of Rockford, Illinois, et al. Case No. 3:18-cv-50040.

**Deposition:** October 18, 2021. Estate of Toby Diller, et al. v. City of San Diego, et al. Case No.: 20CV1003

**Deposition:** October 21, 2021. Cherish Thomas, v. City of Rio Vista, et al. Case No.: 2:20-cv-00899 KJM-DB.
Client Attorney:

**Deposition:** November 3, 2021. Brejanea Burley, et al., v. County of Los Angeles, et al., State of California Superior Court (Los Angeles County), Case No. TC027341.,

**Deposition:** November 17, 2021. Elijah McKnight vs. Sheriff Tyler Brown, et al. Case No.: 1:20-cv-03678-PAB-SKC.

**Deposition:** November 18, 2021. People v. Douglas Alan Bohren, Superior Court, San Diego County (California), Case No.: CT No. M264544.

**Deposition:** November 19, 2021. Dione Mendoza, et al. v. County of San Bernardino, et al. Case No. 5:19-cv-01056 JGB-SHK.

**Deposition:** November 22, 2021. R.H., A minor (Eric Jay Hames Deceased), v. City of Redding, et al., Case No.: 2:20-cv-01435-WBS-DMC.

**Deposition:** November 29, 2021. R.A., and M.A., (Randolph Aguirre Deceased), et al. v. City of La Habra, et al. Case No. 8:20-cv-01829 CJC (ADSx)

**Deposition:** November 30, 2021. Brent Gustine, v. County of San Diego, et al., Case No.: 3:19-cv-00903-LAB-NLS.

**Deposition:** December 2, 2021. Adeline Lorraine Herrera, et al, v. City of Montebello, et al. Case No.: 2:20-cv-00590-MWF-SK

**Deposition:** December 8, 2021. Jorge Enrique Serrano Robles Senior, and Yuridia Dolores Miranda, et al. vs. County of Los Angeles, et al, Case No.: 2:20-CV-6648-ODW-PLA.

**Deposition.** December 9, 2021. Jeffrey Drevdahl v. City of Fairfield, et al. Case No.: 2:20-cv-00859-WBS-DB.

**Deposition:** December 13, 2021. Darla Drinan, vs. United States of America, Joshua Bisch, Douglas Christner, et al., Case No.: CV 20-1634-GW-SHKx

**Deposition:** December 14, 2021. Alexandrew Orellana v. County of Riverside, et al. USCD Case No. 5:19-CV-01263-JGB-SHK

**Deposition:** December 14, 2021. Luke Carlson, et al v. City of Redondo Beach, et al. Case No. 2:20-cv-00259-ODW (AFMx).

**Deposition:** December 29, 2021.  Kevin Howard v. City of West Covina, Officer Matthew Munoz, Officer Joshua Brenes, Officer Doug Weischedel and Officer C. Gonzalez, Case No.: 2:19-cv-08281-CMB-MRW.

**Deposition**: January 6, 2022.  Donelle Wear (Blanchard), v.United States of America , et al. Case No.: 8:20-cv-02438-JVS-DFM, consolidated with Case No.: 8:20-cv-00459-JVS-DFM.

**Deposition:** January 17, 2022.  Angela Hernandez, (Steven Schiltz, deceased), v. City of Huntington Beach, et al.  Orange County Superior Court Case No. 30-2020-01137606 CU-CR-CJC

**Deposition:** January 21, 2022.  CJ Montano vs. City of Los Angeles Chief Michael Moore, et al., Case No.: 2:20-cv-07241.

**Deposition:** January 28, 2022.  Kelly Lynch vs. City of Los Angeles, Sergeant Lankford, Officer Wall, Officer Brandt, et al., Case No.: 2:20-cv-07931.

**Trial:** February 15, 2022Susan Huntzinger, et al, v, Toby Coyle, et al.USDC (Kentucky) Case No. 5:17-cv-00184 KKC

**Trial:** February 17, 2022.  People v. Terrance Stangle, Superior Court (San Francisco County), Case No 20013301, IIB #A 2019.10.07, ISD #2019-0045.

**Trial:** February 22, 2022.  Angela Hernandez, (Steven Schiltz, deceased), v. City of Huntington Beach, et al.  Superior Court (Orange County) Case No. Case No. 30-2020-01137606, CU-CR-CJC.

**Deposition:** February 25, 2022.  Tracy Garrett, v. Lieutenant Eric Nipper, et al.  USDC (Kentucky) Case No:  5:20-CV-64 KKC-MAS.

**Trial:** March 1, 2022.  Lydia Vasquez-Brenes and Ricardo Brenes, v Las Vegas Metropolitan Police Department.  USDC Case No.: 2:12cv1635-JCM-VCF.

**Deposition:** March 15, 2022.  Brian Joshua Cook, vs. County of Los Angeles, et al., Case No.: 2:19-cv-02417-JVS-KS:

**Deposition:** March 16, 2022.  Elena Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-01605-NC.

**Deposition:** March 21, 2022.  Lisa Marie Close vs. City of Vacaville and Stuart K. Tan, Case No.: 2:17-cv-01313-WBS-DB.

**Trial:** March 30, 2022.  Curtis Jacob Davis, v. Wakulla County, et al.  Superior Court  (Wakulla

County, Florida) Case N. 15-ca-FLA BAR NO.: 0739685.

**Deposition:** April 4, 2022.  Rosalinda Ibarra v. Lee, et al.; (Oklahoma) Case No. 20-cv-00598-TCK-SH

**Deposition:**  April 4, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior Court, (Contra Costa County) Case No.: MSC20-01316

**Trial:**  April 6, 2022.  Rosa "Patti" Andrade, et al., vs. City of Tucson, et al.  Case No. C20194291.

**Deposition:**  April 7, 2022  Jeanne Llera (Gomez), et al. v. Las Vegas Metropolitan Police Department, et al. Nevada Case No. 2:20-cv-01589 RFB-BNW.

**Deposition:**  April 8, 2022  V.V., et al.  v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:**  April 11, 2022.  Edgar Sanchez vs. City of San Jose, Christopher Weber, Melissa Villasenor, et al., Case No.: 20-CV-05919-JD.-cv-10758

**Deposition:**  April 11, 2022.  Clark, et. al. v. City of Sacramento, et al.  Case No: 2:19-cv-00171-JAM (JDP).

**Deposition:**  April 12, 2022.  Annie Lee Oliver, Jeremy Wright, and Jeremy Wright as Personal Representative of the Estate of Michael Benford v. Pemiscot County; Tommy Greenwell, Individually and in His Official Capacity; et al. Case No. 19-CV-00137 (SNLJ).

**Deposition:**  April 13, 2022.  March 1, 2022.  Lourdes Vaughan (Richard Posadas Deceased) et al.  v. City of Arvin, et al.  Case No.: 1:20-CV-00473-NONE-JLT

**Trial:**  April 15, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior Court, (Contra Costa County) Case No.: MSC20-01316.

**Deposition:**  April 19, 2022.  Estate of Eric Esteban Briceno, Deceased, et al, v. County of Los Angeles, et al. Case No.: 2:21-cv-01388-SB-E

**Deposition:**  April 20, 2022.  Breya A Barello, vs. County of Los Angeles, Alex Saldana, Edward Gonsalves, et al., Case No.: 2:21-cv-01909-FMO-AGR.

**Deposition:**  April 22, 2022.  Nathan Schneider v. County of Sacramento, et al.  Case No.: 2:20-cv-00383 TLN-EFB.

**Deposition:**  April 28, 2022.  2318.  Anthony Echevarria, v. City of Santa Monica, et al.  Case No.: 2:21-CV-05603 SVW-AGR.

**Deposition:** April 29, 2022. Jose Luis Rodriguez, Jr. v. City of Salinas, Et Al. (Kile, Pritt, Neff). Case #: Monterey County Superior Court 20CV001293.

**Deposition:** May 2, 2022. Deandre Bolden, v. Contra Costa County, et al. Case No.: 3:20-CV-04254 SK.

**Deposition:** May 9, 2022. William Wynne, Administrator of the Estate of Andrew Lenetis, vs. Town of East Hartford, Officer Kevin Beeman, and Officer Kwanza Clayton, Case No.: 3:20-cv-01834.

**Deposition:** May 17, 2022. Cindy Wagner vs. Shasta County, Shasta County Sheriff's Department, et al., Case No.: 2:20-CV-000403-JAM-DMC.

**Deposition:** May 24, 2022 Maria Elena Vazquez, et al. v. City of San Jose, et al. Case No.: 5:19-cv-08441-EJD.

**Trial:** May 25, 2022. Araceli Flores (Juan Barillas), v. City of Los Angeles, et al. Case No. 2:18-cv-09936.

**Trial:** June 1 & 2, 2022. The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Deposition:** June 3, 2022. Rosalina Calonge vs. City of San Jose, a Municipal Public Entity; Edward Carboni, et al., Case No.: 20-CV-07429 NC.

**Deposition:** June 9, 2022. R.E., et al. v. State of California, et al.; Case No. 2:21-cv-06072-SB-KS.

**Deposition:** June 14, 2022. Charles Hayes v. Las Vegas Metropolitan Police Department, Case No.:. 2:20-cv-02048-KJD-BNW.

**Trial:** June 16 &17, 2022. Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-01605-NC.

**Deposition:** June 20, 2022. Greg Banks, and Alexis Avalos, vs. Michael Mortimer; Ryan White; City of Antioch; Dawnmarie Delucchi, et al, Case No.: 4:18-cv-07931-HSG.

