LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (Bar No. 281819)
rvalentine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

LAW OFFICE OF SHARON J. BRUNNER
Sharon J. Brunner, Esq. (Bar No. 229931)
sharonjbrunner@yahoo.com
14393 Park Ave., Suite 100
Victorville, CA 92392
Tel: (760) 243-9997 / Fax: (760) 843-8155

LAW OFFICE OF JAMES TERRELL
James S. Terrell, Esq. (Bar No. 170409)
jim@talktoterrell.com
15411 Anacapa Rd.
Victorville, CA 92392
Tel: (760) 951-5850 / Fax: (760) 952-1085

Attorneys for Plaintiff, Todderick Randall

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODDERICK RANDALL, individually,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; CORRIN CASSIDY; and CAMERON STANLEY,<br><br>Defendants. | Case No. 5:24-cv-00086-SSS (SPx)<br><br>*Assigned to*:<br>Hon. District Judge Sunshine S. Sykes<br>Hon. Magistrate Judge Sheri Pym<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE OPINIONS OF PLAINTIFF'S EXPERT ROGER CLARK RE: THE MENTAL HEALTH OF PLAINTIFF (DKT. 42)**<br><br>Hearing:  June 20, 2025<br>Time:     2:00 p.m.<br>Dept:     2 |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 2 RE: ROGER A. CLARK

## I. INTRODUCTION

Plaintiff hereby opposes Defendants' Motion *in Limine* No. 3, by which Defendants seek to exclude any opinions or testimony by Plaintiff's police practices expert, Roger A. Clark, regarding Plaintiff's alleged mental illness or mental health crisis and how deputies should respond to mentally ill suspects.

Plaintiff's primary claim at trial will be for excessive force, which is evaluated under the Fourth Amendment's "reasonableness" standard. The Ninth Circuit has repeatedly recognized that whether the subject of a use of force has exhibited signs of mental illness, a mental health crisis, and/or an emotional crisis is a factor for courts and juries to consider in determining whether the force used was reasonable. Accordingly, at trial Plaintiff is entitled to present argument and evidence showing that, based on information known to and observed by the defendant deputies during the incident, it would have been apparent to a reasonable deputy in these Defendants' position that Plaintiff was exhibiting signs and indications of a possible mental illness or mental health crisis. Such evidence is relevant under Ninth Circuit precedent and is not unduly prejudicial to Defendants, and Defendants identify no legal authority to the contrary. Plaintiff is entitled to elicit testimony from his police practices expert regarding standard law enforcement training on recognizing indications of potential mental illness, standard training on interacting with individuals who may be mentally ill, and how the deputies' determinations and conduct did or did not conform with their training. For these reasons, and for the reasons discussed below and at the time of the hearing on June 20, 2025, Defendants' Motion should be denied.

## II. COURTS AND JURIES IN THE NINTH CIRCUIT CONSIDER WHETHER IT WOULD HAVE BEEN APPARENT TO A REASONABLE DEPUTY THAT THE PERSON THEY USED FORCE AGAINST WAS MENTALLY ILL OR EMOTIONALLY DISTURBED

Fourth Amendment claims for excessive force—as with claims for battery and negligence under California law—depend on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2004) (battery); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013) (negligence). Courts "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotations omitted).

In the Ninth Circuit, one such factor is whether an individual against whom force was used exhibited "indications of mental illness." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (citation omitted); *see* Ninth Circuit Model Jury Instruction 9.25 (2017 Edition, Dec. 2023 update) (listing, as factor indicating reasonableness of force, "whether it should have been apparent to the officer[s] that the person [he] [she] [they] used force against was emotionally disturbed"); *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019) ("[W]hether the suspect has exhibited signs of mental illness is one of the factors the court will consider in assessing the reasonableness of the force used."); *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011) ("[R]elevant factors include . . . whether it should have been apparent to officers that the person they used force against was emotionally disturbed."); *see also* CACI 1305B (2024) (listing, as factor for jury's consideration in evaluation of battery claim, "whether [name of defendant] knew or had reason to know that the person against whom [he/she/nonbinary pronoun] used force was suffering from a physical, mental health, developmental, or

2

intellectual disability"). Where an individual exhibits "indications of mental illness," "the government's interest in using deadly force [i]s diminished." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (addressing issue in context of individual who "was mentally unstable, acting out, and at times invited officers to use deadly force on him"); *see Glenn*, 673 F.3d at 875-76; *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

Significantly here, this factor examines whether officers "should have suspected [the individual] could have mental health issues," *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1127 (9th Cir. 2021)—not whether the individual had ever been diagnosed with a specific mental illness, or was provably mentally ill as a factual matter, as Defendants suggest. (*See* Defs.' MIL No. 3 at pp. 6-7). This is consistent with the general rule limiting information considered in the reasonableness analysis to that which was known by the officers at the time force was used. *Glenn*, 673 F.3d at 873 n.8 ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways.") (quoting *Graham*, 490 U.S. at 396).