**Trial:** July 14, 2022. V.V., et al. v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:** July 19, 2022: Israel Hernandez and Jully Romero, vs. City of Los Angeles, OfficerJames Welch, Detective Jose Chavez, el al., Case No.: 2:19-cv-00441.

**Trial:** July 28, & 29, 2022: Jennifer Landeros, Individually and as Successor in Interest to Daniel Landeros, et al., v. City of Elk Grove, et al. Case No.: 2:17-cv-02598-KJM-CKD.

**Trial:** August 4, 2022. State of Texas v. Russell Butler, Burnet County, (Texas) District Court Case No.: DA-19-0029

**Deposition:** August 8, 2022. Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK.

**Deposition:** August 17, 2022. John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Deposition:** August 18, 2022. I.C.E. Agent Demetrik Herd, v. County of San Bernardino, et al. Case No. 5:20-CV-02335-JWH-KKX.

**Deposition:** August 19, 2022. Deposition #2335. Benjamin Montemayor, v. City of Los Angeles, et al. Case No.: 2:21-cv-03124 CBM (ASx) (Related to Case No. 2:20-cv-05027-CBM (Asx).

**Deposition:** August 22, 2022. Cole Wilkins v. Wesley VanDiver and Joseph Morrison.; Case No. 8:20-cv-02417-JSL (DFMx)

**Deposition:** August 23, 2022. Mario Carrasco, v. Glendora Police Department, et al. Case No.: 2:21-cv-05965-MWF-AS.

**Deposition:** August 25, 2022. Vega-Colon v. City of Wethersfield, et al. Case No: 3:21-cv-00175 (KAD).

**Disciplinary** Hearing: September 7, 2022. Hillsborough County (Florida) Sheriff's Department v. Deputy Kirby Lavallee Case No.: 1208-036

**Deposition:** September 15, 2022. Kimberly Perez, et al. v. County of Sacramento, et al. Case No.: 2:21-cv-00356-TLN-JDP

**Deposition:** September 20, 2022. S.C.D.P.,(Brian Statler, Jr. Deceased), et all. v. City of Inglewood, et al. Case No.: 2:19-cv-10712-DMG-MRW.

**Deposition:** September 21, 2022. Vangv. City of Sacramento, et al.;Case No.:2:19-cv-00374-JAM-JDP

**Deposition:** September 22, 2022. Kelly Lorenz and Alykhan Popat v. Superior Court of San Bernardino, et al. Case No. 5:22-cv-00143-PA-JPR

**Deposition**: September 23, 2022. Gary Salzman, et al., vs. County of Los Angeles, et al., Case No.: 21-CV-4604-PA-SK.

**Trial:** October 12, 2022. Kimberly Marroquin, vs. Unidentified LAPD Officer (Dimaggio Rico); Captain Richard Paul Stabile; City of Los Angeles, et al., Case No.: 2:21-cv-07607-RGK-JEM.

**Trial:** October 14, 2022, and October 19, 2022. Vangv. City of Sacramento, et al.;Case No.:2:19-cv-00374-JAM-JDP

**Trial:** October 18, 2022. Diane Lang (Donnell Lang) v. City of Redding, et al, Superior Court (Shasta County) Case No. 193947.

**Deposition:** October 20, 2022. Michael George Tater and Kyla Skye Staniskis (Shannon Michelle Tater deceased), v. City of Huntington Beach, et al. , et al. Case No.: 8:20-cv-01772 Case No. 8:20-cv-01772-MEMF-JDEx.

**Deposition:** October 26, 2022. Cyrus Greene, vs. Bay Area Rapid Transit, a Municipal Corporation; P. Chehal (#684), Individually; T. Matthews (#716) Individually, et al., Case No.: 4:21-cv-00113-DMR.

**Deposition:** October 28, 2022. Nicholas Ramirez, v. City of San Jose, et al., Case No.:5:21-CV-08127-VKD

**Deposition:** November 3, 2022. Akaysia Pearson, et al. v. Otto Aragon, et al., Case No. 3:20-05726-CRB

**Deposition:** November 9, 2022. John Bien, Vs. City of Fresno, Brad Oliver, et al., Case No.:1:20-CV-01159-AWI-BAM.

**Deposition:** November 11, 2022. Hector Hernandez, et al. v. City of Fullerton, et al. Case No.: 8:20-cv-01747-CJC-JDE

**Trial:** November30, 2022 and December 1, 2022. People v. Ricky Butler, 2022. San Bernardino County (California) Superior Court DA Case No. 2017-00-0042929.

**Deposition:** December 19, 2022. Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:** December 22, 2022. Joseph L. Garces vs. City of Santa Paula, a municipal entity, Officer Chris Rivera; Case No.: 2:21-cv-06730.

**Deposition:** December 23, 2022. City of Santa Ana, et al. v. Orange County Association for Mental Health DBA Mental Health Association of Orange County, et al., Case No. 30-2020-01124174-CU-MC-CJC.

**Deposition:** December 28, 2022. Scottlynn Moorman, (Minor), v. City of San Bernardino, et al. Case No. CIVDS1818724

**Deposition:** December 30, 2022. Bryanna Berry v City of San Jose Officer Lindsay Parodi (4426), CASE NO.: 5:21-cv-8436

**Deposition:** January 4, 2023. Cecilia Vargas, et al. v. County of San Bernardino, et al. Case No.: 5:20-cv-02646-JGB-KK.

**Deposition:** January 10, 2023. Estate of Oral W. Nunis, et al v. City of Chula Vista, et al. Case No.: 3:21-cv-01627-AJB-DEB

**Deposition:** January 12, 2023. Estate of Nicholas Burgos, et al. v. County of Los Angels, et al. Case No. : 2:21-cv-05566.

**Deposition:** January 19, 2023. Myles Ramsey, v. City of Santa Ana, Peter Beaumarchais, Jeremy Reguerin, Ronald Sandoval, Christopher; Shynn, and Peter Thai. Case N.: 8:21-cv-00825-JLS-KES.

**Deposition:** January 20, 2023. Abbie Gray, v. City of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC6869939

**Deposition:** February 1 2023. Ayana Maroney, vs. County of Riverside, Deputy Mark Rodriguez, Deputy David Ruiz; et al., Case No: 5:21-cv-00497-JGB (SPx).

**Deposition:** February 6, 2023. Irina Rusanovskaya, et al, v. City of Los Angeles, et al. Superior Court (Los Angeles County) Case No. 20STCV33203

**Deposition:** February 9, 2023, David Cordero, v. City and County of San Francisco, et al. Case No.: 3;19-cv-01834.

**Deposition:** February 13, 2023. Ignacio Escalante, v. County of Los Angeles, et al. Superior Court (Los Angeles County) Case No.: 19STCV29783.

**Deposition**: February 15, 2023. Edwin Williams, v. County of San Bernardino, et al. Superior Court (San Bernardino County), Case No. CIVDS1600447

**Deposition:** February 16, 2023. Julie Fernandez, v. City of Los Angeles; et al., Case No.: 2:20-cv-07306.

**Deposition:** February 17, 2023. David Baxter, v. City of Hemet, et al.. Case No.: 5:21-cv-01331-JWH(SPx)

**Deposition:** February 22, 2023. Kyle Peterson v. County of Los Angeles, et al. Case no: 2:21-cv-05510-JAK-ADS.

**Deposition:** February 23, 2023. Jarett Jakarr Waddell v. City of Burbank, et al. Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition:** February 24, 2023. Maria Teresa Gonzalez, (Eloy Maris Gonzalez Jr., Deceased) v. County of Stanislaus, et al.    Case No: 1:21-cv-01091 DAD-HBK

**Deposition:** March 9, 2023. Eric Reason, et al v. Sergeant Virgal Thomas, and City of Richmond, et al. Case No.: 2:20-cv-1900 WBS-JDP

**Deposition:** March 14, 2023. Charles Hayes v. Kern County et al. Case No.: 1:19-cv-01722 BAK

**Trial:** March 22, 2023 and March 23, 2023, Irina Rusanovskaya, et al, v. City of Los Angeles, et al. Superior Court (Los Angeles County) Case No. 20STCV33203.

**Trial:** March 30, 2023. Marina Borawick, v. City of Los Angeles, et al. Case No. 2:17-cv-02036 BRO-JC

**Trial:** April 19, 2023. D.T., a Minor by and Through His Guardian Tanika Tyler  vs. San Diego Metropolitan Transit Services, et al., Case No.: 3:19-cv-1523-LAB-AHG.

**Trial:** April 21, 2023 & April 24, 2023. The Estate of Clemente Najera-Aguirre, et al, vs. County of Riverside, et al. Case No.: 5:18-cv-00762-DMG-SP.

**Trial:** April 24, 2023. Christian Pineda, vs. City of Los Angeles; Chief Michel Moore; Colton Haney, and Stephen McClean, Case No.: 2:21-cv-06470-CBM-ASx.

**Deposition:** May 3, 2023. The Estate of Jose Alfredo Castro Gutierrez, et al. v. The City of San Diego, et al. Case No:. 21-cv-01292 H-BGS

**Deposition:** May 9, 2023. Jeremy James Cotten, et al, v. City of Los Angeles et al. Superior Court Case No.: Case No.: 19STCV40052

**Deposition:** May 11, 2023. Nicole Hook, and Jonson Tyler Hook, v. City of Redding, et al. Case No.: 2:20-cv-02365- MCE-DMC.