### III. A REASONABLY WELL TRAINED OFFICER WOULD HAVE FORMED THE IMPRESSION THAT PLAINTIFF MAY HAVE BEEN MENTALLY ILL, EXPERIENCING A MENTAL HEALTH CRISIS OR WAS EMOTIONALLY DISTURBED

Defendants argue that Mr. Clark's opinions are "based on speculation without any evidentiary support." (Defs.'s MIL No. 3 at 7:1-2). As the foregoing authority makes clear, however, the issue is whether there is evidence that Plaintiff exhibited signs and symptoms that would have led a reasonable deputy to believe or suspect that Plaintiff may have been mentally ill, experiencing a mental health crisis, or emotionally disturbed. Mr. Clark's references to Plaintiff's mental health are all directly related to police practices and procedures, including police training on

1  recognizing when a person might be suffering from a mental health crisis and police
2  training on handling a situation involving a mentally ill individual.
3        Here, a reasonably well trained deputy would have formed the impression that
4  Plaintiff was possibly mentally ill, experiencing a mental health crisis or
5  emotionally disturbed. At the time of the incident, Plaintiff exhibited odd behavior
6  such as: carrying an open box cutter into a grocery store; drinking an unpurchased
7  bottle of alcohol or mixer while still inside the grocery store; Plaintiff's eyes were
8  glossed over; and Plaintiff did not verbally respond to the defendant deputies'
9  questions. Under these circumstances, a properly trained deputy would have
10 considered the possibility that Plaintiff was either mentally ill, experiencing a
11 mental health crisis or emotionally disturbed and employed their basic police
12 training with respect to handling situations involving a mentally ill person. This
13 includes anticipating how a mentally ill person would react to being Tased and
14 prioritizing de-escalation, rather than attempting to gain compliance through uses of
15 force. Mr. Clark's opinions that a reasonably well trained deputy in the position of
16 the Deputy Defendants would have understood that Plaintiff would run in response
17 to being Tased is well within his area of expertise.

18 **IV. MR. CLARK WILL ONLY TESTIFY AS TO PROPER POLICE
19      PRACTICES WHEN DEALING WITH A SUSPECT WHO MAY BE
20      MENTALLY ILL OR EXPERIENCING A MENTAL HEALTH
21      CRISIS**

22       Plaintiff does not intend to hold out Mr. Clark as a medical or psychiatric
23 expert as Defendants suggest. Mr. Clark's opinions simply include that a reasonably
24 well-trained officer in the position of the Deputy Defendants would have formed the
25 impression that Plaintiff might be suffering from a mental illness based on his
26 actions and the defendant deputies' own observations. Mr. Clark does not hold out
27 this piece of information as a medical diagnosis, nor does he intend to provide a
28

specific diagnosis. Moreover, Defendant Cameron Stanley admitted in his deposition that upon encountering Plaintiff in the grocery store aisle, he considered it odd that Plaintiff was drinking a bottle of alcohol in the middle of the liquor aisle.

The impression that Plaintiff conveyed upon the officers is essential to the reasonableness analysis, and the Defendant Deputies' impressions of Plaintiff's mental state is therefore relevant to the jury's evaluation of the totality of the circumstances. Additionally, Mr. Clark's opinions regarding how a reasonable deputy would have or should have responded to the incident, including by considering that Plaintiff might have been mentally ill, emotionally disturbed or experiencing a mental health crisis fall squarely within his area of expertise as Plaintiff's retained police practices expert.

V.   **MR. CLARK'S OPINIONS ARE NOT PREJUDCIAL**

Contrary to Defendants' Motion, Mr. Clark's opinions are not more prejudicial than probative and are not confusing or misleading to the jury. Mr. Clark's opinions will all be presented in the appropriate hypothetical form—that if a reasonably well-trained deputy in the position of the Deputy Defendants observed Plaintiff's behavior as described above and seen on the video of the incident, then that deputy would have formed the opinion that the person could be mentally ill or suffering from a mental health crisis, based on their police training. Nor are Mr. Clark's opinions that a reasonable deputy in the position of the Deputy Defendants would have understood that a common reaction to being Tased is to run from the Taser, and that deployment of a Taser can escalate a situation, prejudicial. These opinions are directly relevant to the facts of this case and to the determination of whether the use of force employed by the Deputy Defendants was reasonable and necessary under the circumstances.

//

//

## VI. CONCLUSION

Plaintiff asserts that, based on the foregoing, Defendants' Motion in Limine No. 3 should be denied in its entirety and Plaintiff's expert Mr. Clark should be permitted to testify regarding the applicable police practices, procedures, and training that should be considered or applied when determining whether a suspect is mentally ill or experiencing a mental health crisis and when interacting with suspects who may be mentally ill, emotionally disturbed or experiencing a mental health crisis.

DATED: May 30, 2025                    LAW OFFICES OF DALE K. GALIPO

                                       By:  *s/ Renee V. Masongsong*
                                            Dale K. Galipo
                                            Renee V. Masongsong
                                            *Attorneys for Plaintiff*