**Deposition:** May 15, 2023: Gabrielle Bynum, v. Cit of Los Angeles, et al., Case No.: 2:21-cv-4453 JPR

**Trial:** May 16, 2023 Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:** May 17, 2023 Ashley Blackmon, v. City of Beverly Hills, et al. Case No.: 2:21-CV-08381

**Deposition:** June 8, 2023, Audery G., et al, v. City of Lafayette, et al. Case No.: 3:21-cv-03545 WHO.

**Deposition:** June 8, 2023 Jolie Savage v. City of Whittier, et al. USDC CASE NO. CV21-08067 VAP (PD).

**Deposition:** June 9, 2023. Alma L. Figueroa De Magdaleno, et al., vs. County of Riverside, et al., Case No.: 5:21-cv-02027-JGB-SHK

**Deposition:** June 14, 2023. Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** June 19, 2023. 2464. Ernest Simon, Jr., an Individual,v. City of Los Angeles, et al.Case No.: 2:22-cv-01775 SSS-GJS.

**Trial:** June 22, 2023. A.G.1., a Minor (Raymond, Gonzalez) et al. v. City of Fresno, et al. Case No. 1:16-CV-01914 JO-SAB

**Deposition:** June 26, 2023. Matthew Wilson and L.M., individually and as a successor-interest to Decedent, Joshua Barnes, by and through her Guardian ad Litem Tilde Barnes vs. California Highway Patrol Officers Kevin Domby; Sean Deise and Jose Ortega, et al., Case No.: 21-CV-03824-M.C.

**Deposition:** June 27, 2023. Kyle Johnson vs. City of San Jose; San Jose Police Department Officer James Adgar, et al., Case No. 5:21-cv-01849-BLF.

**Deposition:** June 30, 2023. Robert W. Hirsh v. California Commerce Club, Inc., et al. U.S.D.C. Case No. 2:22-cv-05701-MCS-AS.

**Deposition:** July 6, 2023. Calvin Rush Annd Jayme Rush, v. City of Fairfield, Officers Zachary Sandoval and Dustin Joseph. Case No.: 2:20-CV-01966-WBS-KJN.

**Deposition:** July 11, 2023. Bashar Zeidan vs. City of Richmond; Case No. 3:21-cv-04010-TLT.

**Deposition:** July 17, 2023. Tracy Pachote, et al., vs. County of Contra Costa, et al. 3:21-cv-04097-SK.

**Deposition:** July 19, 2023. Gloria Black-Meadows, (Lashanda Anderson Deceased) et al, vs. Deptford Township, et al. Case No.: 1:20-cv-06951.

**Deposition:** July 21, 2023. Angelina Atabekova-Michaelidis and Vardoui Michaelidou; (Melkon Michaelidis deceased), vs. City of Los Angeles, et al. Case No.: 2:22-cv-05620 - MCS-MAAx.

**Deposition:** July 22, 2023. Pamela Reny Monk, v. Matthew Diller, Amal Pal, Brad Gorby, Shawn Murphy, Matthew Mcnulty, Los Angeles Police Department, et al. Case No. BC660220

**Deposition:** July 26, 2023. Jeanette Ayala-Rios, vs. California Highway Patrol, Officers Jordan W. Richardson, Michael W. Richardson, Ubaldo Ferreira, Matthew Barawed, Brent R. Logar, et al., Case No.: 4:22-cv-02550HSG.

**Deposition:** July 27, 2023. Maria Elena Garcia, et al. vs. City of Farmersville, et al. Case No. 1:21-cv-00482-JLT-EPG

**Deposition:** August 1, 2023. Mary Ellen Lennox, (Jordan Zenka, deceases(, v. City of Sacramento, et al, Case No.: 2:21-CV-02075-TLN-KJN

**Trial:** August 3 & 4, 2023. Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Trial:** August 9 & 10, 2023. Desabian Wilson, Edwin (Edwin Williams deceased). v. San Bernardino County, et al. Superior Court Case No.: CIVDS1600447.

**Deposition:** August 14, 2023. Foucha Coner, v. City of Sacramento, et al. Superior Court Case No.: 34-2020-00285118

**Deposition:** August 18, 2023. Braydon Lee Esqueda, vs. County of San Bernardino; Wynn Srisutasanavong and Cory Vigil, et al., Case No.: 5:20-cv-01743-MWF-SHK

**Deposition:** August 22, 2023. Deovante L. Guy, by and through the Guardian Ad Litem for Deovante L. Guy, Quintasia Walker vs. Matthew Lorenzen; Annie Brady, et al., Case No.

**Deposition:** August 25, 2023. Nathan Rocky Glover, v. City of Los Angeles, et al. Case No.: CV21-09915 FWS (ASx).

**Deposition:** August 29, 2023. Bradley Steyn, v. City of Los Angeles, et al. Case No.: - 20STCV34657.

**Trial:** August 30, 2023. Winston Durrell Settrini, v. City of San Diego, et al. Case No.: 20-cv-02273 CAB-BGS.

**Deposition:** September 11, 2023.  Richard Payne, Janchai Payne, K.P. a minor, v, City of Los Angeles, et al.  Case No.: 2:17-cv-09044 (Ksx)

**Deposition:** September 12, 2023.  Ellen Williams, also known as Ellen Girma, an individual, v. City of Pleasanton, et al.  Case No.: 3:20-cv-08720 WHO

**Deposition:** September 13, 2023.  Art Hernandez, Alfred Gonzalez, Benjamin Zaredini, David Casas, Louis Granados, Mario Contreras, Oscar Escobedo, Ariela Lemus, et al. v. County of Loa Angeles, Los Angeles County Sheriff's Department (LASD), et al. Case No.: 19STCV33158.

**Deposition:** September 18, 2023.  Emily Garcia and C.G. et al. vs. City of Tustin, Estella Silva, et al., Case No.: 8:22-cv-00131.

**Trial:** September 19, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: - 20STCV34657.

**Deposition:** October 2, 2023.  Estate of David Angel Villalobos Valdovinos,  by its successor in interest Eve Samantha Arriaga, et al., vs. Ryan Gonsalves, the United States of America, et al., Case No.: 22-cv-0315-L-AHG.

**Deposition:** October 5, 2023.  Arnold Day, v. Kenneth Boudreau, William Foley, Jude Evans, Michael Kill, Dan Mcweeny, James Brennan, Anthony Watson, Marty Radtke, City of Chicago, and Unidentified Employees of the City of Chicago . Case No.: 19-cv-07286.

**Deposition:** October 11, 2023.  Matthew D. Rifat, and Tracy M. Rifat, v. Dave Jones; David Steele; et al.  Case No.: 21-CV-1667-L-KSC.

**Deposition:** October 18, 2023.  Brenda Allen vs. State of California, Department of Corrections and Rehabilitation, Corrections Officer O. Barraza, Corrections Officer V. Veloz, Corrections Officer M. Roque, Sergeant Amaya, et al., Case No.: 5:22-CV-01288-RGK-PLA.

**Trial:** October 20, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition:** October 23, 2023.  Deshawn M. Wright, v. City of San Bernardino, et al  Case No.: 5:22-cv-001327-GW-(JCx).

**Trial:** October 27, 2023.  John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Trial:** November 1, 2023.  Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** November 3, 2023.  Jose Gutierrez, v. County of Los Angeles, et al.  Case No.:

2:21-cv-08223 FMO-PLKA

**Trial:** November 6, 2023. Francisco Rodriguez, v. Los Angeles Dodgers, et al. Superior Court, (Los Angeles County) BC714498

**Deposition:** November 7, 2023. Jimmy Southern, (Jeremy Southern deceased), v. City of Sacramento, et al. Case No.: 2:20-CV-01765 - MCE-AC

**Deposition:** November 14, 2023. Blanca & Brian Mendoza v. City of Hanford, et al. Case No.: 1:21-cv-00721 JLT-BAM

**Deposition:** November 15, 2023. Ricardo Martinez, v. County of Orange, et al. Superior Court Case No.: 30-2021-01208196 CU-NP- NJC.

**Deposition:** November 30, 2023. Dora Galinda, et al., vs. City and County of San Francisco, et al., Case No.: 3:21-cv-08133-JSC.

**Deposition:** December 5, 2023. Deonta Jackson, Plaintiff, vs. City of Los Angeles; Victor Morales #96038, individually, and as a Peace Officer; et al., Case No.: 2:22-cv-06523.

**Deposition:** December 8, 2023. Maria Segura, et al. v. City of San Bernardino, et al. Case No.: 5:22-cv-00277-JGB-SP.

**Deposition:** December 11, 2023. Kendrick Sampson v. City of Los Angeles, et al. Case No.: 2:22-cv-03346 JAK-ADS

**Deposition:** December 22, 2023. Carlos Towns, & Barsha Knox, v. County of Los Angeles, rt al. Case No.: 2:23-cv-01635-MEMF-PD.

**Deposition:** January 2, 2024. Daniel Cohen vs. Los Angeles County, et al., Case No.: CV15-3376 RSWL AGR.

**Deposition:** January 3, 2024. Xavier Lopez, v. City of Riverside, et al. Case No.: 5:21-cv-02140 ODW.

**Deposition:** January 5, 2024. Maribel Murillo v. City of Los Angeles, et al., USCD Case No. 2:22-cv-03188 DMG (Skx).

**Deposition:** January 9, 2024. Ronnie Parham v. City of West Covina, Officer N. Robles, Officer C. Gonzalez, Officer A. Hernandez and Officer M. Munoz. Case No.: 2:21-cv-09114.

**Deposition:** January 11, 2024. Slade Douglas, v. City of Las Angeles, et al. Case No. 2:20-cv-07439-FMO(PDx.

Page 17 of 23

**Deposition:** January 12, 2024. Jessica Romero and Brian Roserio, v. Los Angeles County, et al. Case No.: 2:21-cv-03972-FLA-JEM.

**Deposition**: January 15, 2024. Jessica Woodward, Vishal Singh, Scott Taylor, and Erik Boyd,, et al. vs. City of Los Angeles, et al. USDC C.D. Cal., Case No. 2:22-cv-01306 GW-JEM.

**Deposition:** January 16, 2024. Edwin Vasquez, v. City of Los Angeles, et al. Case No.: 2:22-cv-04661 DSF-MRW.

**Deposition:** January 19, 2024. Daniel Antunez v. LA Dodgers, LLC, et al. Case No.: 19STCV13057.

**Hearing:** January 22, 2024 and January 22, 2024. Douglas Ray Stankewitz, Petitioner, On Habeas Corpus, Fresno County Superior Court Case No.: 21CRWR685993.

**Deposition:** January 29, 2024. Matthew Stewart, v. City of Los Angeles, et al. Case No.: 2:22-cv-04922.

**Deposition:** January 31, 2024. Ricardo Dennis Cordova v. Deputy Sheriff Aaron Clark, Lake County, et al; Case No.: 4:18-cv-00367-JSW.

**Deposition:** February 2, 2024. Anastasia Martinez v. County of Los Angeles, et al. USDC CASE NO. CV22-06589 DSF (MAR).

**Deposition**: February 8, 2024. Estate of Rosendo Olivio vs. City of Los Angeles, USDC Case Number: 2:23-cv-01516-FMO-E.

**Deposition:** February 13, 2024. Michael Deleon, v. City of ;Los Angeles, Detective Jose Martinez, et al. Case No.: 2:22-cv-06315 AB-MA.

**Deposition:** February 15, 2024. Adrian Abelar, v. County of Los Angeles, Los Angeles County Sheriffs Department, Deputy Yen Liu, et al. Case No.: 2:23-cv-01606R GK (MRWx).

**Trial:** February 21, 2024. Daniel Antunez v. LA Dodgers, LLC, et al. Case No.: 19STCV13057.

**Trial:** March 1, 2024. The State of Texas v, Deputy James Johnson and Deputy Zachary Camden Judicial District Court Travis County (Texas) Case No.: DPS 09990017

**Trial:** March 13, 2024. Daniel Cohen, v. Los Angeles County, et al. Case No: 2:15-CV-03576 JAK

**Deposition:** March 14, 2024.  Frank Benavente and Nicole Ventress v. City of Ontario and Albert Alvarado, Case No.: 5:23-cv-00266-SSS-KK.

**Deposition:** March 25, 2024.  Cristina Ramirez Fonua; B.E.R., et al. v.  City of Hayward, Kyle Martinez, et al.  Case No.: 3:21-cv-03644 RS.

**Trial**:  April 22, 2024. Scottlynn Moorman, (Minor), v. City of San Bernardino, et al.  Case No. CIVDS1818724.

**Trial**:  April 24, 2024.  Estate of Oral W. Nunis, et al v. City of Chula Vista, et al.  Case 3:21-cv-01627-AJB-DEB.

**Deposition:** April 25, 2024.  Melina Abdullah v. City of Los Angeles, et al.  Superior Court Case No.: 21STCV34800.

**Trial**:  April 30, 2024.  DeShaun Johnson. v.  Officer Ryan Morning.  Case No: 21-cv-00879.

**Trial:** May 1, 2024.  Kelly Jones (Michael Townsend Deceased), v. City of Portland.  Case No.: 22CV05575 (Oregon).

**Deposition**: May 9, 2024.  Frances Enyart, (William Enyart, Deceased), v. County of San Bernardino, et al., Case No.: 5:23-cv-00540-RGK-KK.

**Deposition:** May 10, 2024.  Sergeant Frederick Villalpando,v. State of California, et. al.. Superior Court Case No.: CVDS2018655.

**Deposition:** May 13, 2024.  Juvenal Nunez, v. County of Los Angeles, et al.  Case No.: 2:23-cv-04409- MCS (PVCx).

**Trial:** May 17, 2024.  Melina Abdullah v. City of Los Angeles, et al.  Superior Court Case No.: 21STCV34800

**Deposition:** May 20, 2024.  Esteban Hernandez, v, City of Rialto, et al.  Case No. 5:22-cv-01807

**Deposition:** May 21, 2024.  Christina Cardenas, v. California Department of Corrections, et al. Case No.: BCV-20-101420.

**Trial:** May 22, 2024.  Frances Enyart, (William Enyart, Deceased), v. County of San Bernardino, et al., Case No.: 5:23-cv-00540-RGK-KK.

**Hearing:** May 28, 2024.  Sergeant Frederick Villalpando, v. State of California, et. al.  Case No.: CVDS2018655.  (San Bernardino County)

**Trial:** May 29, 2024. . Shana Anglin; Christopher Dean Ebersole, and minors Elijiah Makar and Rozlynn Makar, through their Guardian Ad Litem Shana Anglin, vs. Patrice Loraine Burton; Alex Villanueva, in his official capacity as Sheriff of Los Angeles County, et al., Case No.: 21STCV17381.

**Deposition:** May 31, 2024. Mari Ann Sartor and Roy Eugene Jackson, individually, and as successors in interest to Jay J. Jackson, vs. County of Riverside; Robert Carrasco; et al., Case No.: 5:22-cv 01410 JGB (Spx).

**Deposition:** June 3, 2024. Jonathan Peltz and Kathleen Gallagher, v. City of Los Angeles, et al. Case No.: 2:22-cv-03106-MWF-AGR

**Deposition:** June 4, 2024. McKinley Kekona, Jr. v. City of San Diego, Officer Allen (#7372), and DOES 1 through 10, inclusive, Case No. 3:22-cv-00745-MMA-WVG

**Deposition:** June 7, 2024Phillip Brooks, v. City of Palm Phillip Brooks, Case No.: 5:12-cv-00745 JGB-SP:

**Deposition:** June 14, 2024. Vincent Bryant, et al. v. City of Berkeley, et al.; Case No.: 3:21-cv-08169-AGT.

**Trial:** June 18, 2024,. Lawrence, et al. v. Las Vegas Metropolitan Police Department, et al. (USDC Case No. 2:16-cv-03039-JCM-NJK)

**Deposition:** June 24, 2024. Joseph Frias vs. County of San Diego, et al., Case No: 3:22-cv-00675-JO-AHG.

**Deposition:** June 25, 2024. Danielle Houston, v, City of Fairfield, et. al,. Case No.: 2:22-cv-01045 JAM DB.

**Deposition:** July 1, 2024. Adrian Aldaco, v. Los Angeles Police Department, et al. Case No.: 2:23-cv-03585 HDV-AGR.

**Deposition:** July 5, 2024. Alexander Torres, v. County of Los Angeles, et al. Case No.: 2:22-cv-07450 MWF-MAR.

**Trial:** July 15, 2024. Jessica Romero and Brian Roserio, v. Los Angeles County, et al., Case No.: 2:21-cv-03972-FLA-JEM.

**Deposition:** July 19, 2024. Edgar Solis, v. County of Riverside; State of California, et al. Case No.: 23-cv-00515 HDV-JPR

**Deposition:** July 21, 2024, Maritza Padilla, et al, v. California Highway Patrol et al. Case No.: 22STCV00661.

**Deposition:** July 24, 2024. David Zuniga, v. City of Los Angeles, et al., Case No.: 2:22-cv-03665-CBM-AS.

**Deposition:** July 30, 2024. Michael Shoar and Cindy Shoar, v. Orange County, et al. Superior Court (Orange County) Case No.:·30-2019-01061107.

**Deposition:** July 31, 2024. Gerald LaMont Pitts, v California Highway Patrol (CHP), et al. Case No: 2:20-cv-01243 WBS-JDP

**Deposition:** August 2, 2024 Therese l. Lesher, v. City of Anderson, et al. Case No.: 2:21-cv-00386-WBS-DMC

**Deposition:** August 19, 2024. Ricky Butler vs. County of San Bernardino, et al. Case No.: 5:23-cv-02147RGK-E

**Deposition:** August 20, 2024, Arash Eteghaei and Mitra Zade, v, County of Almeda, et al. Case No.: 4:22-cv-04298 KAW

**Deposition:** August 21, 2024. A.H. and H.H, (Shane Holland, deceased), et al. v. County of San Bernardino, et al. Case No.: 5:23-cv-01028 JGB-SHK.

**Deposition:** August 23, 2024, and August 28, 2024. Christina Astorga (Khan, et al.) v. City of Los Angeles, et al., C.D. Cal. Case No. 21-CV-03289-CAS (MARx)

**Deposition:** August 26, 2024. Bruno Mattar Lima, v. City of Los Angeles, et al. Case No.: 21STCV26150.

**Deposition:** August 30, 2024, Juan Oseguera, v. City of Hayward, Officer J. Lutzinger et al. Case No.: Case No;: 3:23-cv-00621 - SK

**Deposition:** September 3, 2024. The Estate of Omar Moreno Arroyo, et al. v. The County of San Diego, et al. Case No: 21-cv-01956-RBM-SBC.

**Deposition:** September 5, 2024. Derek Stenson (Joshua Sarrett deceased) v. Jacob Leenstra and King County et al. Case No.: 2:23-cv-01316 (Washington).

**Deposition:** September 6, 2024. Salvador Garcia, et al. v. County of Los Angeles, et al. Los Angeles County Superior Court Case No 20STCV00967.

**Trial:** September 11, 2024. Anyka Harris, et al. v. City of Tulare, et al. Superior Court Case No.: VCU299232.

**Deposition:** September 13, 2024. William Schell Morton v. County of San Bernardino, et al. Case No.: 5:21-cv-00052 JGB-SHK.

**Deposition:** September 16, 2024. Juan Laspada and Rebecca Rodriguez, v. City of Antioch and Antioch Police Officers, et al. Case No.23-cv-01955-JSC.

**Trial:** September 18, 2024. 2632. People v. Alfredo Armando Morales. Superior Court, (San Bernardino County). Case No.:16CR-004762.

**Deposition:** September 25, 2024. Samuel D. Castro, v. City of Whittier, et al. Case No.: Case No.: 2:2023-cv-03424-DSF-RAO.

**Trial:** October 7, 2024. David Zuniga, v. City of Los Angeles, et al., Case No.: 2:22-cv-03665-CBM-AS.

**Trial:** October 10, 2024. Estate of Tyler S. Rushing, Scott K. Rushing, and Paula L. Rushing, vs. AG Private Protection, Inc.; Edgar Sanchez, City of Chico Police Department, et al., Case No. 2:18-cv-01692-MCE-AC

**Deposition:** October 14, 2024. William Martin and Michael Martin, vs. Miami-Dade County (Florida), et al. Case No.: 20-CV-22107-MGC

**Deposition:** October 15, 2024. Mariela Valadez, (Cristopher Valadez deceased), et al. v. City of Rialto, et al. Case No.: CIVSB2200927.

**Trial:** October 17, 2024. Michael Shoar and Cindy Shoar, v. Orange County, et al. Superior Court (Orange County) Case No.: 30-2019-01061107.

**Deposition:** October 18, 2024. Shawn Brye, v. City of Stockton, et al. Case No.: 2:23-CV-00343 KJM-KJN

**Trial:** October 22, 2024: Paxton Williams, v. Des Moines, et al. USDC Case No. 4:22-cv-240 SBJ.

**Deposition:** October 28, 2024. Julio Jimenez Lopez and Yesenia Cruz Cruz vs. City of San Rafael; San Rafael Police Department; Daisy Mazariegos; and Brandon Nail. Case No. 3:23-cv-03652-VC.

**Deposition:** October 29, 2024. Sarah Aragon, v. City of Los Angeles, et al. Case No.: 2:23-cv-09522 DDP (JPRx).

**Trial:** November 7, 2024. Gerald LaMont Pitts, v California Highway Patrol (CHP), et al. Case No: 2:20-cv-01243 WBS-JDP

Page 22 of 23

**Deposition:** November 14, 2024. Michael Goulding, (Jana Goulding, Deceased), et al, v. City of Placentia, Officer Larrissa Perez, et al. Case No.: 8:23-cv-02332-JWH-KES

**Deposition:** November 15, 2024, Helen Abascal vs. County of Los Angeles, et al. Case No.: 2:23-cv-05246 HDV (Jcx).

**Deposition:** November 19, 2024. Jay Campos (Joshua Campos, deceased), et al. v. , County of Orange, et al. Case No.: 8:23-cv-00072 JVS (JDEx).

**Deposition:** November 20, 2024. Estate of Richard Ward, and Kristy Ward Stamp, v. Pueblo County, et al. (Colorado). Case No.: 23-cv-00473-CNS-MBD

**Trial:** December 4, 2024. Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK

**Deposition:** December 7, 2024. Felix Tellez, v. County of Riverside, et al. Case No. 5:23-CV-00755-WLH-SHK

**Deposition:** December 9, 2024. Bueno-Zaragoza et al. v. Lynch et al. Case No. 2:21-CV-02294-TLN-JDP

**Deposition:** December 10, 2024. Veronica Gonzalez and Juan Luis Duran v. City of Tustin, et. al. Case No;: 8:23:-cv-01274 FWS (ADSX)

**Deposition:** December 11, 2024. Therese l. Lesher, v. City of Anderson, et al. Case No.: 2:21-cv-00386-WBS-DMC.

**Deposition:** December 17, 2024. The Estate of Richard Risher, Jr., et al. v. City of Los Angeles, et al. Court Case No. 5:17-cv-00995-MWF-KK

1

<u>PROOF OF SERVICE</u>

2

STATE OF CALIFORNIA, CITY OF LOS ANGELES

3

     I, the undersigned, am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action.

4

My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

5

     On December 27, 2024, I served the foregoing document described as

6

**PLAINTIFF'S RULE 26 INITIAL EXPERT DISCLOSURES** on all interested parties, through their respective attorneys of record in this action by placing a true

7

copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

8

     <u>METHOD OF SERVICE</u>

9

☒   (BY MAIL) I enclosed the documents in a sealed envelope or package and

10

addressed to the parties at the addresses as indicated on the attached service list.

11

      ☐   I deposited the sealed envelope or package with the United States

12

Postal Service, with the postage fully prepaid thereon.

13

      ☒   I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar

14

with the practice of this office for the collection, processing and mailing of documents. On the same day that documents are placed

15

for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed

16

envelope with postage fully prepaid.

17

☒   (BY ELECTRONIC SERVICE) I caused the foregoing document(s) to be sent via electronic transmittal to the notification addresses listed below as

18

registered with this court's case management/electronic court filing system.

19

☐   (BY FEDERAL EXPRESS) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the

20

persons at the addresses as indicated on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or

21

regularly utilized drop box of the overnight delivery carrier.

22

     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

23

     Executed on December 27, 2024, at Woodland Hills, California.

24

25

        /s/ Stefany Anderson

26

        Stefany Anderson

27

28

<u>SERVICE LIST</u>

Christopher P. Wesierski [Bar No. 086736]
cwesierski@wzllp.com
Michelle R. Prescott [Bar No. 262638]
mprescott@wzllp.com
**WESIERSKI & ZUREK LLP**
29 Orchard Road
Lake Forest, California 92630
Telephone: (949) 975-1000
Facsimile: (949) 756-0517

*Attorneys for Defendants*
County of San Bernardino, Corrin Cassidy and Cameron Stanley

James S. Terrell, Esq. (SBN 170409)
*jim@talktoterrell.com*
**LAW OFFICE OF JAMES S. TERRELL**
15411 Anacapa Road
Victorville, CA 92392
Tel:   (760) 951-5850
Fax:   (760) 952-1085

Sharon J. Brunner, Esq. (SBN 229931)
sharonjbrunner@yahoo.com
**LAW OFFICE OF SHARON J. BRUNNER**
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel:   (760) 243-9997
Fax:   (760) 843-8155

*Attorneys for Plaintiff*

# EXHIBIT "C"

**Certified Copy**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION


| | | |
|---|---|---|
| TODDERICK RANDALL, INDIVIDUALLY, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | 5:24-cv-00086-SSS-SP |
| VS. | ) | |
| | ) | VENUE: SBC |
| COUNTY OF SAN BERNARDINO; CORRIN | ) | |
| CASSIDY; CAMERON STANLEY AND DOES | ) | |
| 1-10, INCLUSIVE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

DEPOSITION OF Roger A. Clark

TAKEN ON Monday, January 20, 2025

REPORTED BY:  ALICE J. WILBUR, COURT REPORTER

CSR NO. 9538



**PLATINUM REPORTERS & INTERPRETERS**
**Certified Shorthand Reporters**
Post Office Box 6070 - San Pedro, California 90734-6070 - (310) 241-1450

1

```
1                 UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    TODDERICK RANDALL, INDIVIDUALLY, )
                                      )
5                     PLAINTIFF,      )   CASE NO.
                                      )   5:24-cv-00086-SSS-SP
6                     VS.             )
                                      )
7    COUNTY OF SAN BERNARDINO; CORRIN )
     CASSIDY; CAMERON STANLEY AND DOES)
8    1-10, INCLUSIVE,                 )
                                      )
9                     DEFENDANTS.     )
     _____)
10

11

12

13

14

15          DEPOSITION OF Roger A. Clark, taking place via

16   Internet, taken on behalf of the Defendants, at Santee,

17   California at 2:03 P.M. on MONDAY, JANUARY 20, 2025,

18   before Alice Wilbur, CSR #9538, a Certified Shorthand

19   Reporter within and for the State of California, pursuant

20   to Notice.

21                            -oOo-

22

23

24

25
```



DEPOSITION OF ROGER A. CLARK

```
 1                    A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4          LAW OFFICES OF DALE K. GALIPO LAW FIRM
            BY:  RENEE V. MASONGSONG
 5              ATTORNEY AT LAW
            21800 BURBANK BOULEVARD
 6          SUITE 310
            WOODLAND HILLS, CALIFORNIA  91367
 7
      FOR THE DEFENDANTS:
 8
            LAW OFFICES OF WESIERSKI & ZUREK
 9          BY:  KATHRYN HARVEY
                ATTORNEY AT LAW
10          29 ORCHARD ROAD
            LAKE FOREST, CALIFORNIA  92630
11

12

13

14

15

16

17

18

19    Also Present:

20          (None)

21

22

23

24

25
```



```
 1                    I N D E X

 2

 3    WITNESS                                    PAGE

 4    Roger A. Clark

 5         Examination by Ms. Harvey              5

 6

 7                  E X H I B I T S

 8                          REFERRED TO    MARKED

 9    1 - Notice of Deposition                    5

10    2 - expert designation                      7

11    3 - curriculum vitae                        8

12    4 - rule 26 list                           22

13

14    REQUESTED INFORMATION                     PAGE

15    (None)

16

17

18         QUESTIONS INSTRUCTED NOT TO ANSWER

19                   Page     Line

20                       (None)

21

22

23

24

25
```



DEPOSITION OF ROGER A. CLARK

1    which is objectively reasonable under the circumstances.

2    That's the paragraph I had in mind in answering your

3    question.

4        Q    Okay.   On page 13 opinion number 4 says it should

5    have appeared to trained officers such as deputy Cassidy

6    and deputy Stanley that Mr. Randall was having a mental

7    crisis or was mentally ill.   Why should it should have

8    been apparent to deputies?

9        A    Well, just from his behavior there's, that

10   there's one of the possibilities and they have to, they

11   are required to consider that it's a mental impairment.

12       Q    What from his behavior provided evidence to

13   deputies that Mr. Randall was mentally ill?

14       A    Because what he was doing was irrational.   That's

15   the best answer.   Significantly irrational.

16       Q    What was he doing that was significantly

17   irrational?

18       A    Well, he goes into a store and he takes a bottle

19   of Margarita mix off the shelf, wanders about drinking it

20   with a box cutter handle in his hand and goes back and

21   forth, etcetera.   And it's that's irrational behavior.

22       Q    Okay.

23       A    If it was a petty theft he'd take it and leave,

24   but it wasn't at all.

25       Q    So because he took a bottle of alcohol and was



DEPOSITION OF ROGER A. CLARK

1   drinking it and had a box cutter deputies should have

2   understood that Mr. Randall was mentally ill?

3        A    Well, you're assuming that the bottle is alcohol.

4   It is a Margarita mix.   That's all I was -- I couldn't

5   determine from the material I was given whether it

6   contained alcohol or not.   That I assumed that they

7   thought it might be a bottle of alcohol based on

8   configuration and locations in the store.

9             Having said that I said they have to consider

10  this as one of the possibilities, not the possibility,

11  not the possibility, but one of them and they would act

12  accordingly.

13       Q    Okay.   Other than the fact that he had taken a

14  bottle of Margarita mix and had a box cutter was there

15  any other evidence that deputies should have been aware

16  of at the time of the shooting that Mr. Randall was

17  mentally ill?

18       A    No, there's more to it than that.   There's

19  totally his lack of communication.   His reaction to their

20  presence.   All of that combined it's a number of anybody

21  watching the video of his behavior which the deputies did

22  not see, obviously would see that he's off the rails.

23  That's my term.   Not acting in a reasonable cognitive

24  way.   And when they arrive and you watch their reaction,

25  their interaction with him it's apparent to me that they



DEPOSITION OF ROGER A. CLARK

1    would see it as well based on what they were able to

2    observe when they arrived and what they knew when they

3    entered the store.

4        Q    If deputies were aware that Mr. Randall was

5    having a mental crisis would that have made it more

6    dangerous for him to be brandishing a weapon?

7        A    No, not necessarily, but it flavors the way you

8    talk to somebody who is in an emotionally unhinged way

9    and you don't -- and the term is you slow it down.  You

10   use time as part of the available toolbox.  You don't,

11   you don't make up necessary demands or abrupt demands or

12   act abruptly when it's not necessary, because you want to

13   get a contact and an understanding of whether he can

14   understand or not.  So you can gain compliance verbally.

15   It's part of the verbal technique.

16       Q    Is it your understanding that Mr. Randall did not

17   respond verbally to deputies in any way?

18       A    I don't know whether he did it in any way.  I

19   know that he was not given reasonable time to do so for

20   them to see that he would or would not.  They just are

21   very abrupt.

22       Q    Do you know how Mr. Randall responded to deputies

23   instructions to put down the knife?

24       A    I know what is observed in the video.

25       Q    What do you know from the video?



DEPOSITION OF ROGER A. CLARK

1     A    That he did not.  He stayed on his feet.  He

2  remained standing and he kept it in his hand and the

3  bottle of Margarita mix in the other hand.

4     Q    Do you know whether he made any verbal response

5  to demands to put down the knife?

6     A    I don't recall hearing any verbal response, but I

7  could be wrong.

8     Q    Do you know how Mr. Randall responded to commands

9  to get on the ground?

10     A    Yeah, I know how he did.  He did not get on the

11  ground.

12     Q    Did he make any verbal response to commands to

13  get on the ground?

14     A    I don't recall any of his verbal responses,

15  hearing any of them.

16     Q    Did he respond fuck you to officers?

17     A    I said I do not recall any of his verbal

18  response.  I don't recall hearing it.

19     Q    So his verbal responses didn't play into your

20  assessment that he was mentally ill?

21     A    Well, if he said the word, if he used the words

22  it certainly would indicate a noncompliance and then you,

23  whether you would now, now that he's said something to

24  the deputies they could say something back to use their

25  skills to persuade him otherwise.



DEPOSITION OF ROGER A. CLARK

1      Q    There was nothing that Mr. Randall said verbally

2   that affects your assessment that he was clearly mentally

3   ill?

4      A    Well, you're saying clearly mentally ill.  He

5   could be intoxicated or he could be mentally ill or he

6   could be emotionally distraught.  He could.  That those

7   are all possibilities.  Either any of those would require

8   them using time and distance and proper tactical moves

9   just to talk him down or to make sure that he wasn't

10  going to comply and given warnings at least, so that he

11  would understand they're taking it very seriously.

12     Q    Okay.  But my question was you're not aware of

13  any, anything that Mr. Randall said verbally that led you

14  to the opinion that he is having a mental crisis or was

15  mentally ill; correct?

16     A    No, you -- no, that's not what I have said.  I

17  said what his actions indicated could be a number of

18  possibilities.  Any one of those possibilities require

19  the proper tactics which I explained, time, distance,

20  places of safety, getting anyone at risk out of the way.

21  All of those things, so that he could be dealt with

22  properly without shooting him.  So mental illness was a

23  possibility, because no one reasonably acts that way in a

24  store.

25     Q    Okay.  So your opinion number 4 says that it



DEPOSITION OF ROGER A. CLARK

1    should have appeared to officers that Mr. Randall was

2    having a mental crisis or mentally ill, not that it was a

3    possibility, but it should be apparent to them; is that

4    incorrect?

5         A    I wrote it that way for that specific opinion,

6    you're correct, but as you've asked the question it's one

7    of the possibilities.  It could be intoxication.  I would

8    agree that it could be intoxication.  Either way he's

9    going to be treated the same way.

10        Q    Okay.  So my question is was there anything that

11   Mr. Randall said that supports your opinion that it

12   should have appeared to trained officers that Mr. Randall

13   was having a mental crisis or was mentally ill?

14        A    It's not what he said.  It's what he did.

15        Q    Okay.  Did you review Dr. Flosi's report in this

16   matter?

17        A    Not before I wrote the report.

18        Q    Have you reviewed it since you wrote your report?

19        A    Yes.

20        Q    Did you note any facts in Dr. Flosi's report that

21   you believe are incorrect?

22        A    I noted that he and I disagree on the proper

23   police procedure in this case.

24        Q    Other than opinions related to proper police

25   procedure are there facts that you believe are incorrect?



DEPOSITION OF ROGER A. CLARK

State of California    )

County of Los Angeles )

      The undersigned Certified Shorthand Reporter CSR 9538, a court reporter in and for the State of California, does hereby certify:

      That any witness(s) named in the foregoing proceeding was(were), before and/or during the commencement of proceeding, duly sworn or affirmed to testify the truth, the whole truth, and nothing but the truth;

      That said proceeding was stenographically (or otherwise) reported by me and thereafter transcribed into typewriting under my direction.

      The undersigned Certified Shorthand Reporter further certifies to be neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

      IN WITNESS WHEREOF, I have hereunto subscribed my name February 06, 2025.

*Alice Joanne Wilbur*

_____

Certified Shorthand Reporter

# EXHIBIT "D"

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

Sharon J. Brunner, Esq. (Bar No. 229931)
sharonjbrunner@yahoo.com
LAW OFFICE OF SHARON J. BRUNNER
14393 Park Ave., Suite 100
Victorville, CA 92392
Tel: (760) 243-9997 / Fax: (760) 843-8155

James S. Terrell, Esq. (Bar No. 170409)
LAW OFFICE OF JAMES TERRELL
jim@talktoterrell.com
15411 Anacapa Rd.
Victorville, CA 92392
Tel: (760) 951-5850 / Fax: (760) 952-1085

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO;<br>CORRIN CASSIDY; CAMERON<br>STANLEY,<br><br>Defendants. | Case No. 5:24-cv-00086-SSS-SP<br>*Assigned to:*<br>Hon. Sunshine S. Sykes<br><br>**DECLARATION OF ROGER CLARK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment; Plaintiff's Separate Statement of Facts; Declaration of Renee V. Masongsong*] |

-1-
DECLARATION OF ROGER CLARK

# <u>DECLARATION OF ROGER A. CLARK</u>

I, Roger A. Clark, declare as follows:

     1. I am an expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

     2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

     3. My opinions are based in part on my training, professional experience, and education. I am a twenty-seven year veteran of the Los Angeles County Sheriff's Department. I was hired on December 1, 1965, and I retired from active service on March 31, 1993.  My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant.  I hold a California Peace Officer Standards and Training ("P.O.S.T.") Advanced Certificate, and I am a graduate of the P.O.S.T. Command College (class #5).

     4. As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the P.O.S.T. accepted investigation and apprehension methods.

     5. During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. I also lectured the Reserve Academy on the P.O.S.T. syllabus: "The Legal and Moral Use of Force and Firearms."

     6.  During the last five and one-half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major career) criminals. I held this position until my retirement from the Department on

March 31, 1993. The majority of our cases were homicide cases. Arrests frequently occurred in dynamic circumstances including crimes in progress.

7. As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer involved shootings.

8. Since my retirement, I have testified as an expert on jail procedures and jail administration, police procedures, police tactics, investigative procedures, shooting scene reconstruction, trajectory, use of force issues, and bullet casings in Arizona State Courts, California Courts, Washington State Courts and Federal Courts in California, Texas, Colorado, Illinois, Indiana, Pennsylvania, and Washington.

9. Prior to forming my opinions in this matter, I have reviewed the scene photographs, police reports, surveillance videos from the WinCo grocery store, the transcripts of the depositions of Deputy Corrin Cassidy and Deputy Cameron Stanley, the recorded interviews of the deputies and WinCo grocery store employees, the deputies' belt recordings, the dispatch tape, and other related materials in this case.

10. **Deputy Cassidy's use of the Taser was inappropriate, contrary to P.O.S.T., excessive, unreasonable, and escalated the situation**.

a. The deputies were not responding to a serious or violent crime in this case.

b. Prior to contacting Mr. Randall, Deputies Cassidy and Stanley did not have any information that Mr. Randall had physically injured anyone.

c. Prior to contacting Mr. Randall, Deputies Cassidy and Stanley did not have any information that Mr. Randall had verbally threatened to harm anyone.

d. Prior to contacting Mr. Randall, Deputies Cassidy and Stanley did

1    not have any information that Mr. Randall had tried to attack

2    anyone with the box cutter.

3    e.  Police officers and deputy sheriffs are trained that they should

4        attempt to de-escalate a situation and utilize proper defusing

5        techniques throughout an incident, particularly when dealing with

6        a suspect who appears to be having a mental health crisis. Police

7        officers are trained that if someone is struck by a Taser,

8        particularly if that person is experiencing a mental health crisis,

9        then they may run away from the Taser, which is exactly what

10       occurred in this case. Deputies Cassidy and Stanley knew or

11       should have known that Mr. Randall would run away from the

12       Taser. Mr. Randall did not start to run until after he was struck by

13       Deputy Cassidy's first Taser deployment.

14   f.  Prior to Deputy Cassidy's first Taser deployment, Mr. Randall did

15       not charge or advance toward either deputy or any other person

16       and did not try to attack any person.

17   g.  Mr. Randall was not in the process of attacking or attempting to

18       attack anyone during either of Deputy Cassidy's two Taser

19       deployments.

20   h.  Prior to Deputy Cassidy's second Taser deployment, Mr. Randall

21       did not charge or advance toward either deputy or any other

22       person. Mr. Randall ran away after the first Taser deployment and

23       then stopped. After he stopped, Mr. Randall never took any steps

24       toward Deputy Cassidy or Deputy Stanley. Mr. Randall was not

25       moving forward at the time of either Taser deployment.

26   i.  As seen on the video, Mr. Randall did not make any slashing,

27       swinging or stabbing motions with the box cutter prior to either of

28

1    Deputy Cassidy's two Taser deployments.

2    j.   Mr. Randall was not within striking distance of any person at the

3         time of either Taser deployment.  At the time of the first Taser

4         deployment, the deputies were approximately 10-15 feet away

5         from Mr. Randall. Based on my review of the video and Deputy

6         Stanley's deposition testimony, at the time of the second Taser

7         deployment, Deputy Cassidy was approximately 8-10 feet away

8         from Mr. Randall. The video shows that Deputy Stanley was

9         further from Mr. Randall at the time of the second Taser

10        deployment and at the time of the shooting compared to Deputy

11        Cassidy.  Based on the video and Deputy Stanley's deposition

12        testimony placing Deputy Cassidy approximately 8-10 feet away

13        from Mr. Randall at the time of the second Taser deployment, it

14        appears that Deputy Stanley was approximately 10-12 feet away

15        from Mr. Randall at the time of the second Taser deployment and

16        at the time that Deputy Stanley started firing.

17   k.   Police officers are trained to give a verbal warning prior to

18        deploying the Taser against an individual, when feasible. Deputy

19        Cassidy failed to give Mr. Randall a verbal warning prior to

20        deploying both her first and second Taser deployments against Mr.

21        Randall. It would have been feasible for Deputy Cassidy to give

22        Mr. Randall a verbal warning before both her first and second

23        Taser deployment against Mr. Randall based on the above-listed

24        facts.

25   l.   I have reviewed Deputy Cassidy's initial interview.  In her initial

26        interview following this incident, Deputy Cassidy never stated that

27        Mr. Randall made any swinging, slashing, or stabbing motions

28

-5-
DECLARATION OF ROGER CLARK

with the box cutter. I have also reviewed the transcript of Deputy
Cassidy's deposition.  In her deposition, Deputy Cassidy also does
not state that Mr. Randall made any swinging, slashing, or
stabbing motions with the box cutter.

11. **Deadly Force Applications**

    a. The use of deadly force is the most serious decision a peace officer
has to make.  Deadly force applied by a peace officer is force that
creates a substantial risk of causing death or serious bodily injury.
(*Peace Officer Standards and Training ("POST") 2020 Update,
Learning Domain ("LD") 20: Chapter 4—Deadly Force, page 3*).

    b. A peace officer is justified in using deadly force upon another
person only when the officer reasonably believes, based on the
totality of the circumstances, that such force is necessary to defend
against an imminent threat of death or serious bodily injury to the
officer or to another person. (*Cal. Penal Code Section
835a(c)(1)(A); POST LD 20: Chapter 4—Deadly Force, page 4*).

    c. A threat of death or serious injury is imminent when, based upon
the totality of the circumstances, a reasonable officer in the same
situation would believe that a person has the present ability,
opportunity, and apparent intent to immediately cause death or
serious bodily injury to the peace officer or another person. (*Cal.
Penal Code Section 835a(e)(2)*).

    d. Deadly force can only be used on the basis of an "objectively
reasonable" belief that the suspect poses an immediate threat of
death or serious bodily injury. Subjective fear alone does not justify
the use of deadly force. An imminent harm is not merely a fear of
future harm, no matter how great the fear and no matter how great

the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. (*Cal. Penal Code Section 835a(e)(2)*).

e. Basic police training teaches that that a suspect's failure to comply with officer commands alone is an insufficient basis for the use of deadly force.

f. Police officers are trained that the decision to use deadly force must be guided by the reverence for human life.

g. Pursuant to basic police training and standards, an officer must justify every shot he or she fires.

h. Basic police training teaches that an overreaction in using deadly force is excessive force.

12. Under the facts of this case, the officers could not justify using deadly force against Mr. Randall simply because Mr. Randall was running away and holding a box cutter, and the officers could not shoot at Mr. Randall under the fleeing felon theory. Police officers are trained that they can only shoot a fleeing felon where all of the following factors are present: (1) ". . . the subject threatens the officer with a weapon *or* there is probable cause to believe that he has committed a crime involving the infliction of serious bodily harm [or death] . . ."; (2) ". . . probable cause to believe that the subject poses a threat of death or serious physical harm, either to the officer or others . . ." (3) ". . . probable cause to believe that the use of deadly force is reasonably necessary . . .'" (4) ". . . some warning be given prior to the use of deadly force where feasible. . ."

(*POST LD 20, Chapter 4, Use of Deadly Force, pages 5, 6, 11; Cal. Penal Code 835a*).  These factors were not met in this case.

//

//

13. **Police officers are trained that they can only use deadly force when there is an immediate or imminent threat of death or serious bodily injury**.  A reasonable police officer in the position of Deputy Stanley would not have believed that deadly force against Mr. Randall was ever justified during this incident, including because there was no immediate defense of life situation when Deputy Stanley fired his lethal shots at Mr. Randall, as follows:

      a. The deputies were not responding to a serious or violent crime.

      b. Prior to either deputy using any force against Mr. Randall, the deputies had no information that Mr. Randall had injured anyone and no information that Mr. Randall had verbally threatened anyone.

      c. The deputies had no prior contacts with Mr. Randall and no information that Mr. Randall was dangerous or violent.

      d. The deputies did not observe Mr. Randall attack or attempt to attack anyone at any time.

      e. Mr. Randall ran away from the deputies after the initial Taser deployment and never ran toward any person.

      f. Deputy Stanley knew or should have known that Mr. Randall would run away from the Taser in response to being Tased.

      g. There were no civilians in Mr. Randall's immediate vicinity at the time of the shooting.

      h. When Deputy Stanley started to fire his lethal shots, Mr. Randall was already being Tased.

      i. When Deputy Stanley fired, he was aware that there were less lethal options available.  Deputy Stanley was equipped with a Taser, Deputy Cassidy had her Taser out, and Deputy Stanley was aware that Deputy Cassidy's Taser had a second cartridge.

j.   At the time of the lethal shots, Mr. Randall was not moving forward.

k.   At the time of the lethal shots, Mr. Randall was not making any swinging, slashing, or stabbing motions with the box cutter, he never lunged toward the deputies, and he was not in the process of attacking or attempting to attack anyone.

l.   No person was within striking distance of Mr. Randall at the time of the shots. As described above, the time of the shooting, Deputy Cassidy was approximately 8-10 feet from Mr. Randall, and Deputy Stanley was approximately 10-12 feet from Mr. Randall.

m.   During the shots, the distance between Deputy Stanley and Mr. Randall increased.  During the shots, Deputy Stanley stepped backwards, and Mr. Randall fell backwards, away from the deputies.

n.   After the shooting, the deputies were unable to locate the box cutter in Mr. Randall's immediate vicinity.  Detectives ultimately found the handle of the box cutter under a display partition but did not locate any blade (RANDALL/SPD-000063).  Further, one of the police reports (RANDALL/SPD-000011) indicated that, based on investigators' review of the surveillance video, Mr. Randall tossed the box cutter during or immediately after the initial Taser deployment, before the shooting.

o.   Deputy Stanley did not observe the box cutter in Mr. Randall's hand when he fired at Mr. Randall while using his sights.

p.   Deputy Stanley had the ability to reposition if necessary, including moving behind other grocery store aisles.

q.   Deputy Stanley does not appear to have assessed between shots.

r.   The deputies had no information about Mr. Randall's ability to understand and comply with commands and did not assess that ability.

s.   In violation of basic police training, Deputy Stanley failed to give Mr. Randall a verbal warning that deadly force would be used prior to shooting.

t.   Mr. Randall did not injure anyone during this incident.

14. From the standpoint of police practices and basic police training, **the use of deadly force by Deputy Stanley was contrary to POST, improper, inappropriate, excessive, and unreasonable**, including (but not limited to) for the following reasons:

a.   No crime involving the infliction of serious injury or death.  The officers were not responding to a serious or violent crime. They had no information that Mr. Randall had injured anyone.

b.   No Immediate Defense of Life Situation.  Police officers are trained that they can only use deadly force when there is an immediate or imminent threat of death or serious bodily injury.  A fear of future harm is not enough.  There was no immediate defense of life situation when Deputy Stanley fired his shots.

c.   Mr. Randall was experiencing a mental health crisis. Officers are trained on how to handle a situation involving a person who is mentally ill or suffering from a mental health crisis, including being trained to de-escalate a situation involving a person who is experiencing a mental crisis. The deputies in this case ignored this basic police training when they escalated, rather than de-escalated, the situation involving Mr. Randall, including by Deputy Cassidy's two Taser deployments. It should have been apparent to

DECLARATION OF ROGER CLARK

1        trained officers such as Deputy Stanley that Mr. Randall was

2        mentally ill or experiencing a mental crisis.

3     d. <u>Deputy Stanley could not shoot Mr. Randall for running away</u>.

4        Deputy Stanley could not shoot Mr. Randall for running away

5        from the Taser or under the fleeing felon theory.

6     e. <u>Deputy Stanley could not shoot Mr. Randall for having a box</u>

7        <u>cutter</u>.  Under the facts of this case, Deputy Stanley cannot justify

8        shooting at Mr. Randall simply because Mr. Randall had a box

9        cutter.  There must be an immediate threat of death or serious

10       bodily injury with no other reasonable alternative measures.

11     f. <u>No verbal threats</u>.  Mr. Randall never verbally threatened to harm

12       anyone.

13     g. <u>Other reasonable alternative measures available</u>.  Police officers

14       are trained that they can only use deadly force in a "last resort"

15       situation.  Shooting was not a "last resort" in this case.  Other

16       reasonable alternative measures were available, including giving a

17       verbal warning before using deadly force or utilizing the Taser in

18       an appropriate manner so as not to escalate the situation, if that

19       were necessary.  At the time of the lethal shots, Mr. Randall was

20       within the effective range of the Taser. Deputy Stanley also had

21       OC spray on him at the time of the incident.  OC spray when

22       properly deployed would have rendered Mr. Randall blind and

23       disoriented to provide further time for observation, tactical

24       repositioning, and safe apprehension.

25     h. <u>No verbal warning regarding deadly force</u>.  Police officers are

26       trained to give a verbal warning that deadly force will be used

27       when feasible.  Deputy Stanley failed to issue a verbal warning

28

1   prior to using deadly force, even though it would have been

2   feasible to do so under this set of facts.

3       i.  <u>Subjective fear is insufficient to justify using deadly force</u>.  Basic

4           police training requires that any use of deadly force must be based

5           on an "objective" rather than "subjective" "reasonable necessity"

6           of action to "imminent danger."  Deputy Stanley's subjective fear

7           in shooting Mr. Randall was insufficient to justify a use of deadly

8           force.

9       j.  <u>No reverence for human life</u>.  Police officers are trained that they

10          must show a reverence for human life.  Deputy Stanley showed no

11          reverence for human life when they shot Mr. Randall while he was

12          being Tased and without issuing a verbal warning that deadly

13          force would be used.

14      k.  <u>The number of shots (7) was excessive</u>. Officers are trained to

15          reassess when they are firing lethal shots. Here, Deputy Stanley

16          fired seven shots total.  Deputy Stanley should have reassessed

17          during his shots rather than continuing to fire. Officers are

18          required to justify every shot they fire, and here, there is no

19          justification for any of the shots.

20      l.  <u>Overreaction</u>. Police officers are trained that an overreaction I the

21          use of deadly force is excessive force.  Deputy Stanley's

22          overreaction in shooting Mr. Randall was a use of excessive force.

23  **15. <u>Deputies Stanley and Cassidy engaged in improper and</u>**

24  **<u>inappropriate tactics throughout this case</u>.**

25      a.  Deputies Stanley and Cassidy failed to formulate a tactical plan

26          prior to using force against Mr. Randall.

27      b.  Police officers are trained to deescalate a situation with a subject.

28

DECLARATION OF ROGER CLARK

Deputies Stanley and Cassidy inappropriately failed to de-escalate the situation. Deputy Cassidy's two Taser deployments escalated the situation.

c. Deputy Cassidy failed to give Mr. Randall any verbal warnings before deploying the Taser, even though it would have been feasible to do so.

d. Deputy Stanley failed to give Mr. Randall a verbal warning that he was prepared to use deadly force before shooting Mr. Randall, despite that it would have been feasible to do so.

e. Police officers are trained to take the background or backdrop of the shooting into consideration when using deadly force. Deputy Stanley did not take the background of the shooting into consideration when he fired his lethal shots at Mr. Randall. Two of his shots missed and struck objects in the grocery store.

f. Police officers are trained to give clear commands. Neither deputy gave Mr. Randall any commands after Mr. Randall came back into view of the deputies, before the second Taser deployment and the shooting

g. Deputy Stanley failed to give Mr. Randall an opportunity to comply with Deputy Cassidy's second Taser deployment before Deputy Stanley fired his weapon

h. Under this set of facts, Deputies Stanley and Cassidy should have taken a position of cover and taken the necessary time as events unfolded for an apprehension without the use of deadly force.

Executed on March 7, 2025, at Santee, California.

_____
Roger A. Clark

1

# PROOF OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

3

        At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of .  My business address is 29 Orchard Road, Lake Forest, CA 92630.

4

5

        On May 16, 2025, I served true copies of the following document(s) described as **DECLARATION OF KRISTEN R. RODRIGUEZ IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT ROGER CLARK REGARDING THE MENTAL HEALTH OF PLAINTIFF BASED ON THE CLAIM PLAINTIFF WAS MENTALLY ILL OR EXPERIENCING A MENTAL HEALTH CRISIS** on the interested parties in this action as follows:

6

7

8

9

## SEE ATTACHED SERVICE LIST

10

11

        **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address jmonge@wzllp.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

12

13

14

        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

16

        Executed on May 16, 2025, at Lake Forest, California.

17

18


19

20

_____

        Jorge Monge

21

22

23

24

25

26

27

28

*Left margin:* **WESIERSKI & ZUREK LLP**
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

DECLARATION OF KRISTEN R. RODRIGUEZ IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 3

**SERVICE LIST**
**Randall v. County of San Bernardino et. al.**
**SBD-00026**

| | |
|---|---|
| Dale K. Galipo, Esq.<br>Renee V. Masongsong, Esq.<br>Law Offices of Dale K. Galipo<br>21800 Burbank Blvd., Suite 310<br>Woodland Hills, CA  91367<br>Phone: (818) 347-3333<br>Fax: (818) 347-4118<br>E-Mail: dalekgalipo@yahoo.com<br>rvalentine@galipolaw.com;amonguia@galipolaw.com | Attorneys for Plaintiff,<br>TODDERICK RANDALL |
| Sharon J. Brunner, Esq.<br>Law Office of Sharon J. Brunner<br>14393 Park Ave., Suite 100<br>Victorville, CA  92392<br>Phone: (760) 243-9997<br>Fax: (760) 843-8155<br>E-Mail: sharonjbrunner@yahoo.com | Attorney for Plaintiff,<br>TODDERICK RANDALL |
| James T. Terrell, Esq.<br>Law Office of James T. Terrell<br>15411 Anacapa Rd.<br>Victorville, CA  92392<br>Phone: (760) 951-5850<br>Fax: (760) 952-1085<br>E-Mail: jim@talktoterrell.com | Attorney for Plaintiff,<br>TODDERICK RANDALL |

WESIERSKI & ZUREK LLP
LAWYERS
29 ORCHARD ROAD
LAKE FOREST, CALIFORNIA 92630
(949) 975-1000

DECLARATION OF KRISTEN R. RODRIGUEZ IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 3